JDB:EAG/JDG/CMP
F.#2008R00530

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

THOMAS GIOELI,
   also known as "Tommy Shots"
   and "Tommy Machines,"
JOEL CACACE,
   also known as "Joe Waverly,"
   and
DINO SARACINO,
   also known as "Little Dino,"

             Defendants.

- - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>08-240 (S-6) (BMC)</u>
(T. 18, U.S.C., §§ 892(a),
981(a)(1)(C), 1512(b)(1),
1512(b)(2)(A), 1512(c)(2),
1959(a)(1), 1962(d), 1963,
2 and 3551 <u>et seq</u>.; T. 21,
U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

      At all times relevant to this superseding indictment, unless otherwise indicated:

<u>The Enterprise</u>

      1.   The members and associates of the Colombo organized crime family of La Cosa Nostra (the "Colombo family") constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Colombo family engaged in, and its activities affected,

interstate and foreign commerce.  The Colombo family was an organized criminal group that operated in the Eastern District of New York and elsewhere.

2.    The Colombo family operated through groups of individuals headed by "captains," who were also referred to as "skippers," "caporegimes" and "capodecinas."  These groups, which were referred to as "crews," "regimes" and "decinas," consisted of "made" members of the Colombo family, also referred to as "soldiers," "friends of ours," "good fellows" and "buttons," as well as associates of the Colombo family.

3.    Each captain was responsible for supervising the criminal activities of his crew and providing crew members and associates with support and protection.  In return, the captain received a share of the earnings of each of the crew's members and associates.

4.    Above the captains were the three highest-ranking members of the Colombo family.  The head of the Colombo family was known as the "boss."  He was assisted by an "underboss" and a counselor, who was known as the "consigliere."  With the assistance of the underboss and consigliere, the boss was responsible for setting policy, resolving disputes between members and associates of the Colombo family and members and associates of other criminal organizations, and approving all

significant actions taken by members and associates of the Colombo family, including murder.

5.    The boss, underboss and consigliere of the Colombo family, who were sometimes referred to collectively as the "administration," supervised, supported, protected and disciplined the captains, soldiers and associates and regularly received reports regarding the activities of the members and associates of the Colombo family.  In return for their supervision and protection, the boss, underboss and consigliere received part of the illegal earnings of each crew.  When a member of the administration was unable to fulfill his criminal responsibilities because of incarceration, ill health or other reason, a member of the Colombo family was often appointed to that position in an acting capacity.

6.    The Colombo family was part of a nationwide criminal organization known by various names, including the "mafia" and "La Cosa Nostra," which operated through entities known as "families."  The ruling body of this nationwide organization was known as the "commission," the membership of which at various times has included the bosses of the five New York City-based families, to wit: the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families.

7.    From time to time, the Colombo family would propose a list of associates to be "made," that is, to become

3

members of the Colombo family.  The list would be circulated to the other families based in New York City.

<u>The Purposes, Methods and Means of the Enterprise</u>

8.   The principal purpose of the Colombo family was to generate money for its members and associates.  This purpose was implemented by members and associates of the Colombo family through various criminal activities, including drug trafficking, extortion, illegal gambling, and loansharking.  The members and associates of the Colombo family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9.   Although the primary purpose of the Colombo family was to generate money for its members and associates, the members and associates at times used the resources of the Colombo family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the Colombo family.  For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10.  The members and associates of the Colombo family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities.  That conduct included a commitment to murdering persons, particularly members or associates of

organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11.   Members and associates of the Colombo family often coordinated street-level criminal activity, such as drug trafficking, loansharking, and extortion, with members and associates of other organized crime families.

The Defendants

12.   At various times, the defendant THOMAS GIOELI, also known as "Tommy Shots" and "Tommy Machines," was an acting boss, captain, soldier and associate within the Colombo family.

13.   At various times, the defendant JOEL CACACE, also known as "Joe Waverly," was a consigliere, captain, soldier and associate within the Colombo family.

