UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

— against —

THOMAS GIOELI, *et al.,*

        Defendants.

Case No. (S-6) 08 Cr. 240 (BMC) (RER)

---

**Defendant's Post Hearing Brief in**
**Support of his Motion to Suppress**

Dated: New York, New York
      March 4, 2011

                  LAW OFFICES OF ADAM D. PERLMUTTER, P.C.
                  260 Madison Avenue, Suite 1800
                  New York, NY 10016
                  Tel: (212) 679-1990
                  Fax: (212) 679-1995

                      — and —

                  LAW OFFICE OF CARL J. HERMAN
                  443 Northfield Avenue
                  West Orange, NJ  07052
                  Tel: (973) 324-1011
                  Fax: (973) 324-1133
                  Attorneys for Defendant Thomas Gioeli

Defendant Thomas Gioeli, by and through his attorneys, Law Offices of Adam D. Perlmutter, P.C. and Law Office of Carl J. Herman, hereby submits his post-hearing brief in further support of his motion for: (1) suppression of all items seized by the United States through Andrea Calbro, who undertook an illegal warrantless search of Gioeli's home; (2) a hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to examine the information submitted to the Court in support of the January 22, 2010 application for the search warrant; (3) suppression of all items seized by Agents of the Federal Bureau of Investigation from Gioeli's home on January 25, 2010 pursuant to the search warrant which was issued on January 22, 2010, by the Honorable Roanne L. Mann; and (4) such other and further relief as the Court deems to be in the interests of justice.

## PRELIMINARY STATEMENT

On February 11, 2011, the Court held a hearing on defendant's suppression motion to determine, in part, the extent of Special Agent Curtis's knowledge of the information underlying his search warrant affidavit. *See* Tr. 19:17-22.[1]  The hearing also addressed the related issue of whether the Curtis affidavit contained actual omissions or false statements, which would have been entirely in the control of the government. *Id.* at 17:12-16.

At the hearing, the evidence established that Curtis misrepresented Andrea Calabro's status as a confidential source because she had not been handled pursuant to the Attorney General's Guidelines for FBI Confidential Human Sources. As a result, he gave the magistrate judge the false impression that Calabro had been properly vetted by the FBI as a reliable source

---

[1] "Tr." refers to the transcript of the February 11, 2011 hearing.

1

of information. The affidavit also never disclosed that Calabro had actually stolen all of the photographs from the Gioeli home, as well as the address book, that formed the basis for probable cause in the search warrant application. Curtis also never informed the magistrate that Calabro was the target of a criminal investigation, or that there was no corroboration for her information about photographs in the Gioeli home.

Based upon the totality of material misrepresentations and omissions in the Curtis affidavit, the Court should grant suppression because the affidavit does not support the finding of probable cause without the Calabro information. In addition, the materials stolen by Andrea Calabro from the Gioeli home should also be suppressed. In particular, Calabro took the photographs on the government's instructions and the government failed to disclose in the Curtis affidavit that it knew these materials had been taken without Maureen Gioeli's consent.

## HEARING TESTIMONY

According to his hearing testimony, Curtis first met with Calabro in February 2009. Her husband had already proffered to the government and the FBI had previously asked Calabro whether she had anything that could be useful to the investigation. Tr. 22:17-23:2. At this initial meeting, Calabro provided Curtis with photographs, family documents, and an address book. Curtis testified that some of the photographs came from Maureen Gioeli. Tr. 23:3-9. Curtis had no corroboration that this was true. *See* Tr. 56:17-19.

Curtis testified that Calabro was concerned for her safety and "believed that Maureen Gioeli was keeping tabs on her" because "people were perceiving what was going on." Tr. 24:18-25:6.[2] Despite that concern, Curtis told Calabro to "keep up appearances" because the FBI

---

[2] Presumably referring to Dino Calabro's assistance to the government.

