# DEFENDANT'S HEARING
# EXHIBIT "A"

224

# THE ATTORNEY GENERAL'S GUIDELINES REGARDING THE USE OF  FBI CONFIDENTIAL HUMAN SOURCES

225

## TABLE OF CONTENTS

I.  GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.  PURPOSE AND SCOPE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.  DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1.  "Special Agent in Charge" or "SAC" . . . . . . . . . . . . . . . . . . . . . . 3

        2.  "Federal Prosecuting Office" or "FPO" . . . . . . . . . . . . . . . . . . . . 3

        3.  "Chief Federal Prosecutor" or "CFP" . . . . . . . . . . . . . . . . . . . . 4

        4.  "FPO Attorney" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        5.  "Confidential Human Source Coordinator" . . . . . . . . . . . . . . . . . 4

        6.  "FPO Participating in the Conduct of an Investigation" . . . . . . . . . . 4

        7.  "Confidential Human Source" . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        8.  "Senior Leadership Source" . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        9.  "High-Level Government or Union Source" . . . . . . . . . . . . . . . . . 5

        10.  "Tier 1 Otherwise Illegal Activity" . . . . . . . . . . . . . . . . . . . . . . 5

        11.  "Tier 2 Otherwise Illegal Activity" . . . . . . . . . . . . . . . . . . . . . . 7

        12.  "Fugitive" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        13.  "Human Source Review Committee" or "HSRC" . . . . . . . . . . . . . 7

        14.  "National Security Investigation". . . . . . . . . . . . . . . . . . . . . . . . 7

        15.  "International Terrorism Investigation" . . . . . . . . . . . . . . . . . . . . 7

    C.  PROHIBITION ON COMMITMENTS OF IMMUNITY BY THE FBI . . . . 8

    D.  MAINTAINING CONFIDENTIALITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

i

226

    1.    Obligation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    2.    Security of Material . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    3.    Continuing Obligation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    4.    Exceptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    5.    Disclosures of Confidential Human Sources . . . . . . . . . . . . . . . . . . . . 10

E.    EXCEPTIONS AND DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . 10

F.    RIGHTS OF THIRD PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

G.    COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.    VALIDATION OF A CONFIDENTIAL HUMAN SOURCE . . . . . . . . . . . . . . . 12

    A.    INITIAL VALIDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        1.    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        2.    Time Limits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        3.    Required Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    B.    INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    C.    ANNUAL VALIDATION REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.    SPECIAL APPROVAL REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . 17

    A.    DEFINED CATEGORIES OF SOURCES . . . . . . . . . . . . . . . . . . . . . . . 17

        1.    Required Early Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

            a.    "Senior Leadership Source" . . . . . . . . . . . . . . . . . . . . . . 17

            b.    "Privileged or Media Source" . . . . . . . . . . . . . . . . . . . . . 17

            c.    "High-Level Government or Union Source" . . . . . . . . . . . . . 18

        2.    Long-Term Sources . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

3.   Approval Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

a.   Composition of the HSRC . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

b.   Access to FBI Information  . . . . . . . . . . . . . . . . . . . . . . . . . . 19

c.   Time Limit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

d.   Notice to FPO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

e.   Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

f.   International Terrorism or National Security Sources  . . . . . 20

B.   FEDERAL PRISONERS, PROBATIONERS, PAROLEES,
AND SUPERVISED RELEASEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

C.   CURRENT OR FORMER PARTICIPANTS IN THE WITNESS
SECURITY PROGRAM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

D.   STATE OR LOCAL PRISONERS, PROBATIONERS, PAROLEES,
OR SUPERVISED RELEASEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

E.   FUGITIVES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IV.   RESPONSIBILITIES REGARDING CONFIDENTIAL
HUMAN SOURCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

A.   NO INTERFERENCE WITH AN INVESTIGATION OF A
CONFIDENTIAL SOURCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

B.   PROHIBITED TRANSACTIONS AND RELATIONSHIPS . . . . . . . . . . . 27

C.   MONETARY PAYMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

1.   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

2.   Prohibition Against Contingent Payments . . . . . . . . . . . . . . . . . . 28

3.   Approval for Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

4.   Documentation of Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

228

| | 5. | Accounting and Reconciliation Procedures | 29 |
| | 6. | Coordination with Prosecution | 29 |
| **V.** | | **AUTHORIZATION OF OTHERWISE ILLEGAL ACTIVITY** | 30 |
| | A. | GENERAL PROVISIONS | 30 |
| | B. | AUTHORIZATION PROCEDURES | 30 |
| | | 1. Written Authorization | 30 |
| | | 2. Findings | 32 |
| | | 3. Instructions | 34 |
| | | 4. Precautionary Measures | 36 |
| | | 5. Suspension of Authorization | 36 |
| | | 6. Revocation of Authorization | 36 |
| | | 7. Renewal and Expansion of Authorization | 38 |
| | | 8. Emergency Authorization | 38 |
| | | 9. Designees | 39 |
| | | 10. Record Keeping Procedures | 39 |
| **VI.** | | **SPECIAL NOTIFICATION REQUIREMENTS** | 40 |
| | A. | NOTIFICATION OF INVESTIGATION OR PROSECUTION | 40 |
| | B. | NOTIFICATION OF UNAUTHORIZED ILLEGAL ACTIVITY | 41 |
| | C. | NOTIFICATION REGARDING CERTAIN FEDERAL JUDICIAL PROCEEDINGS | 42 |
| | D. | PRIVILEGED OR EXCULPATORY INFORMATION | 43 |
| | E. | LISTING A CONFIDENTIAL INFORMANT IN AN | |

iv

229

ELECTRONIC SURVEILLANCE APPLICATION .................. 44

F.   RESPONDING TO REQUESTS FROM FPO ATTORNEYS
     REGARDING A CONFIDENTIAL HUMAN SOURCE ............... 44

G.   EXCEPTIONS TO THE SPECIAL NOTIFICATION
     REQUIREMENTS ................................................. 45

H.   FILE REVIEWS  .................................................. 45

I.   DESIGNEES ....................................................... 45

VII.  CLOSING A CONFIDENTIAL HUMAN SOURCE ....................... 46

A.   GENERAL PROVISIONS  ........................................ 46

B.   DELAYED NOTIFICATION TO A CONFIDENTIAL HUMAN
     SOURCE ........................................................... 46

C.   CONTACTS WITH FORMER CONFIDENTIAL HUMAN
     SOURCES CLOSED FOR CAUSE ................................ 47

D.   COORDINATION WITH FPO ATTORNEYS ...................... 47

230

## I. GENERAL PROVISIONS

**A.    PURPOSE AND SCOPE**

1.    The purpose of these Guidelines is to set policy for all Department of Justice

(DOJ) personnel regarding the use of all Confidential Human Sources, as further

defined below, that are operated by the Federal Bureau of Investigation (FBI) in

any of the FBI's investigative programs or other authorized information collection

activities.

2.    These Guidelines are issued under the authority of the Attorney General as

provided in Title 28, United States Code, Sections 509, 510, and 533.

3.    These Guidelines are mandatory and supersede: the Attorney General's Guidelines

Regarding the Use of Confidential Informants (May 30, 2002), to the extent that

they apply to the FBI; the Attorney General Procedure for Reporting and Use of

Information Concerning Violations of Law and Authorization for Participation in

Otherwise Illegal Activity in FBI Foreign Intelligence, Counterintelligence or

International Terrorism Intelligence Investigations (August 8, 1988), to the extent

that it applies to assets; and the Attorney General's Guidelines for FBI National

Security Investigations and Foreign Intelligence Collection (October 31, 2003)

("NSIG"), to the extent that they are inconsistent with these Guidelines.[1]  These

---

[1]However, techniques whose use is authorized for validating assets, as outlined in the
Attorney General's Guidelines for FBI National Security Investigations and Foreign Intelligence
Collection, to identify potential assets, to collect information to maintain the cover or credibility
of assets, or to validate assets (including determining suitability or credibility) may continue to be
utilized in relation to Confidential Human Sources in connection with activities related to threats
to the national security.