14.   At various times, the defendant DINO SARACINO, also known as "Little Dino," was a soldier and associate within the Colombo family.

COUNT ONE
(Racketeering Conspiracy)

15.   The allegations of paragraphs one through twelve and fourteen are hereby realleged and incorporated as if fully set forth in this paragraph.

16.   In or about and between January 1991 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS GIOELI, also known as "Tommy Shots" and "Tommy Machines," and

DINO SARACINO, also known as "Little Dino," together with others, being persons employed by and associated with the Colombo family, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below.  Each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

RACKETEERING ACT ONE
(Robbery/Robbery Conspiracy - Furs by Mina)

17.   The defendant named below agreed to the commission of one or more of the following acts, any one of which alone constitutes Racketeering Act One:

A.   <u>State Robbery Conspiracy</u>

18.   In or about and between January 1991 and February 1991, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant THOMAS GIOELI, together with others, did knowingly and intentionally conspire to forcibly steal property from persons at Furs by Mina, located at 408 Jericho Turnpike, Syosset, New York, by threatening the immediate use of physical force upon said persons

and in the course of such robbery, to display what appeared to be a firearm, in violation of New York Penal Law Sections 160.10 and 105.10.

B.   <u>State Robbery</u>

19.   On or about February 11, 1991, within the Eastern District of New York and elsewhere, the defendant THOMAS GIOELI, together with others, did knowingly and intentionally forcibly steal property from persons at Furs by Mina, located at 408 Jericho Turnpike, Syosset, New York, by threatening the immediate use of physical force upon said persons, in violation of New York Penal Law Sections 160.05 and 20.00.

C.   <u>Federal Robbery Conspiracy</u>

20.   In or about and between January 1991 and February 1991, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant THOMAS GIOELI, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by the robbery of Furs by Mina, located at 408 Jericho Turnpike, Syosset, New York, in violation of Title 18, United States Code, Section 1951(a).

D.   <u>Federal Robbery</u>

21.   On or about February 11, 1991, within the Eastern District of New York and elsewhere, the defendant THOMAS GIOELI, together with others, did knowingly and intentionally obstruct,

delay and affect commerce, and the movement of articles and commodities in commerce, by the robbery of Furs by Mina, located at 408 Jericho Turnpike, Syosset, New York, in violation of Title 18, United States Code, Sections 1951(a) and 2.

RACKETEERING ACT TWO<br>(Murder/Murder Conspiracy – Frank Marasa)

22.   The defendant named below agreed to the commission of one or more of the following acts, either one of which alone constitutes Racketeering Act Two:

A.   <u>Conspiracy to Murder Frank Marasa</u>

23.   On or about and between May 30, 1991 and June 12, 1991, both dates being approximate and inclusive, within the Eastern District of New York, the defendant THOMAS GIOELI, together with others, did knowingly and intentionally conspire to cause the death of Frank Marasa, also known as "Chestnut," in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.   <u>Murder of Frank Marasa</u>

24.   On or about June 12, 1991, within the Eastern District of New York, the defendant THOMAS GIOELI, together with others, with intent to cause the death of Frank Marasa, also known as "Chestnut," did cause his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

<u>RACKETEERING ACT THREE</u>
(Murder Conspiracy – Orena Faction Members)

25. In or about and between 1991 and 1993, both dates being approximate and inclusive, within the Eastern District of New York, the defendants THOMAS GIOELI and DINO SARACINO, together with others, did knowingly and intentionally conspire to cause the death of members of the Orena faction of the Colombo family, in violation of New York Penal Law Sections 125.25(1) and 105.15.

<u>RACKETEERING ACT FOUR</u>
(Attempted Robbery/Robbery Conspiracy – Elegant Furs)

26. The defendant named below agreed to the commission of one or more of the following acts, any one of which alone constitutes Racketeering Act Four:

A.   <u>State Robbery Conspiracy</u>

27. In or about January 1992, within the Eastern District of New York and elsewhere, the defendant THOMAS GIOELI, together with others, did knowingly and intentionally conspire to forcibly steal property from persons at Elegant Furs, located at 3106 Hempstead Turnpike, Levittown, New York, by threatening the immediate use of physical force upon said persons and, in the course of such robbery, to display what appeared to be a firearm, in violation of New York Penal Law Sections 160.10 and 105.10.