"didn't know whether Dino was going to be able to cooperate or not[.]" Tr. 25:2-4.³ Presumably also out of that profound concern for Calabro's safety and the need to "keep up appearances," Curtis told Calabro that if Maureen Gioeli invited her over, Calabro should go and borrow any photographs that Gioeli offered. *Id.* at 25:10-21. By contrast, in the warrant application Curtis describes how the FBI suggested to Calabro that she *ask* Maureen Gioeli to borrow photographs. *See* Curtis Affidavit at p. 13.⁴

On or about April 7, 2009, Calabro called Curtis to tell him that she had just left the Gioeli house and "made a mistake" by taking photographs and an address book "without asking permission to borrow them." Tr. 26:4-23. According to Calabro, while Maureen Gioeli was out of the room, Calabro "grabbed photographs [and] an address book . . . and she departed the residence." *Id.* In response to learning that Calabro had stolen things from Maureen Gioeli, Curtis advised her to continue meeting with Maureen Gioeli, but not to ask to borrow anything else. Tr. 28:1-8.

In order to avoid "increas[ing] suspicion that [Dino Calabro] was cooperating," Curtis decided to hold on to the materials Andrea Calabro had stolen, and eventually used those materials in support of an application for a search warrant. Tr. 28:6-13.

---

³   It is difficult to imagine a scenario in which the government would not want someone such as Dino Calabro, described as a captain in the Colombo family, as a cooperating witness.

⁴   Whether or not a source takes an active or passive role in gaining access to evidence is certainly a relevant and material consideration.

3

## ARGUMENT

## THE CURTIS AFFIDAVIT CREATED A MATERIALLY MISLEADING DESCRIPTION OF THE RELEVANT FACTS AND CIRCUMSTANCES

### 1. The Warrant Application Provided No Basis to Find Calabro Was Reliable

In order to establish probable cause based on information provided by a confidential informant, the information must be demonstratively reliable based on the "totality of the circumstances." *See Alabama v. White*, 496 U.S. 325, 330 (1990) ("reasonable suspicion, like probable cause, is dependent upon both the content of information possessed . . . and its degree of reliability); *see also Illinois v. Gates*, 462 U.S. 213, 230 (1983) (showing of reliability is generally required when probable cause is furnished by informant).

The Second Circuit considers an informant to be reliable if such information "is based on reliable means, such as first-hand observations or second-hand information from reliable sources, rather than unreliable means such as rumor or innuendo," and will find information "sufficiently reliable" where it has been "corroborated in material respects by independent evidence." *United States v. Wagner*, 989 F.2d 69, 72-73 (2d Cir. 1993). The factors relevant to assessing the reliability of informants when issuing warrants include that (1) the informant's statements qualified as admissions against penal interest by admitting to personal involvement in the alleged criminal activity, (2) the informants were witnesses to the alleged criminal activity, (3) the statements were corroborated by other investigative techniques such a pen register records, and (4) the informant was not a professional informant. *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990).

While "[i]nformation may be sufficiently reliable to support a probable cause finding if

4

the person providing the information has a track record of providing reliable information," *United States v. Wagner*, 989 F.2d 69, 72-73 (2d Cir. 1993), the Curtis affidavit made no mention of Calabro's track record – presumably because, as Curtis testified to, she had none. Tr. 55:24-25.

Notwithstanding, the Curtis affidavit sought to create the patina of Calabro's reliability by designating her a confidential source as "CS-1" throughout. *See* Curtis Aff. at ¶ 12. Curtis admitted, however, that Calabro was not handled in accordance with the Attorney General's Guidelines Regarding the Use of FBI Confidential Human Sources. *See* Defendant Ex. A.[5] Curtis's misrepresentation of Calabro as a confidential source conveyed the false impression that she had been properly vetted and reviewed by the FBI when, in fact, no such process had occurred.

Curtis's decision to not properly handle Calabro as a Confidential Human Source, and to not disclose this fact to the Court was improper. The Confidential Human Source Guidelines are "mandatory" and agents "have a duty of candor in the discharge of their responsibilities pursuant to th[e] Guidelines." *See* Defendant's Ex. At at 230-231, §§I.A.3 and 6. Calabro qualified as a Confidential Human Source under the Guidelines because she was believed to be providing reliable information and the FBI wanted to maintain her confidentiality. Specifically, the Guidelines define a Confidential Human Source as follows:

> any individual who is believed to be providing useful and credible
> information to the FBI for any authorized information collection
> activity, and from whom the FBI expects or intends to obtain

---

[5]  A copy of the Guidelines was admitted as Defendant Gioeli's Exhibit A at the February 11, 2011 hearing. A copy of that exhibit is appended to this memorandum for the Court's convenience.

5

>additional useful and credible information in the future, and whose identity, information or relationship with the FBI warrants confidential handling.