231

Guidelines do not supersede otherwise applicable ethical and legal obligations of Department of Justice attorneys, which can, in certain circumstances (for example, with respect to contacts with represented persons), have an impact on FBI conduct.

4.  These Guidelines apply to the use of a Confidential Human Source in a foreign country only to the extent that the Confidential Human Source is reasonably likely to testify in a domestic case.

5.  These Guidelines do not limit the ability of the FBI to impose additional restrictions on the use of Confidential Human Sources.

6.  All DOJ personnel have a duty of candor in the discharge of their responsibilities pursuant to these Guidelines.

7.  These Guidelines shall be effective 180 days after they are approved by the Attorney General.  However, to the extent provided in FBI policy: (i) activities commenced under pre-existing guidelines may be continued and completed in conformity with such pre-existing guidelines, notwithstanding the approval by the Attorney General and effectiveness of these Guidelines, and (ii) restrictions on the use of human sources under pre-existing guidelines which are not perpetuated by these Guidelines need not be observed following the Attorney General's approval of these Guidelines, even in relation to activities commenced under pre-existing guidelines, if the requirements of these Guidelines for such activities are satisfied. To the extent that paragraph III(A)(3)(f) cannot be fully implemented within 180 days, the FBI and the National Security Division will establish a protocol to

2

232

govern the review of sources who would otherwise be subject to that paragraph. The FBI shall adopt such measures as may be needed to effect an orderly and expeditious transition to the new Guidelines, without disruption or impediment to ongoing activities within their scope.  The FBI shall keep the Deputy Attorney General, the Assistant Attorney General of the Criminal Division, and the Assistant Attorney General for National Security informed of such measures as directed by the Deputy Attorney General.

**B.**   **DEFINITIONS**

1.   "Special Agent in Charge" or "SAC" – the FBI Special Agent in Charge of an FBI Field Office (including an Acting Special Agent in Charge), except that the functions authorized for Special Agents in Charge by these Guidelines may also be exercised by the Assistant Director in Charge in an FBI Field Office headed by an Assistant Director, and by FBI Headquarters officials designated by the Director of the FBI.

2.   "Federal Prosecuting Office" or "FPO" – any of the following Department of Justice components:

   a.   The United States Attorneys' Offices;

   b.   The Criminal Division;

   c.   The National Security Division ("NSD");

   d.   Any other litigating component of the Department of Justice with authority to prosecute federal criminal offenses, including the relevant sections of

233

the Antitrust Division, Civil Division, Civil Rights Division,

Environmental and Natural Resources Division, and the Tax Division.

3.    "Chief Federal Prosecutor" or "CFP" – the head of an FPO.

4.    "FPO Attorney" –  an attorney employed by, or working under the direction of, an

FPO.

5.    "Confidential Human Source Coordinator" – a supervisory FPO Attorney

designated by the CFP to facilitate compliance with these Guidelines.

6.    "FPO participating in the conduct of an investigation" –  any FPO employing or

directing an FPO Attorney assigned to a matter whose approval is necessary

pursuant to these Guidelines, or whose approval was sought or obtained regarding

any investigative or prosecutorial matter including the issuance of a search or

arrest warrant, electronic surveillance order, subpoena, indictment or other related

matter.

7.    "Confidential Human Source" – any individual who is believed to be providing

useful and credible information to the FBI for any authorized information

collection activity, and from whom the FBI expects or intends to obtain additional

useful and credible information in the future, and whose identity, information or

relationship with the FBI warrants confidential handling.

8.    "Senior Leadership Source" –  a Confidential Human Source who is in a position

to exercise significant decision-making authority over, or to otherwise manage

and direct, the unlawful activities of the participants in a group or organization

involved in unlawful activities that are:

4

234

    a.    nationwide or international in scope; or

    b.    deemed to be of high significance to the FBI's criminal investigative

        priorities, even if the unlawful activities are local or regional in scope.[2]

9.    "High-Level Government or Union Source" – a Confidential Human Source who

    is either (a) in relation to the federal government or the government of a state, the

    chief executive, the official next in succession to the chief executive, or a member

    of the legislature, or (b) a president, secretary-treasurer or vice president of an

    international or national labor union or the principal officer or officers of a

    subordinate regional entity of an international or national labor union.[3]

10.    "Tier 1 Otherwise Illegal Activity" — any activity that:

    a.    would constitute a misdemeanor or felony under federal, state, or local law

        if engaged in by a person acting without authorization; and

    b.    that involves -

        (i)    the commission, or the significant risk of the commission, of any act

        of violence by a person or persons other than the Confidential Human

        Source;[4]

---

[2]Such organizations shall include, but are not limited to: any La Cosa Nostra Family, Eurasian Organized Crime Group, or Asian Criminal Enterprise which is recognized by FBI Headquarters; and any domestic or international Terrorist Organization, which is recognized by FBI Headquarters.

[3]The term "regional entity" shall not include a local union or a group of local unions, such as a district council, combined together for purposes of conducting collective bargaining with employers.

[4]Bookmaking that is significantly associated with, or substantially controlled by, organized crime ordinarily will be within the scope of this definition. Thus, for example, where bookmakers have a financial relationship with members or associates of organized crime, and/or

235

    (ii)   corrupt conduct, or the significant risk of corrupt conduct, by an elected public official or a public official in a high-level decision-making or sensitive position in federal, state, or local government;

    (iii)   the manufacturing, importing, exporting, possession, or trafficking of controlled substances in a quantity equal to or exceeding those quantities specified in United States Sentencing Guidelines § 2D1.1(c)(1);

    (iv)   financial loss, or the significant risk of financial loss, in an amount equal to or exceeding those amounts specified in United States Sentencing Guidelines § 2B1.1(b)(1)(I);[5]

    (v)   a Confidential Human Source providing to any person (other than an FBI agent) any item, service, or expertise that is necessary for the commission of a federal, state, or local offense, which the person otherwise would have difficulty obtaining; or

    (vi)   a Confidential Human Source providing to any person (other than an FBI agent) any quantity of a controlled substance, an explosive, firearm, or

---

use members or associates of organized crime to collect their debts, the conduct of those bookmakers would create a significant risk of violence, and would therefore fall within the definition of Tier 1 Otherwise Illegal Activity.

[5]The citations to the United States Sentencing Guidelines (USSG) Manual are to the 2005 Edition. The references herein to particular USSG Sections are intended to remain applicable to the most closely corresponding USSG level in subsequent editions of the USSG Manual in the event that the cited USSG provisions are amended. Thus, it is intended that subsection (iii) of this paragraph will remain applicable to the highest offense level in the Drug Quantity Table in future editions of the USSG Manual, and that subsection (iv) of the paragraph will remain applicable to dollar amounts that, in future editions of the USSG Manual, trigger sentencing enhancements similar to that set forth in the current section 2B1.1(b)(1)(I). Any ambiguities in this regard should be resolved by the Assistant Attorney General for the Criminal Division.

236

other dangerous weapon, or other item that poses an immediate and significant threat to public safety, with little or no expectation of its recovery by the FBI.

11. "Tier 2 Otherwise Illegal Activity" - any other activity that would constitute a misdemeanor or felony under federal, state, or local law if engaged in by a person acting without authorization.

12. "Fugitive" – an individual:

   a.  for whom a federal, state, or local law enforcement agency has placed a wanted record in the FBI's National Crime Information Center (other than for a traffic or petty offense); or

   b.  for whom a federal warrant has been issued; and

   c.  for whom the law enforcement agency is willing, if necessary, to seek his or her extradition to its jurisdiction.

13. "Human Source Review Committee" or "HSRC" – A committee convened pursuant to these Guidelines to review various matters under these Guidelines as set forth below in paragraph III (A).