B.    Attempted State Robbery

28.    On or about January 10, 1992, within the Eastern District of New York and elsewhere, the defendant THOMAS GIOELI, together with others, did knowingly and intentionally attempt to forcibly steal property from persons at Elegant Furs, located at 3106 Hempstead Turnpike, Levittown, New York, by threatening the immediate use of physical force upon said persons, in violation of New York Penal Law Sections 160.05 and 110.05.

C.    Federal Robbery Conspiracy

29.    In or about January 1992, within the Eastern District of New York and elsewhere, the defendant THOMAS GIOELI, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by the robbery of Elegant Furs, located at 3106 Hempstead Turnpike, Levittown, New York, in violation of Title 18, United States Code, Section 1951(a).

D.    Attempted Federal Robbery

30.    On or about January 10, 1992, within the Eastern District of New York and elsewhere, the defendant THOMAS GIOELI, together with others, did knowingly and intentionally attempt to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by the robbery of Elegant Furs, located at 3106 Hempstead Turnpike, Levittown, New York, in violation of Title 18, United States Code, Sections 1951(a).

10

## RACKETEERING ACT FIVE
(Murder/Murder Conspiracy – John Minerva)

31.   The defendant named below agreed to the commission of one or more of the following acts, either one of which alone constitutes Racketeering Act Five:

A.   <u>Conspiracy to Murder John Minerva</u>

32.   In or about March 1992, within the Eastern District of New York and elsewhere, the defendant THOMAS GIOELI, together with others, did knowingly and intentionally conspire to cause the death of John Minerva, in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.   <u>Murder of John Minerva</u>

33.   On or about March 25, 1992, within the Eastern District of New York, the defendant THOMAS GIOELI, together with others, with intent to cause the death of John Minerva, did cause his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

## RACKETEERING ACT SIX
(Murder – Michael Imbergamo)

34.   On or about March 25, 1992, within the Eastern District of New York, the defendant THOMAS GIOELI, together with others, with intent to cause the death of another person, did cause the death of a third person, to wit: Michael Imbergamo, in violation of New York Penal Law Sections 125.25(1) and 20.00.

## RACKETEERING ACT SEVEN
(Extortionate Collection of Credit)

35.   The defendant named below agreed to the commission of one or more of the following acts, either one of which alone constitutes Racketeering Act Seven:

A.   <u>Extortionate Collection of Credit Conspiracy</u>

36.   In or about and between October 1993 and November 1993, both dates being approximate and inclusive, within the Eastern District of New York, the defendant DINO SARACINO, together with others, did knowingly and intentionally conspire to use extortionate means to collect and attempt to collect an extension of credit from John Doe #1, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 894(a)(1).

B.   <u>Extortionate Collection of Credit</u>

37.   In or about and between October 1993 and November 1993, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, together with others, did knowingly and intentionally use extortionate means to collect and attempt to collect an extension of credit from John Doe #1, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

12

RACKETEERING ACT EIGHT
(Robbery/Robbery Conspiracy - Chemical Bank)

38.  The defendant named below agreed to the commission of one or more of the following acts, any one of which alone constitutes Racketeering Act Eight:

A.  State Robbery

39.  On or about June 5, 1995, within the Eastern District of New York, the defendant DINO SARACINO, together with others, did knowingly and intentionally forcibly steal property from persons at Chemical Bank, located at 2419 Hempstead Turnpike, East Meadow, New York, in violation of New York Penal Law Sections 160.05 and 20.00.

B.  Federal Robbery Conspiracy

40.  In or about and between May 1995 and June 1995, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by the robbery of Chemical Bank, located at 2419 Hempstead Turnpike, East Meadow, New York, in violation of Title 18, United States Code, Section 1951(a).