Defendant Ex. A at 233, § I.B.7. The Guidelines direct that all Confidential Human Sources must be subjected to an initial validation process, *id.* at 241, § II.A.1, during which the FBI must document, *inter alia*, "whether the person...is reasonably believed to be the subject or target of a pending criminal investigation," *id.* at 242, § II.A.3.c. If the source is under investigation for criminal conduct, Department of Justice personnel are prohibited from interfering with or impeding any such investigation, *id.* p. 5, and if a source engages in criminal activity while assisting the FBI, it must "promptly" be reported to the appropriate federal prosecutor with notification to the chief federal prosecutor and the FBI Special Agent in Charge. *Id.* at 270-71, § VI.B.1.a-c.

Curtis's failure to comply with the Confidential Human Source Guidelines allowed him to side-step disclosure in his affidavit of important information about Calabro, that she had not undergone the initial validation procedures or, moreover, that she was the subject of an ongoing criminal investigation. Moreover, Curtis did not disclose to the court that Calabro had received a benefit from the government by not reporting or taking any action as a result of Calabro having stolen photographs and the address book from the Gioeli home.

It is particularly striking that the Curtis affidavit made no mention of the fact that Calabro was the subject of an ongoing criminal investigation involving apparently false documents. Specifically, Curtis testified that the FBI had been investigating Calabro regarding documents seized in 2000, and had compelled her to produce handwriting exemplars in 2008 in connection with those documents. His investigation was still ongoing at the time of the warrant application

and apparently remained ongoing through the time of the February 11th hearing. Tr. 40:24-41:19.[6] Notwithstanding this critical fact, Curtis made no mention of this investigation into Calabro's criminal conduct in the warrant affidavit. "[A]ny crime involving dishonesty necessarily has an adverse effect on an informant's credibility. In the absence of countervailing evidence to bolster the informant's credibility or the reliability of the tip, an informant's criminal past involving dishonesty is fatal to the reliability of the informant's information, and his/her testimony cannot support probable cause." *United States v. Reeves*, 210 F.3d 1041, 1045 (9th Cir. 2000) (citation omitted).[7]

Finally, it is also deeply troubling that the Curtis affidavit gave the false impression that the photographs provided by Calabro in support of the search warrant were obtained with Maureen Gioeli's consent when, in fact, they were stolen. Specifically, the Curtis affidavit states that Calabro "asked Gioeli's wife whether [Calabro] could borrow some of Gioeli's wife's photographs; Gioeli's wife agreed. [Calabro] thereafter reviewed- in the presence of Gioeli's wife - numerous photo albums and miscellaneous photographs in Gioeli's dining room and took several photographs depicting Calabro and other members and associates of the Colombo family." Curtis Aff. at ¶ 23(g). In fact, Curtis testified at the hearing that Calabro had stolen all of the photographs. Specifically, Curtis stated that Calabro "called me up and she said that she just left the residence and that she believes that she made a mistake because she took photographs and an address book without asking permission to borrow them." Tr. at 26:10-13. Curtis's failure to disclose this

---

[6] While those exemplars were inexplicably never examined, Tr. 41:15-19, the mere fact that they were obtained shows that Curtis had reason to doubt Calabro's truthfulness.

[7] Although an informant's reliability may be buttressed by a statement against penal interest, *United States v. Roswell*, 903 F.2d 899, 903 (2d Cir. 1990), there is no such issue in this case.

7

information in his affidavit further undermined the ability of the magistrate to properly evaluate Calabro's reliability as a basis for issuing the warrant.[8]

2.  **Calabro's Information Was Uncorroborated**

While the Curtis Affidavit states that Calabro's information was "corroborated by other cooperating witnesses, confidential sources, physical evidence, and visual surveillance," it offers no explanation of that claim. *See* Curtis Affidavit at p. 10. Moreover, when put to the question, Curtis admitted that he had no corroboration regarding information about photographs. Tr. at 47:7-13; 56:17-19; 56:25-57:2. He also provided no support with respect to the request to search for cellular telephones. *See* Tr. 57:3-5. Curtis also conceded that, despite his representation in his affidavit, "not everything was corroborated." Tr. 56:11-16.