14.  "National Security Investigation" – A national security investigation as defined in Part VIII.Q of NSIG.

15. "International Terrorism Investigation" – An investigation relating to international terrorism, whether conducted under NSIG, under the Attorney General's Guidelines on General Crimes, Racketeering Enterprise and Terrorism Enterprise

7

237

Investigations (May 30, 2002), or under other guidelines issued by the Attorney
General.

**C.     PROHIBITION ON COMMITMENTS OF IMMUNITY BY THE FBI**

The FBI does not have any authority to make any promise or commitment that would
prevent the government from prosecuting a Confidential Human Source for criminal
activity that is not authorized pursuant to Section V below or that would limit the use of
any evidence by the government, without the prior written approval of the FPO that has
primary jurisdiction to prosecute the Confidential Human Source for such criminal
activity.  An FBI Agent must exercise due diligence to avoid giving any person the
erroneous impression that he or she has any such authority.

**D.     MAINTAINING CONFIDENTIALITY**

   **1.     Obligation**

   DOJ Personnel have an obligation to maintain as confidential the identity of any
   Confidential Human Source.  Consistent with that obligation, DOJ personnel shall
   not disclose the identity of a Confidential Human Source or information that
   Source has provided that would have a tendency to identify the Source unless
   disclosure is appropriate under one of the exceptions referenced below in
   paragraph D (4).

   **2.     Security of Material**

   If the FBI provides DOJ personnel with any material containing:

   a.     the identity of a Confidential Human Source;

   b.     information that may possibly identify the Source; or

8

238

c.     information that the Source has provided;

such material must be secured in a manner consistent with its security markings or

classifications, when not in the direct care and custody of DOJ personnel.

**3.     Continuing Obligation**

DOJ personnel have a continuing obligation after leaving employment with the

Department of Justice to maintain as confidential the identity of any Confidential

Human Source and the information that Source provided, unless disclosure is

appropriate under one of the exceptions referenced below in paragraph D (4).

**4.     Exceptions**

a.     Notwithstanding paragraph I (D) (1), DOJ personnel may make

appropriate disclosures:

i.     to FBI Agents who need to know the identity of the Source in order

to perform their official duties.  However, an FPO must coordinate

with the FBI Agent directing the Source to obtain the required

approval of the FBI-SAC or his or her designee prior to such

disclosure;

ii.    to other law enforcement, intelligence, immigration, diplomatic,

and military officials who need to know the identity to perform

their official duties, subject to the prior approval of the FBI-SAC

or his or her designee;

iii.   when the Confidential Human Source has agreed to testify in a

grand jury or judicial proceeding.

239

 b. All DOJ personnel must disclose the identity of a Confidential Human Source, and the information that Source has provided, when required by court order, law, regulation, these Guidelines or other Department of Justice policies.

**5.** **Disclosures to Confidential Human Sources**

 DOJ personnel must exercise due diligence to avoid disclosing any confidential investigative information to a Confidential Human Source (e.g., information relating to electronic surveillance, search warrants, indictments and other charging documents, or the identity of other actual or potential informants), other than what is necessary and appropriate for operational reasons.

**E.** **EXCEPTIONS AND DISPUTE RESOLUTION**

 **1.** Whenever an FBI SAC, a CFP, or the designee of an FBI SAC or CFP, believes that extraordinary circumstances exist that warrant an exception to any provision of these Guidelines, or whenever there is a dispute between or among entities (other than a dispute with the Assistant Attorney General (AAG) of either the Criminal Division or National Security Division of the Department of Justice) regarding these Guidelines, an exception must be sought from, or the dispute shall be resolved by, the AAG for the Criminal Division or the National Security Division (whichever is appropriate) or his or her designee.

 **2.** Whenever there is a dispute with the AAG for either the Criminal Division or National Security Division of the Department of Justice, such dispute shall be resolved by the Deputy Attorney General or his or her designee.

10

240

3.  The Deputy Attorney General, or his or her designee, shall hear appeals, if any, from decisions of the Assistant Attorneys General of the Criminal Division and the National Security Division.

4.  Any exception granted or dispute resolved pursuant to this paragraph shall be documented in the FBI's files.

**F.  RIGHTS OF THIRD PARTIES**

Nothing in these Guidelines is intended to create or does create an enforceable legal right or private right of action by a Confidential Human Source or any other person.

**G.  COMPLIANCE**

1.  Within 60 days of the approval of these Guidelines by the Attorney General, the FBI shall submit an implementation plan to the respective Assistant Attorneys General for the Criminal Division and the National Security Division of the Department of Justice for review.  The plan must address all the requirements imposed upon the FBI by these Guidelines.

2.  Within 60 days of the approval of these Guidelines, the FBI in conjunction with the Criminal Division of the Department of Justice, shall establish a Human Source Review Committee to perform the functions set forth in Section III (A) below.

3.  Within 60 days of the approval of these Guidelines, each FPO shall designate one or more supervisory FPO Attorneys to serve as "Confidential Human Source Coordinators," whose duties shall include:

    a.  coordinating the responsibilities of the FPO under these Guidelines;

11

241

    b.    serving as a point of contact for the FBI for all matters pursuant to these Guidelines; and

    c.    approving matters pursuant to these Guidelines on behalf of the FPO when no other FPO Attorney has been assigned or when the assigned FPO Attorney is unavailable.

4.    Each CFP and FBI-SAC shall implement comprehensive periodic training of its respective personnel regarding these Guidelines.

5.    Each CFP shall coordinate with the appropriate FBI SAC to develop procedures to maximize the accessibility and availability of the FPO's Confidential Human Source Coordinators.

**II.    VALIDATION OF A CONFIDENTIAL HUMAN SOURCE**

**A.    INITIAL VALIDATION**

    **1.    General**

    All FBI Confidential Human Sources must be subjected to the validation process as provided in these Guidelines and other FBI policies.

    **2.    Time Limits**

    The FBI, in consultation with the Assistant Attorneys General of the Criminal Division and the National Security Division of the Department of Justice, shall establish reasonable time limits for subjecting a Source to the Initial Validation process that are compatible with these Guidelines and other FBI policies.

242

### 3. Required Information

In opening a Confidential Human Source, an FBI Agent shall document information pertaining to that Source and forward it to an appropriate FBI Supervisor for an Initial Validation. At a minimum, an FBI Agent shall provide the following information to facilitate the Initial Validation process:

a. basic identifying information that establishes the person's true identity, or the FBI's efforts to establish the individual's true identity;

b. a photograph of the person (when possible);

c. whether the person has a criminal history, is reasonably believed to be the subject or target of a pending criminal investigation, is under arrest, or has been charged in a pending prosecution;

d. the person's motivation for providing information or assistance, including any consideration sought from the government for this assistance;

e. any promises or benefits, and the terms of such promises or benefits, that are given a Confidential Human Source by the FBI, FPO or any other law enforcement agency (if known, after exercising reasonable efforts); and

f. any other information that is required to be documented in the Confidential Human Source's file pursuant to these Guidelines and FBI policies, including but not limited to, the instructions provided to the Confidential Human Source.

13

243

**B.    INSTRUCTIONS**

1.    In opening a Confidential Human Source, at least one FBI Agent, along with one additional Agent or other government official present as a witness, shall review with the Confidential Human Source instructions as required by these Guidelines and other FBI policies.  At a minimum, these instructions must indicate that:

a.    information provided by the Confidential Human Source to the FBI must be truthful;

b.    the Confidential Human Source's assistance and the information provided are entirely voluntary;

c.    the United States Government will strive to protect the Confidential Human Source's identity but cannot guarantee that it will not be divulged;

d.    the Confidential Human Source must abide by the instructions of the FBI and must not take or seek to take any independent action on behalf of the United States Government.