C.  Federal Robbery

41.  On or about June 5, 1995, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, together with others, did knowingly and intentionally obstruct,

13

delay and affect commerce, and the movement of articles and commodities in commerce, by the robbery of Chemical Bank, located at 2419 Hempstead Turnpike, East Meadow, New York, in violation of Title 18, United States Code, Sections 1951(a) and 2.

RACKETEERING ACT NINE
(Murder/Murder Conspiracy - Richard Greaves)

42. Each defendant named below agreed to commit one or more of the following acts, either one of which alone constitutes Racketeering Act Nine:

A.    Conspiracy to Murder Richard Greaves

43. In or about and between June 1995 and August 1995, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS GIOELI and DINO SARACINO, together with others, did knowingly and intentionally conspire to cause the death of Richard Greaves, in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.    Murder of Richard Greaves

44. In or about August 1995, within the Eastern District of New York and elsewhere, the defendants THOMAS GIOELI and DINO SARACINO, together with others, with intent to cause the death of Richard Greaves, did cause his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

14

## RACKETEERING ACT TEN
### (Cocaine Distribution Conspiracy)

45.   In or about and between 1997 and 1998, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, together with others, did knowingly and intentionally conspire to distribute and to possess with intent to distribute a controlled substance, which offense involved a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

## RACKETEERING ACT ELEVEN
### (Murder/Murder Conspiracy – Ralph Dols)

46.   Each defendant named below agreed to the commission of one or more of the following acts, either one of which alone constitutes Racketeering Act Eleven:

A.   <u>Conspiracy to Murder Ralph Dols</u>

47.   In or about and between January 1996 and August 1997, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS GIOELI and DINO SARACINO, together with others, did knowingly and intentionally conspire to cause the death of Ralph Dols, in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.   <u>Murder of Ralph Dols</u>

48.   On or about August 25, 1997, within the Eastern District of New York and elsewhere, the defendants THOMAS GIOELI

15

and DINO SARACINO, together with others, with intent to cause the death of Ralph Dols, did cause his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

### RACKETEERING ACT TWELVE
(Murder Conspiracy - Michael Burnside)

49.   In or about and between April 1998 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, together with others, did knowingly and intentionally conspire to cause the death of Michael Burnside, also known as "Squirts," in violation of New York Penal Law Sections 125.25(1) and 105.15.

### RACKETEERING ACT THIRTEEN
(Murder/Murder Conspiracy - William Cutolo)

50.   Each defendant named below agreed to the commission of one or more of the following acts, either one of which alone constitutes Racketeering Act Thirteen:

A.   <u>Conspiracy to Murder William Cutolo</u>

51.   In or about May 1999, within the Eastern District of New York and elsewhere, the defendants THOMAS GIOELI and DINO SARACINO, together with others, did knowingly and intentionally conspire to cause the death of William Cutolo, also known as "Wild Bill," in violation of New York Penal Law Sections 125.25(1) and 105.15.

16

B.   Murder of William Cutolo

52.   On or about May 26, 1999, within the Eastern
District of New York and elsewhere, the defendants THOMAS GIOELI
and DINO SARACINO, together with others, with intent to cause the
death of William Cutolo, also known as "Wild Bill," did cause his
death, in violation of New York Penal Law Sections 125.25(1) and
20.00.

RACKETEERING ACT FOURTEEN
(Extortionate Extension of Credit)

53.   In or about and between 2002 and 2008, both dates
being approximate and inclusive, within the Eastern District of
New York and elsewhere, the defendant DINO SARACINO, together
with others, did knowingly and intentionally conspire to make an
extortionate extension of credit, in violation of Title 18,
United States Code, Section 892(a).