Where a finding of probable cause is based on information from an informant of "unknown reliability," it has been explained that "the extent to which the police have corroborated the informant's information – always an important factor – is key." *United States v. Dismuke*, 593 F.3d 582, 587 (7th Cir. 2010); *see also Phaneuf v. Fraikin*, 448 F.3d 591, 598 (2d Cir. 2006) (court should consider whether the information an informant has provided is corroborated by independent investigation); *United States v. Jackson*, 470 F.3d 299, 307 (6th Cir.

---

[8] Along the same lines, it also remains troubling that Curtis did not disclose that Calabro entered into the Gioeli home under the guise of seeking photographs for her husband's death penalty submission. While defendant believes that utilizing the review process is so improper that that it warrants suppression in and of itself, at the very least the omission is material because it prevented the magistrate from knowing the true extent of Maureen Gioeli's consent, to wit, that Calabro was only entitled to take photographs relevant to her husband's death penalty submission. In the absence of making this disclosure, Curtis hid from the magistrate that he, in fact, knew all of the photographs supporting the search warrant were stolen and not obtained on consent as the affidavit improperly suggests.

8

2006) ("While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, . . . in the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police corroboration.") (citation omitted); *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004) (same); *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (when confronted with hearsay information from a confidential informant, "a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information . . .").

In the present case, Curtis had no corroboration of even the most basic information provided by Calabro and he failed to note that in his affidavit. For example, he testified that Calabro told him that she had obtained negatives from the Gioeli home. But when Curtis retrieved the materials from Calabro, there were no negatives. *See* Tr. 47:22-48:9; 50:7-51:3. Notwithstanding this discrepancy, Curtis apparently never questioned Calabro about the whereabouts of the missing negatives or why she had failed to produce them. *Id.* In fact, Curtis admitted that he never even reviewed any of the materials with Calabro. Tr. 51:18-25. Moreover, Curtis testified that the only reason he believed the materials Calabro gave him came from the Gioeli home was because Calabro told him they did. Tr. 47:7-13, 51:16-17 ("Q: So you are just taking her word for it, correct? A: Yes.").[9]

Moreover, in the present case, Curtis purported to buttress Calabro's claims with items that were obtained by Calabro with sweeping generalities. For example, with respect to the

---

[9]   Nor did the magistrate had any opportunity to observe Calabro personally, *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002) ("The court should also consider whether the informant personally appeared and presented an affidavit or testified before the magistrate, thus allowing the judge to evaluate the informant's knowledge, demeanor, and sincerity.")

9

claim that cell phone and electronic devices would be found in the home, the Curtis Affidavit explains that "individuals involved in organized crime often communicate . . . using cellular telephones, blackberries [sic], and pagers." Curtis Aff. at ¶27. However, it is simply absurd to allege that such a statement has any relevance to a determination of probable cause or offers any corroboration for Calabro's information.[10] Similarly, Curtis later claims he knows that "individuals involved in organized crime store criminal associates' contact information on the backs of business cards and other miscellaneous papers" – as if people do not commonly make notations of this sort. *Id.* Moreover, while a full three pages of the Curtis Affidavit is dedicated to describing the structure of the Colombo family, such information is irrelevant to the determination at hand. *See United States v. Prideaux-Wentz*, 543 F.3d 954, 960 (7th Cir. 2008) ("rambling boilerplate recitations designed to meet all law enforcement needs do not produce probable cause.") (quotations and citation omitted). In short, in addition to not having corroboration of the Calabro information, without that information, the Curtis affidavit falls completely short of the mark for establishing probable cause for the search warrant.

---

[10] In 2010 there were approximately 293 million people in the United States (more than 90% of the population) who used mobile communications devices, the overwhelming majority of whom have no connection whatsoever to organized crime. *See* http://files.ctia.org/pdf/CTIA_Survey_Midyear_2010_Graphics.pdf

## CONCLUSION

WHEREFORE, for the reasons stated herein, as well in defendant's prior submission in support of the present motion, the Court should suppress all evidence stolen from the Gioeli home by Calabro and all evidence seized subsequently by the government as a result of the search warrant in question.

Dated: New York, New York
       March 4, 2011

LAW OFFICES OF ADAM D. PERLMUTTER, P.C.

By: _____
        Adam D. Perlmutter

260 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (212) 679-1990
Fax: (212) 679-1995

- and -

LAW OFFICE OF CARL J. HERMAN
443 Northfield Avenue
West Orange, NJ 07052
Tel: (973) 324-1011
Fax: (973) 324-1133
Attorneys for Defendant Thomas Gioeli