2.    The following additional instructions shall also be reviewed with a Confidential Human Source if applicable to the particular circumstances of the Confidential Human Source:

a.    The FBI on its own cannot promise or agree to any immunity from prosecution or other consideration by a FPO, a state or local prosecutor, or a Court in exchange for the Confidential Human Source's cooperation, because the decision to confer any such benefit lies within the exclusive discretion of the FPO and the Court.  However, the FBI will consider (but

14

244

not necessarily act upon) a request by the Confidential Human Source to

advise the appropriate FPO, the state or local prosecutor, or Court of the

nature and extent of his or her assistance to the FBI;[6]

b.    The Confidential Human Source has not been authorized to engage in any

criminal activity and has no immunity from prosecution for any

unauthorized criminal activity;[7]

c.    The Confidential Human Source is not an employee of the United States

Government and may not represent himself or herself as such;[8]

d.    The Confidential Human Source may not enter into any contract or incur

any obligation on behalf of the United States Government, except as

specifically instructed and approved by the FBI;[9]

e.    The FBI cannot guarantee any rewards, payments, or other compensation

to the Confidential Human Source;

---

[6] This instruction should be provided if there is any apparent issue of criminal liability or penalties that relates to the Confidential Human Source.

[7]  This instruction should be provided to any Confidential Human Source who is not authorized to engage in otherwise illegal activity.  See paragraph V (B)(3) for instructions that must be provided to a Confidential Human Source who is, in fact, authorized to engage in otherwise illegal conduct.

[8]This instruction should be provided to all Confidential Human Sources except under those circumstances where the Source has previously been, and continues to be, otherwise employed by the United States Government.

[9]This instruction should be provided to all Confidential Human sources except under those circumstances where the Source is otherwise authorized to enter a contract or incur an obligation on the behalf of the United States.

245

     f.     In the event that the Confidential Human Source receives any rewards, payments, or other compensation from the FBI, the Source is liable for any taxes that may be owed; and

     g.     No promises or commitments can be made, except by the United States Department of Homeland Security, regarding the alien status of any person or the right of any person to enter or remain in the United States.[10]

3.     The content and meaning of each of the foregoing instructions must be clearly conveyed to the Confidential Human Source. Immediately after these instructions have been given, the FBI Agent shall require the Confidential Human Source to acknowledge his or her receipt and understanding of the instructions. The FBI Agent, and the additional Agent or other government official present as a witness, shall document that the instructions were reviewed with the Confidential Human Source and that the Source acknowledged the instructions and his or her understanding of them. As soon as practicable thereafter, an FBI Supervisor shall review and, if warranted, approve the documentation.

4.     The instruction and documentation procedures shall be repeated to the Confidential Human Source whenever it appears necessary or prudent to do so, and, in any event, at least annually.

---

[10] This instruction should be provided if there is any apparent issue of immigration status that relates to the Confidential Human Source.

246

## C.   ANNUAL VALIDATION REVIEW

    1.    Each Confidential Human Source's file shall be reviewed at least annually consistent with these Guidelines and other FBI policies.

    2.    The FBI shall establish procedures to ensure that all available information that might materially alter a prior validation assessment, including, but not limited to, information pertaining to unauthorized illegal activity by the Confidential Human Source, is promptly reported to an FBI Supervisor and then recorded and maintained in the file of the Confidential Human Source.

## III.   SPECIAL APPROVAL REQUIREMENTS

## A.   DEFINED CATEGORIES OF SOURCES

    **1.   Required Early Approval**

Within 60 days of utilizing a Confidential Human Source who meets any of the following definitions, the FBI must seek written approval, in accordance with the relevant provisions set forth in paragraph III (A)(3) below, for the continued use of the Source unless an FPO Attorney has existing oversight of a Source because the Source has agreed to testify in a federal criminal prosecution:

    a.    "Senior Leadership Source" -- a Confidential Human Source as defined in paragraph I (B)(8), above;

    b.    "Privileged or Media Source" -- A Confidential Human Source who is under the obligation of a legal privilege of confidentiality or affiliated with the media;

17

247

    c.     "High-Level Government or Union Source" – A Confidential Human Source as defined in paragraph I (B)(9), above.

**2.    Long-Term Sources**

When a Confidential Human Source has been registered for more than five consecutive years, and to the extent such a Source remains open, every five years thereafter, the FBI must seek written approval, in accordance with the relevant provisions set forth in paragraph III (A)(3) below, for the continued use of the Source.

**3.    Approval Process**

All FBI requests seeking approval for the continued use of a Confidential Human Source who meets any of the definitions set forth in paragraphs III (A)(1) & (2) above, _except_ those Sources providing information for use in an international terrorism investigation, national security investigation, or other activity under NSIG, shall be reviewed and determined by a Human Source Review Committee (HSRC).

    a.     Composition of the HSRC - - At least one HSRC shall be established by the FBI and the Criminal Division of the Department of Justice.  The Chairperson of each HSRC shall be an FBI Agent at or above the level of Deputy Assistant Director (or its equivalent). The membership of each HSRC shall include: two FBI Agents, and two attorneys from the FBI's Office of General Counsel, as designated by the Chairperson; and five FPO Attorneys designated by the AAG for the Criminal Division. One of

18

248

the five FPO Attorneys shall be a Deputy AAG from the Criminal

Division, and at least two of the remaining FPO Attorneys shall each be

from a U.S. Attorney's Office and have relevant experience in organized

crime matters.  In addition, an FPO Attorney designated by the Assistant

Attorney General for National Security shall be a member of the HSRC,

but shall not be considered to be a voting member for purposes of

determining whether continued use of a Source under review should be

approved.

b.      Access to FBI Information - - During the approval process, the HSRC

shall have access to all relevant FBI information pertaining to the use of

the Confidential Human Source under consideration, including any Annual

Validation Reports.  However, the identity of the Confidential Human

Source will not be disclosed to the HSRC unless the Chairperson of the

HSRC determines that compelling reasons exist to warrant such a

disclosure.

c.      Time Limit - - The HSRC approval process shall be completed no more

than 45 days after the FBI has submitted a request seeking approval for the

continued use of a Confidential Human Source.  While the request is

pending with the HSRC, the FBI shall be permitted to continue to utilize

the Confidential Human Source.

249

d.       Notice to FPO - - After a final decision has been made by the HSRC, the
         HSRC shall consider whether to provide notice of the decision to any
         appropriate FPO.

e.       Disputes  - - The HSRC shall recommend approval of the continued use of
         a Source only upon reaching a consensus, provided that whenever the FBI,
         an FPO, or a HSRC Member disagrees with the final decision of the
         HSRC, it may seek review and reconsideration of that decision pursuant to
         the Exceptions and Dispute Resolution section, paragraph I (E) above.
         While the dispute is pending resolution, the FBI shall be permitted to
         continue to utilize the Confidential Human Source.

f.       Sources Providing Information for Use in International Terrorism
         Investigations, National Security Investigations, or Other Activities under
         NSIG - -  No Confidential Human Source who is providing information
         for use in international terrorism investigations, national security
         investigations, or other activities under NSIG shall be referred to the
         HSRC for review.  Instead, the FBI shall provide notice to the National
         Security Division within 60 days of FBI Headquarters' approval of the
         continued use of any such Confidential Human Source who is subject to
         the enhanced review provisions of the FBI's Confidential Human Source
         Validation Standards Manual.  Confidential Human Sources who meet any
         of the definitions set forth in paragraphs III(A)(1) & (2) shall be subject to
         enhanced review.  The Assistant Attorney General for National Security