RACKETEERING ACT FIFTEEN
(Extortion)

54.   In or about and between January 2003 and June
2008, both dates being approximate and inclusive, within the
Eastern District of New York, the defendant DINO SARACINO,
together with others, did commit an act involving extortion, that
is, did knowingly and intentionally steal property by extortion,
in that the defendants and their coconspirators obtained
property, to wit: money, from John Doe #2, an individual whose
identity is known to the grand jury, by instilling in him a fear

that if the property was not delivered the defendants and other persons would cause physical injury to some person in the future and cause damage to property, in violation of New York Penal Law Sections 155.30(6) and 20.00.

<u>RACKETEERING ACT SIXTEEN</u>
(Witness Tampering)

55.   The defendant named below agreed to the commission of one or more of the following acts, any one of which alone constitutes Racketeering Act Sixteen:

A.   <u>Prevention of Testimony</u>

56.   In or about and between February 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, together with others, did knowingly, intentionally and corruptly attempt to persuade, and engage in misleading conduct toward, John Doe #3, an individual whose identity is known to the grand jury, with intent to influence, delay and prevent the testimony of John Doe #3 in an official proceeding, to wit: the grand jury, in violation of Title 18, United States Code, Sections 1512(b)(1) and 2.

B.   <u>Withholding of Testimony and Records</u>

57.   In or about and between February 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, together with others, did knowingly, intentionally and

corruptly attempt to persuade, and engage in misleading conduct toward, John Doe #3, with intent to cause and induce John Doe #3 to withhold testimony, records, documents and other objects from an official proceeding, to wit: the grand jury, in violation of Title 18, United States Code, Sections 1512(b)(2)(A) and 2.

C.    Obstruction of Official Proceeding

58.    In or about and between February 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, together with others, did knowingly and intentionally attempt to corruptly obstruct, influence and impede an official proceeding, to wit: the grand jury, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

COUNT TWO
(Murder In-Aid-Of Racketeering - Richard Greaves)

59.    The allegations contained in paragraphs one through twelve and fourteen are realleged and incorporated as if fully set forth in this paragraph.

60.    At all times relevant to this superseding indictment, the Colombo family constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate and foreign

19

commerce.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

61.  The Colombo family enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder and extortion, in violation of New York State Penal Law, acts involving illegal gambling, in violation of New York Penal Law Sections 225.10 and 225.20; acts indictable under Title 18, United States Code, Section 892 (making of extortionate extensions of credit), and Title 18, United States Code, Section 1955 (illegal gambling).

62.  In or about August 1995, within the Eastern District of New York and elsewhere, the defendants THOMAS GIOELI, also known as "Tommy Shots" and "Tommy Machines," and DINO SARACINO, also known as "Little Dino," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Colombo family, an enterprise engaged in racketeering activity, did knowingly and intentionally murder Richard Greaves, in violation of New York Penal Law Sections 125.25(1) and 20.00.

(Title 18, United States Code, Sections 1959(a)(1), 2 and 3551 et seq.)

20

<u>COUNT THREE</u>
(Murder In-Aid-Of Racketeering - Ralph Dols)

63.  The allegations contained in paragraphs one through fourteen and sixty through sixty-one are realleged and incorporated as if fully set forth in this paragraph.

64.  On or about August 25, 1997, within the Eastern District of New York and elsewhere, the defendants THOMAS GIOELI, also known as "Tommy Shots" and "Tommy Machines," JOEL CACACE, also known as "Joe Waverly," and DINO SARACINO, also known as "Little Dino," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Colombo family, an enterprise engaged in racketeering activity, did knowingly and intentionally murder Ralph Dols, in violation of New York Penal Law Sections 125.25(1) and 20.00.

(Title 18, United States Code, Sections 1959(a)(1), 2 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT FOUR</u>
(Murder In-Aid-Of Racketeering - William Cutolo)

65.  The allegations contained in paragraphs one through twelve, fourteen and sixty through sixty-one are realleged and incorporated as if fully set forth in this paragraph.

66.  On or about May 26, 1999, within the Eastern District of New York and elsewhere, the defendants THOMAS GIOELI, also known as "Tommy Shots" and "Tommy Machines," and DINO

SARACINO, also known as "Little Dino," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Colombo family, an enterprise engaged in racketeering activity, did knowingly and intentionally murder William Cutolo, also known as "Wild Bill," in violation of New York Penal Law Sections 125.25(1) and 20.00.