20

250

shall designate FPO Attorneys to review the notices and associated information pursuant to the following process:

i.    Upon request by the designated FPO Attorney, the FBI shall make available at FBI Headquarters to the designated FPO Attorney Validation Reports regarding the Confidential Human Source.  If the Validation Reports do not permit the FPO Attorney to conduct a meaningful analysis of the propriety of continuing to use the Confidential Human Source, the FPO Attorney may ask for additional information regarding the Confidential Human Source. The identity of the Confidential Human Source shall not be disclosed to the designated FPO Attorney unless the Assistant Director or a Deputy Assistant Director of the Division that is utilizing the Confidential Human Source  determines that compelling reasons exist to warrant such a disclosure. With the exception of a request for the identity of the Confidential Human Source, all requests by the FPO Attorney for further information pertaining to a Confidential Human Source shall be satisfied within a reasonable period of time. Failure to provide such information may be grounds for the National Security Division to recommend that the Deputy Attorney General disapprove continued use of the Confidential Human Source.  If the Director of the FBI and the Assistant Attorney General for National Security do not agree

21

251

whether information sought is reasonably necessary in order for the FPO Attorney to conduct a meaningful analysis of the propriety of continuing to use the Confidential Human Source, any such dispute shall be resolved by the Deputy Attorney General.

ii. The designated FPO Attorney may consult with other designated FPO Attorneys and with the Assistant Attorney General for National Security concerning the continued use of the Confidential Human Source. If the Assistant Attorney General for National Security does not object to the FBI's continued use of the Confidential Human Source, no further action shall be taken. If the Assistant Attorney General for National Security objects to the FBI's continued use of the Confidential Human Source, the Assistant Attorney General shall forward a recommendation to the Deputy Attorney General that continued use of the Confidential Human Source be disapproved. While the dispute is pending resolution before the Deputy Attorney General, the FBI shall be permitted to continue to utilize the Confidential Human Source.

252

**B.    FEDERAL PRISONERS, PROBATIONERS, PAROLEES,  AND SUPERVISED RELEASEES**

1.    Consistent with extant Department of Justice requirements, the FBI must receive the approval of the Criminal Division's Office of Enforcement Operations ("OEO") prior to utilizing as a Confidential Human Source an individual who is in the custody of the United States Marshals Service or the Bureau of Prisons, or who is under Bureau of Prisons supervision.  See U.S.A.M. § 9-21.050.

2.    Prior to utilizing a federal probationer, parolee, or supervised releasee as a Confidential Human Source, an FBI Supervisor shall determine whether the use of that person in such a capacity would violate the terms and conditions of the person's probation, parole, or supervised release.  If the FBI Supervisor has reason to believe that it would violate such terms and conditions, prior to using the person as a Confidential Human Source, the FBI Supervisor or his or her designee must obtain the permission of a federal probation, parole, or supervised release official with authority to grant such permission, which permission shall be documented in the Confidential Human Source's files.  If such permission is denied or it is inappropriate for operational reasons to contact the appropriate federal official, the FBI may seek to obtain authorization for the use of such individual as a Confidential Human Source from the Court then responsible for the individual's probation, parole, or supervised release, provided that the FBI first consults with the FPO for that District.

3.    If an FPO is participating in the conduct of an investigation by the FBI in which a federal probationer, parolee, or supervised releasee would be utilized as a

23

253

Confidential Human Source or would be working with a federal probationer, parolee, or supervised releasee in connection with a prosecution, the FBI shall notify the FPO Attorney assigned to the current matter prior to using the person as a Confidential Human Source.

**C.   CURRENT OR FORMER PARTICIPANTS IN THE WITNESS SECURITY PROGRAM**

1.   Consistent with extant Department of Justice requirements, the FBI must receive the approval of OEO and the sponsoring FPO Attorney (or his or her successor) prior to utilizing as a Confidential Human Source a current or former participant in the Federal Witness Security Program, provided further that the OEO will coordinate such matters with the United States Marshals Service.  See U.S.A.M. § 9-21.800.

2.   If an FPO is participating in the conduct of an investigation by the FBI in which a current or former participant in the Witness Security Program would be utilized as a Confidential Human Source or would be working with a current or former participant in the Witness Security Program in connection with a prosecution, the FBI shall notify the FPO Attorney assigned to the matter prior to using the person as a Confidential Human Source.

**D.   STATE OR LOCAL PRISONERS, PROBATIONERS, PAROLEES, OR SUPERVISED RELEASEES**

1.   Prior to utilizing a state or local prisoner, probationer, parolee, or supervised releasee as a Confidential Human Source, an FBI Supervisor shall determine whether the use of that person in such a capacity would violate the terms and

24

254

conditions of the person's incarceration, probation, parole, or supervised release. If the FBI Supervisor has reason to believe that it would violate such terms and conditions, prior to using the person as a Confidential Human Source, an FBI Supervisor or his or her designee must obtain the permission of a state or local prison, probation, parole, or supervised release official with authority to grant such permission, which permission shall be documented in the Confidential Human Source's files. If such permission is denied or it is inappropriate for operational reasons to contact the appropriate state or local official, the FBI may seek to obtain authorization for the use of such person as a Source from the state or local court then responsible for the person's incarceration, probation, parole, or supervised release.

2.  If an FPO is participating in the conduct of an investigation by the FBI in which a state or local prisoner, probationer, parolee, or supervised releasee would be utilized as a Confidential Human Source or would be working with a state or local prisoner, probationer, parolee, or supervised releasee in connection with a prosecution, the FBI shall notify the FPO Attorney assigned to the matter prior to using the person as a Confidential Human Source.

E.  **FUGITIVES**

1.  Except as provided below, an FBI Agent shall not initiate communication with a current or former Confidential Human Source who is a fugitive.

2.  An FBI Agent is permitted to communicate with a current or former Confidential Human Source who is a fugitive:

25

255

    a.    if the fugitive Source initiates the communication;

    b.    if the communication is part of a legitimate effort by the FBI to arrest the fugitive; or

    c.    if approved, in advance whenever possible, by a Supervisor of any federal, state, or local law enforcement agency that has a wanted record for the individual in the NCIC and, in the case of a federal warrant, by the FPO for the issuing District.

3.    An FBI Agent who communicates with a Confidential Human Source who is a fugitive must promptly report such communication to the appropriate federal, state or local law enforcement agency, and any other law enforcement agency having a wanted record for the individual in the NCIC, and must document those communications in the Confidential Human Source's files.

## IV.    RESPONSIBILITIES REGARDING CONFIDENTIAL HUMAN SOURCES

### A.    NO INTERFERENCE WITH AN INVESTIGATION OF A CONFIDENTIAL HUMAN SOURCE

DOJ personnel shall not interfere with or impede any criminal investigation or arrest of a Confidential Human Source. DOJ personnel shall not reveal to a Confidential Human Source any information relating to an investigation of the Source, including confirming or denying the existence of such an investigation, unless authorized to do so by the Chief Federal Prosecutor or his or her designee, after consultation with the appropriate FBI SAC or his or her designee.

256

## B.   PROHIBITED TRANSACTIONS AND RELATIONSHIPS

1.   DOJ personnel directing or overseeing the direction of a Confidential Human Source shall not:

    a.   exchange gifts with a Confidential Human Source;

    b.   provide the Confidential Human Source with anything of more than nominal value;

    c.   receive anything of more than nominal value from a Confidential Human Source; or

    d.   engage in any business or financial transactions with a Confidential Human Source.

2.   Unless authorized pursuant to paragraph IV (B)(3) below, any exception to this provision requires the written approval of an FBI Supervisor, in advance whenever possible, based on a finding by the FBI Supervisor that the event or transaction in question is necessary and appropriate for operational reasons.  This written finding shall be maintained in the Confidential Human Source's files.

3.   DOJ personnel directing or overseeing the direction of a Confidential Human Source shall not socialize with that Source, except to the extent necessary and appropriate for operational reasons.

4.   If an FPO is participating in the conduct of an investigation that is utilizing an FBI Confidential Human Source or working with a Confidential Human Source in connection with a prosecution, the FBI shall provide written notification to the FPO Attorney assigned to the matter, in advance whenever possible, if the FBI

27

257

approves an exception under paragraph IV (B) or if an FBI Agent socializes with a
Confidential Human Source in a manner not permitted under paragraph IV(B)(2)
& (3).