(Title 18, United States Code, Sections 1959(a)(1), 2 and 3551 et seq.)

## COUNT FIVE
### (Extortionate Extension of Credit Conspiracy)

67.   In or about and between 2002 and 2008, both dates being approximate and inclusive, within the Eastern District of New York, the defendant DINO SARACINO, also known as "Little Dino," together with others, did knowingly and intentionally conspire to make an extortionate extension of credit.

(Title 18, United States Code, Sections 892(a) and 3551 et seq.)

## COUNT SIX
### (Prevention of Testimony)

68.   In or about and between February 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, also known as "Little Dino," together with others, did knowingly, intentionally and corruptly attempt to persuade, and engage in misleading conduct toward, John Doe #3, with intent to

influence, delay and prevent the testimony of John Doe #3 in an official proceeding, to wit: the grand jury.

(Title 18, United States Code, Sections 1512(b)(1), 2 and 3551 et seq.)

## COUNT SEVEN
### (Withholding of Testimony and Records)

69.   In or about and between February 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, also known as "Little Dino," together with others, did knowingly, intentionally and corruptly attempt to persuade, and engage in misleading conduct toward, John Doe #3, with intent to cause and induce John Doe #3 to withhold testimony, records, documents and other objects from an official proceeding, to wit: the grand jury.

(Title 18, United States Code, Sections 1512(b)(2)(A), 2 and 3551 et seq.)

## COUNT EIGHT
### (Obstruction of Official Proceeding)

70.   In or about and between February 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, also known as "Little Dino," together with others, did

23

knowingly and intentionally attempt to corruptly obstruct, influence and impede an official proceeding, to wit: the grand jury.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 et seq.)

## FORFEITURE ALLEGATION AS TO COUNT ONE

71.  The United States hereby gives notice to the defendants THOMAS GIOELI, also known as "Tommy Shots" and "Tommy Machines," and DINO SARACINO, also known as "Little Dino," charged in Count One, that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 1963, which requires any person convicted of such offense to forfeit any property:

a.  the defendants have acquired and maintained an interest in, in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

b.  the defendants have an interest in, security of, claims against, and property and contractual rights that afford a source of influence over the enterprise that the defendants established, operated, controlled, conducted and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims

and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2); or

c.  the defendants derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3), including but not limited to a sum of money equal to at least $1,400,000 or the amount of proceeds obtained by the defendants for the racketeering activity, in United States currency, for which the defendants are jointly and severally liable.

72.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any

other property of such defendant(s) up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code Sections 1963(d) and (m), 981(a)(1)(C); Title 21, United States Code Section 853(p); Title 28, United States Code, Section 2461(c))

<u>FORFEITURE ALLEGATION AS TO COUNT FIVE</u>

73.  The United States hereby gives notice to the defendant DINO SARACINO, also known as "Little Dino," charged in Count Five, that, upon his conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of any such offense to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

74.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

26

e.  has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c), to seek forfeiture of any

other property of such defendants up to the value of the

forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C);

Title 21, United States Code, Section 853(p); and Title 28,

United States Code, Section 2461(c))


A TRUE BILL

_____

FOREPERSON


LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

27

F. #2008R00530
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN District *of* NEW YORK

CRIMINAL  DIVISION

THE UNITED STATES OF AMERICA

*vs.*

THOMAS GIOELI, JOEL CACACE
and DINO SARACINO,
                                Defendants.

## SUPERSEDING INDICTMENT (S-6)

(T. 18, U.S.C., §§ 892(a), 981(a)(1)(C), 1512(b)(1), 1512(b)(2)(A),
1512(c)(2), 1959(a)(1), 1962(d), 1963, 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
                                                Foreman

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
                                                Clerk

*Bail, $* _____

_____

*Elizabeth Geddes, James Gatta and Cristina Posa, Assistant U.S. Attorneys*