C.   **MONETARY PAYMENTS**

1.   **General**

Monies that the FBI pays to a Confidential Human Source in the form of fees and
rewards shall be commensurate with the value, as determined by the FBI, of the
information or assistance the Source provided to the FBI.  The FBI's
reimbursement of expenses incurred by a Confidential Human Source shall be
based upon actual expenses incurred, except that relocation expenses may be
made based on an estimate of the expenses.

2.   **Prohibition Against Contingent Payments**

Under no circumstances shall any payments to a Confidential Human Source be
contingent upon the conviction or punishment of any individual.

3.   **Approval for Payments**

The FBI shall establish a written delegation of authority for approval of payments
to Confidential Human Sources.  The delegation of authority shall establish the
level of approval required when single payments, aggregate annual payments, and
total aggregate payments meet or exceed specific threshold amounts.  The
threshold amounts and approval authority are subject to periodic review and
amendment as deemed appropriate by the FBI Director.

258

4.    **Documentation of Payment**

The payment of any FBI funds to a Confidential Human Source shall be witnessed

by at least one FBI Agent and another government official.  In the event of

extraordinary circumstances that must be documented in the Source's file, only

one witness shall be required.  Immediately after receiving a payment, the

Confidential Human Source shall be required to sign or initial, and date, a written

receipt.[11]  At the time of the payment, the FBI Agent or other government official

shall advise the Confidential Human Source that the monies may be taxable

income that must be reported to appropriate tax authorities.  Thereafter, the FBI

shall document the payment and the advice of taxability in the FBI's files.  The

documentation of payment shall specify whether the payment is for services or

expenses.

5.    **Accounting and Reconciliation Procedures**

The FBI shall establish accounting and reconciliation procedures to comply with

these Guidelines.   The FBI procedures shall ensure that the FBI accounts for all

funds paid to a Confidential Human Source subsequent to the issuance of these

Guidelines.

6.    **Coordination with Prosecution**

If an FPO Attorney is participating in the conduct of an investigation or

prosecution that is utilizing an FBI Confidential Human Source who is expected

---

[11] The Confidential Human Source may sign or initial the written receipt by using a
pseudonym which has been previously approved and documented in the Source's files and
designated for use by only one Confidential Human Source.

29

259

to testify, the FBI shall coordinate with the FPO attorney, in advance if practicable, any payment of monies to the Confidential Human Source pursuant to paragraph IV(C)(3) above. If the payment is to be made for services and if the FPO Attorney objects to the payment, no payment will be made until the dispute has been resolved in accordance with Section I. E. above.

## V.   AUTHORIZATION OF OTHERWISE ILLEGAL ACTIVITY

**A.   GENERAL PROVISIONS**

    1.   The FBI shall not authorize a Confidential Human Source to engage in any activity that otherwise would constitute a criminal violation under federal, state, or local law if engaged in by a person acting without authorization, except as provided in the authorization provisions in paragraph V(B) below.

    2.   The FBI is never permitted to authorize a Confidential Human Source to:

        a.   participate in any act of violence except in self-defense;[12] or

        b.   participate in an act designed to obtain information for the FBI that would be unlawful if conducted by a law enforcement agent (e.g., breaking and entering, illegal wiretapping, illegal opening or tampering with the mail, or trespass amounting to an illegal search).

**B.   AUTHORIZATION PROCEDURES**

    **1.   Written Authorization**

---

[12]The Source may take reasonable measures of self-defense in an emergency to protect his or her own life or the lives of others against wrongful force.

30

260

a.   Tier 1 Otherwise Illegal Activity must be authorized by an FBI SAC and the appropriate CFP, in advance and in writing for a specified period, not to exceed 90 days, except that, with respect to all international terrorism investigations, national security investigations, or other activities under NSIG, upon request of the FBI and at the discretion of the appropriate CFP, the Otherwise Illegal Activity may be authorized for a period of up to one year.

b.   Tier 2 Otherwise Illegal Activity must be authorized by an FBI SAC in advance and in writing for a specified period, not to exceed 90 days.

c.   The written authorization by the FBI SAC and/or CFP of Otherwise Illegal Activity shall be as narrow as reasonable under the circumstances as to the unlawful activity's scope, geographic area, duration and other related matters.

d.   For purposes of this paragraph, <u>except</u> with respect to all international terrorism investigations, national security investigations, or other activities under NSIG, the "appropriate Chief Federal Prosecutor" is the CFP that:

   i.   is participating in the conduct of an investigation by the FBI that is utilizing the Confidential Human Source or is working with the Confidential Human Source in connection with a prosecution;

   ii.   would have primary jurisdiction to prosecute the Otherwise Illegal Activity that would constitute a violation of federal law; or

31

261

       iii.    is located where the Otherwise Illegal Activity is to occur, and it only constitutes a violation of state or local law.

   e.    With respect to all international terrorism investigations, national security investigations, or other activities under NSIG, the appropriate Chief Federal Prosecutor is the AAG of the NSD, or designee. Within 60 days after these Guidelines are approved by the Attorney General, the AAG of the NSD shall identify designees for purposes of this paragraph, which may include DOJ personnel outside the NSD.

**2.  Findings**

   a.    The FBI SAC and the CFP who authorize the Otherwise Illegal Activity must make a finding, which shall be documented in the Confidential Human Source's files, that the illegal activity is:

       i.    necessary either to –

           A.    obtain information or evidence essential for the success of an investigation that is not reasonably available without such activity, including circumstances in which the Confidential Human Source must engage in the illegal activity in order to maintain his credibility and thereby obtain the information or evidence, or

           B.    prevent death, serious bodily injury, or significant damage to property; and

32

262

    ii.    that the benefits to be obtained from the Confidential Human Source's participation in the Otherwise Illegal Activity outweigh the risks.

b.    In making these findings, the FBI SAC and the CFP shall consider, among other things:

    i.    the importance of the investigation;

    ii.    the likelihood that the information or evidence sought will be obtained;

    iii.    the risk that the Confidential Human Source might misunderstand or exceed the scope of his authorization;

    iv.    the extent of the Confidential Human Source's participation in the Otherwise Illegal Activity;

    v.    the risk that the FBI will not be able to closely monitor the Confidential Human Source's participation in the Otherwise Illegal Activity;

    vi.    the risk of violence, physical injury, property damage, or financial loss to the Confidential Human Source or others; and

    vii.    the risk that the FBI will not be able to ensure that the Confidential Human Source does not realize undue profits from his or her participation in the Otherwise Illegal Activity.

263

**3.    Instructions**

a.    If a Confidential Human Source is authorized to engage in Otherwise

Illegal Activity, at least one FBI Agent, along with one additional

government official present as a witness, shall review with the

Confidential Human Source written instructions that:

  i.    the Confidential Human Source is authorized only to engage in the

specific conduct set forth in the written authorization and not in

any other illegal activity (the Chief Federal Prosecutor's written

authorization should be read to the Confidential Human Source

unless it is not feasible);

  ii.    the Confidential Human Source's authorization is limited to the

time period specified in the written authorization;

  iii.    under no circumstance may the Confidential Human Source:

    A.    participate in an act of violence (except in self-defense);

    B.    participate in an act designed to obtain information for the

FBI that would be unlawful if conducted by a law

enforcement agent (e.g., breaking and entering, illegal

wiretapping, illegal opening or tampering with the mail, or

trespass amounting to an illegal search);

    C.    If applicable: participate in an act that constitutes

obstruction of justice (e.g., perjury, witness tampering,

34

264

witness intimidation, entrapment, or the fabrication,

alteration, or destruction of evidence);

      D.    <u>If applicable</u>:  initiate or instigate a plan or strategy to

commit a federal, state, or local offense;

    iv.    if the Confidential Human Source is asked by any person to

participate in any illegal activity other than the specific conduct set

forth in the written authorization, or learns of plans to engage in

such illegal activity, the Source must immediately report the matter

to the FBI Case Agent; and

    v.    participation in any illegal activity other than the specific conduct

set forth in the written authorization could subject the Confidential

Human Source to criminal prosecution.

    b.    Immediately after these instructions have been given, the Confidential

Human Source shall be required to sign or initial, and date, a written

acknowledgment of the instructions.[13]  If the Confidential Human Source

refuses to sign or initial the written acknowledgment, the FBI Agent, and

the additional Agent or other government official present as a witness,

shall document that the instructions were reviewed with the Confidential

Human Source and that the Source acknowledged the instructions and his

---

[13] The Confidential Human Source may sign or initial the written acknowledgment by using a pseudonym which has been previously approved and documented in the Confidential Human Source's files and designated for use by only one Confidential Human Source.

265

or her understanding of them.  As soon as practicable thereafter, an FBI Supervisor shall review and, if warranted, approve the documentation.

**4.    Precautionary Measures**

Whenever the FBI has authorized a Confidential Human Source to engage in Otherwise Illegal Activity, the FBI must take all reasonable steps to:

a.    monitor closely the activities of the Confidential Human Source;

b.    minimize the adverse effect of the Otherwise Illegal Activity on innocent persons; and

c.    ensure that the Confidential Human Source does not realize undue profits from his or her participation in the Otherwise Illegal Activity.

**5.    Suspension of Authorization**

Whenever the FBI cannot, for legitimate reasons unrelated to the Confidential Human Source's conduct (<u>e.g.</u>, unavailability of the Case Agent), comply with the precautionary measures described above, it shall immediately:

a.    suspend the Confidential Human Source's authorization to engage in Otherwise Illegal Activity until such time as the precautionary measures can be complied with;

b.    inform the Confidential Human Source that his or her authorization to engage in any Otherwise Illegal Activity has been suspended until that time; and

c.    document these actions in the Confidential Human Source's files.

**6.    Revocation of Authorization**

36

266

a.  If an FBI Agent has reason to believe that a Confidential Human Source has failed to comply with the terms of the authorization of Otherwise Illegal Activity, the FBI Agent shall immediately:

    i.  revoke the Confidential Human Source's authorization to engage in Otherwise Illegal Activity;

    ii.  inform the Confidential Human Source that he or she is no longer authorized to engage in any Otherwise Illegal Activity;

    iii.  comply with the notification requirement of paragraph VI (B) below;

    iv.  determine whether the Confidential Human Source should be closed pursuant to Section VII; and

    v.  document these actions in the Confidential Human Source's files.

b.  Immediately after the Confidential Human Source has been informed that he or she is no longer authorized to engage in any Otherwise Illegal Activity, the Confidential Human Source should sign or initial, and date, a written acknowledgment that he or she has been informed of this fact.[14] If the Confidential Human Source refuses to sign or initial the written acknowledgment, the FBI Agent who informed the Confidential Human Source of the revocation of authorization shall document the refusal, and the source's oral acknowledgment of the information if such oral

---

[14] The Confidential Human Source may sign or initial the written acknowledgment by using a pseudonym which has been previously approved and documented in the Confidential Human Source's files and designated for use by only one Confidential Human Source.

37

267

acknowledgment is provided.  As soon as practicable thereafter, an FBI

Supervisor shall review the written acknowledgment or documentation of

refusal.

**7.    Renewal and Expansion of Authorization**

    a.    If the FBI seeks to re-authorize any Confidential Human Source to engage

        in Otherwise Illegal Activity after the expiration of the authorized time

        period, or after revocation of authorization, the FBI must first comply with

        the procedures set forth above in paragraphs V(B)(1)-(3).

    b.    If the FBI seeks to expand in any material way a Confidential Human

        Source's authorization to engage in Otherwise Illegal Activity, the FBI

        must first comply with the procedures set forth above in paragraphs V

        (B)(1)-(3).

**8.    Emergency Authorization**

    a.    In exceptional circumstances, an FBI SAC and the appropriate CFP may

        orally authorize a Confidential Human Source to engage in Tier 1

        Otherwise Illegal Activity without complying with the documentation

        requirements of paragraphs V (B)(1)-(3) above, when they each determine

        that a highly significant and unanticipated investigative opportunity would

        be lost were the time taken to comply with these documentation

        requirements, and that the circumstances support a finding required

        pursuant to paragraph V (B)(2).  In such an event, the documentation

        requirements, as well as a written justification for the oral authorization,

268

shall be completed within 72 hours or as soon as practicable following the oral approval and maintained in the Confidential Human Source's files.

b.   In extraordinary circumstances, an FBI SAC may orally authorize a Confidential Human Source to engage in Tier 2 Otherwise Illegal Activity without complying with the documentation requirements of paragraphs V(B)(1)-(3) above when he or she determines that a highly significant and unanticipated investigative opportunity would be lost were the time taken to comply with these requirements. In such an event, the documentation requirements, as well as a written justification for the oral authorization, shall be completed within 72 hours or as soon as practicable following the oral approval and maintained in the Confidential Human Source's files.

**9.   Designees**

The FBI SAC and the CFP may agree to designate particular individuals at the supervisory level in their respective offices to carry out the approval functions assigned to them in Section V.

**10.   Record Keeping Procedures**

a.   The FBI shall maintain a file for each Confidential Human Source containing all the written authorizations, findings and instructions regarding Tier 1 Otherwise Illegal Activity, as required under Section V(B) of these Guidelines.

b.   At the end of each calendar year, the FBI shall report to the Assistant Attorneys General of the Criminal Division and the National Security

39

269

Division the total number of times each FBI Field Office authorized a

Confidential Human Source to engage in Otherwise Illegal Activity, and

the overall nationwide totals.

c.    If requested, the FBI shall provide to the Assistant Attorneys General of

the Criminal Division and the National Security Division a copy of any

written authorization, finding or instruction issued pursuant to Section

V(B) of these Guidelines.

## VI.  SPECIAL NOTIFICATION REQUIREMENTS

### A.    NOTIFICATION OF INVESTIGATION OR PROSECUTION

1.    If an FBI Agent has reasonable grounds to believe that the alleged felonious

activity of a current or former Confidential Human Source is,  or is expected to

become, the basis of a prosecution or investigation  by an FPO or a state or local

prosecutor's office, the FBI Agent must immediately notify a Confidential Human

Source Coordinator or the assigned FPO Attorney of that individual's status as a

current or former Confidential Human Source.  However, with respect to a former

Confidential Human Source whose alleged felonious activity is, or is expected to

become, the basis of a prosecution or investigation by a state or local prosecutor's

office, no notification obligation shall arise unless the FBI Agent has reasonable

grounds to believe that the Confidential Human Source's prior relationship with

the FBI is material to the prosecution or investigation.

40

270

2.   Whenever such a notification occurs, the Confidential Human Source Coordinator

or the assigned FPO Attorney shall notify the CFP. The CFP and FBI SAC, with

the concurrence of each other, shall notify any other federal, state or local

prosecutor's office or law enforcement agency that is participating in the

investigation or prosecution of the Confidential Human Source.

**B.   NOTIFICATION OF UNAUTHORIZED ILLEGAL ACTIVITY**

1.   If an FBI Agent has reasonable grounds to believe that a Confidential Human

Source has engaged in unauthorized criminal activity (other than minor traffic

offenses), the FBI shall promptly notify a Confidential Human Source

Coordinator or the assigned FPO Attorney. In turn, the Confidential Human

Source Coordinator or assigned FPO Attorney shall notify the following FPOs of

the Confidential Human Source's criminal activity and his or her status as a

Confidential Human Source:

a.   the FPO in whose District the criminal activity primarily occurred, unless

a state or local prosecuting office in that District has filed charges against

the Confidential Human Source for the criminal activity and there is no

basis for federal prosecution in that District;

b.   the FPO Attorney, if any, who is participating in the conduct of an

investigation that is utilizing the Confidential Human Source or is working

with the Confidential Human Source in connection with a prosecution; and

271

    c.    the FPO Attorney, if any, who authorized the Confidential Human Source to engage in Otherwise Illegal Activity pursuant to paragraph V(B) above.[15]

2.    Whenever such notifications are provided, the Chief Federal Prosecutor(s) and the FBI SAC, with the concurrence of each other, shall notify any state or local prosecutor's office that has jurisdiction over the Confidential Human Source's criminal activity and that has not already filed charges against the Confidential Human Source for the criminal activity of the fact that the Confidential Human Source has engaged in such criminal activity. The CFP(s) and the FBI SAC(s) are not required, but may with the concurrence of each other, also notify the state and local prosecutor's office of the person's status as a Confidential Human Source.

**C.    NOTIFICATION REGARDING CERTAIN FEDERAL JUDICIAL PROCEEDINGS**

The FBI shall immediately notify an appropriate Confidential Human Source Coordinator or the assigned FPO Attorney whenever an FBI Agent has reasonable grounds to believe that:

1.    a current or former Confidential Human Source has been called to testify by the prosecution in any federal grand jury or judicial proceeding;

2.    the statements of a current or former Confidential Human Source have been, or will be, utilized by the prosecution in any federal judicial proceeding; or

---

[15] Whenever such notifications to FPOs are provided, the FBI must also comply with the Annual Validation Review requirements described above in paragraph (II)(C)(2).

272

3.   an FPO Attorney intends to represent to a Court or jury that a current or former Confidential Human Source is or was a co-conspirator or other criminally culpable participant in any criminal activity.

**D.   PRIVILEGED OR EXCULPATORY INFORMATION**

1.   If an FPO is participating in the conduct of an investigation by the FBI that is utilizing a Confidential Human Source or working with a Confidential Human Source in connection with a prosecution, the FBI shall notify the FPO Attorney assigned to the matter, in advance whenever possible, if the FBI has reasonable grounds to believe that a Confidential Human Source will obtain or provide information that is subject to, or arguably subject to, a legal privilege of confidentiality belonging to someone other than the Confidential Human Source.

2.   Whenever an FBI Agent knows or reasonably believes that a current or former Confidential Human Source has information that is exculpatory as to a target of a federal, state or local investigation, or as to a defendant (including a convicted defendant) in a federal, state or local case, the FBI Agent shall disclose the exculpatory information either to the assigned FPO Attorney that is participating, or had participated, in the conduct of the  investigation or to a Confidential Human Source Coordinator.

3.   In turn, the assigned FPO Attorney or Confidential Human Source Coordinator shall disclose the exculpatory information to all affected federal, state and local authorities.  In the event the disclosure would jeopardize the security of a Confidential Human Source or seriously compromise an investigation, the FPO

43

273

Attorney or Confidential Human Source Coordinator shall refer the matter to the HSRC for consideration, except such matters with respect to an international terrorism investigation, national security investigation, or other activity under NSIG shall be referred to the AAG of the NSD or designee.

E.   **LISTING A CONFIDENTIAL HUMAN SOURCE IN AN ELECTRONIC SURVEILLANCE APPLICATION**

1.   The FBI shall not name a Confidential Human Source as a named interceptee or a violator in an affidavit in support of an application made pursuant to 18 U.S.C. § 2516 for an electronic surveillance order unless the FBI believes that:

a.   omitting the name of the Confidential Human Source from the affidavit would endanger that person's life or otherwise jeopardize an ongoing investigation; or

b.   the Confidential Human Source is a bona fide subject of the investigation based on his or her suspected involvement in unauthorized criminal activity.

2.   In the event that a Confidential Human Source is named in an electronic surveillance affidavit under paragraph VI (E)(1) above, the FBI must inform the FPO Attorney making the application and the Court to which the application is made of the actual status of the Confidential Human Source.

F.   **RESPONDING TO REQUESTS FROM FPO ATTORNEYS REGARDING A CONFIDENTIAL HUMAN SOURCE**

1.   In any criminal matter arising under, or related to, these Guidelines, upon request by an appropriate FPO Attorney, the FBI shall promptly provide the FPO Attorney

44

274

all relevant information concerning a Confidential Human Source, including whether he or she is a current or former Confidential Human Source for the FBI.

2.   If the FBI SAC has an objection to providing such information based on specific circumstances of the case, he or she shall explain the objection to the FPO making the request and any remaining disagreement as to whether the information should be provided shall be resolved pursuant to the Exceptions and Dispute Resolution section, paragraph I (E).

**G.   EXCEPTIONS TO THE SPECIAL NOTIFICATIONS REQUIREMENTS**

The Director of the FBI, with the written concurrence of the Deputy Attorney General, may withhold any notification required pursuant to paragraphs VI (A)-(F) if it is determined that the identity, position, or information provided by the Confidential Human Source warrants extraordinary protection for sensitive national security reasons. Any such determination shall be documented and maintained in the Confidential Human Source file, along with the concurrence of the Deputy Attorney General.

**H.   FILE REVIEWS**

If the FBI discloses any information about a Confidential Human Source to a FPO pursuant to paragraphs VI (A)-(F), the FBI SAC and the CFP shall consult to facilitate any review and copying of the Confidential Human Source's files by the FPO that might be necessary for an FPO Attorney to fulfill his or her disclosure obligations.

**I.   DESIGNEES**

275

An FBI SAC and a CFP may, with the concurrence of each other, designate particular individuals in their respective offices to carry out the functions assigned to them in paragraphs VI (A)-(H).

276

## VII. CLOSING A CONFIDENTIAL HUMAN SOURCE

### A.   GENERAL PROVISIONS

If the FBI determines that a Confidential Human Source should be closed for cause or for any other reason the FBI shall promptly:

1.   close the individual;

2.   document the reasons for the decision to close the individual as a Confidential Human Source in the Confidential Human Source's files;

3.   if the Confidential Human Source can be located, notify the Confidential Human Source that he or she has been closed as a Confidential Human Source and document that such notification has been provided in the same manner as set forth in paragraph (II)(B)(3), except that, if the Confidential Human Source refuses to acknowledge his receipt and understanding of the notification, the FBI shall document the refusal; and

4.   if the Confidential Human Source was authorized to engage in Otherwise Illegal Activity pursuant to paragraph V(B), immediately revoke that authorization under the provisions of paragraph V (B)(6).

### B.   DELAYED NOTIFICATION TO A CONFIDENTIAL HUMAN SOURCE

The FBI may delay providing the notification to the Confidential Human Source described above in paragraph of VII (A)(3) during the time such notification might jeopardize an ongoing investigation or prosecution or might cause the flight from prosecution of any person.  If the decision is made to delay providing a notification, that

277

decision and the reasons supporting it must be documented in the Confidential Human Source's files.

**C.  CONTACTS WITH FORMER CONFIDENTIAL HUMAN SOURCES CLOSED FOR CAUSE**

Absent exceptional circumstances that are approved by an FBI Supervisor, in advance whenever possible, an FBI Agent shall not initiate contact with or respond to contacts from a former Confidential Human Source who has been closed for cause.  When granted, such approval shall be documented in the Confidential Human Source's files.

**D.  COORDINATION WITH FPO ATTORNEYS**

If an FPO is participating in the conduct of an investigation that is utilizing an FBI Confidential Human Source or the FPO is working with a Confidential Human Source in connection with a prosecution, the FBI shall coordinate with the FPO Attorney assigned to the matter, in advance whenever possible, regarding any of the decisions described in paragraphs VII (A)-(C).

Date:  _12-13-06_                          _[signature]_

                                            ALBERTO R. GONZALES
                                            ATTORNEY GENERAL

48