UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

UNITED STATES OF AMERICA,

                                                      08-Cr-240 (S-6) (BMC) (RER)

              -  against  -

THOMAS GIOELI and
DINO SARACINO,

                    Defendants.

--------------------------------------------------------X


### DEFENDANT THOMAS GIOELI'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY


Dated: New York, New York
        May 13, 2011


                         LAW OFFICES OF ADAM D. PERLMUTTER, P.C.
                         260 Madison Avenue, Suite 1800
                         New York, New York 10016
                         Tel: (212) 679-1990
                         Fax: (212) 679-1995

                         LAW OFFICES OF CARL J. HERMAN
                         443 Northfield Avenue
                         West Orange, NJ 07052
                         Tel: (973) 324-1011
                         Fax: (973) 324-1133
                         Attorneys for Defendant Thomas Gioeli

                         LAW OFFICE OF SAM BRAVERMAN
                         901 Sheridan Avenue
                         Bronx, New York 10451
                         Tel: (718) 293-1977
                         Fax: (718) 293-5395
                         Attorney for Dino Saracino

1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND.................................................................................................2

ARGUMENT..........................................................................................................................2

      THE GOVERNMENT FAILS TO ESTABLISH A "STRONG
      REASON TO BELIEVE THE JURY NEEDS PROTECTION"
      TO OVERCOME THE IMPAIRMENT THAT AN ANONYMOUS
      JURY HAS ON THE PRESUMPTION OF INNOCENCE AND
      A DEFENDANT'S ABILITY TO CONDUCT MEANINGFUL
      VOIR DIRE .........................................................................................................2

      A.     This case does not present the criteria that justify
             empanelment of an anonymous or otherwise
             "protected" jury...................................................................................5

             1. Alleged pattern of violence.....................................................5

             2. Corruption of the judicial process ..........................................6

             3. Level of publicity.....................................................................6

      B.     The Government's request to have the jury transported
             to and from the courthouse, and maintained under guard
             while at the courthouse, not only burdens the presumption
             of innocence but creates the unfair impression that
             the defendants are dangerous people from whom the jury
             must be protected....................................................................8

CONCLUSION ......................................................................................................................9

The defendants Thomas Gioeli ("Gioeli") and Dino Saracino ("Saracino") (hereinafter referred to jointly as "the defendants") jointly submit this memorandum of law in opposition to the Government's motion, dated April 22, 2011, for an anonymous and partially sequestered jury.  For the reasons stated herein, the Government's motion should be denied.

## PRELIMINARY STATEMENT

This case stems from a sixth superseding indictment charging Gioeli and two other defendants with, *inter alia*, racketeering and murder-in-aid of racketeering.  Only one co-defendant, Dino Saracino, remains in the case for trial with Gioeli.  By its present motion, the Government moves for an anonymous jury and partial sequestration during trial.

The Court should deny the Government's request for an anonymous jury and partial sequestration to the extent discussed herein.  In particular, the Court should not deny information to defendants' counsel regarding the names, addresses and workplace addresses of potential jurors.  Rather, the Court should implement a system whereby only defendants' counsel and not their clients will have access to this information. Such a system will strike a proper balance between addressing the Government's interest in shielding personal juror information from defendants while allowing for limited access by counsel to that information to assist in proper jury selection.  In addition, the Court should also use prophylactic instructions where jurors are told that their anonymity is only being protected due to media scrutiny surrounding the case.  The jurors should be told in particular that anonymity will help ensure a fair and impartial jury because they will not be subject to any media inquiries or scrutiny within their communities.

## FACTUAL BACKGROUND

The Court's familiarity with the general allegations in the Government's case is assumed.

## ARGUMENT

### THE GOVERNMENT FAILS TO ESTABLISH A "STRONG REASON TO BELIEVE THE JURY NEEDS PROTECTION" TO OVERCOME THE IMPAIRMENT THAT AN ANONYMOUS JURY HAS ON THE PRESUMPTION OF INNOCENCE AND A DEFENDANT'S ABILITY TO CONDUCT MEANINGFUL *VOIR DIRE*

The empanelling of an anonymous jury is an unusual and drastic measure that is justified only when the Government establishes that it is "genuinely called for." *United States v. Varia*, 943 F.2d 236,239 (2d Cir. 1991); *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994). The Second Circuit has repeatedly and consistently held that this deviation from standard methods of jury-selection is permissible only under circumstances where there is a convincing showing by the Government of a "strong reason to believe the jury needs protection." *United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir. 1985). Without this predicate showing, an anonymous jury may not be empanelled.

In assessing whether a jury truly "needs protection" and that, therefore, an anonymous jury is "genuinely called for," the Court has emphasized that, "[a]n obstruction of justice charge, particularly one involving jury-tampering, has always been a crucial factor in our decisions regarding anonymous juries." *Vario*, 943 F.2d at 240; *see, e.g., United States v. Tutino*, 883 F.2d 1125, 1132-33 (2d Cir. 1989). Furthermore, the Court cautioned in *Vario*, "[t]he invocation of words such as 'organized crime,' 'mob,' and 'the Mafia,' unless there is something more, does not warrant an anonymous jury." *Vario*, 943 F.2d at 241. Even those cases require "something more." As stated in *Vario*:

> Before a district judge may rely on the organized crime connection of a defendant as a factor in the question of anonymous juries, he must make a determination that the connection has some direct relevance to the question of juror fears or safety in the trial at hand beyond the innuendo that this connection conjures up.

*Id.* at 942.

The reason a decision to empanel an anonymous jury may come only after a strong showing of its necessity is that the practice places a burden on two important interests: the presumption of innocence and the defendant's interest in conducting a meaningful *voir dire*. As stated in *United States v. Amuso*, 21 F.3d 1251, 1264 (2d Cir. 1994), in considering a motion for an anonymous jury, a court "must balance the defendant's interest in conducting a meaningful *voir dire* and in maintaining the presumption of innocence against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." Courts do not reach the balancing test, however, without a credible and convincing predicate showing from the Government that there is, in fact, "strong reason to believe the jury needs protection . . . " defined as a finding that there is "a serious threat to jury safety . . ." *Thomas, supra*, 757 F.2d at 1364-65, *quoted with approval in Amuso*, 21 F.3d at 1264; *see also, United States v. Wong*, 40 F.3d 1347, 1376 (2d Cir. 1994) ("Empanelling an anonymous jury undoubtedly has serious implications for a defendant's interest in effectively conducting *voir dire* and in maintaining the presumption of innocence.") In *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994), the Court summarized the risks of an anonymous jury as follows:

> Unquestionably, the empanelment of an anonymous jury is a drastic measure, one which should be undertaken only in limited and carefully delineated circumstances. An anonymous jury raises the specter that the defendant is a dangerous person from

5

whom the jurors must be protected, thereby implicating the
defendant's constitutional right to a presumption of innocence.

*Ross*, 33 F.3d at 1519; *see also, Commonwealth v. Angiulo*, 615 N.E.2d 155, 172 (Mass.

1993) ("the empanelment of an anonymous jury triggers due process scrutiny because the

practice is likely to taint the jurors' opinion of the defendant, thereby burdening the

presumption of innocence.")

In *Thomas,* the Court considered the impact of the practice of impaneling an

anonymous jury on a defendant's presumption of innocence:

> The elementary principle that a shield of innocence surrounds
> a defendant on trial reached back in history at least to early
> Roman law.  *See, Coffin v. United States,* 156 U.S. 432, 453-54,
> 39 L.Ed. 481, 15 S.Ct. 394 (1895).  Recognition of this principle
> and its enforcement are part of the foundation of our system of
> criminal justice.  A particular practice- here the impaneling of
> an anonymous jury - and its impact on the presumption of
> innocence must therefore receive close judicial scrutiny and be
> evaluated in the light of reason, principle and common sense.

757 F.2d at 1363.

Because of the importance of the interests that are burdened by the practice, an

anonymous jury "is a measure that should be taken only with care." *United States v.*

*Bellomo,* 954 F.Supp. 630,654 (S.D.N.Y. 1997) (granting application where government

presented "substantial evidence that suggests a threat to the judicial process in this case,"

*id.* at 655); *see United States v. Millan-Colan,* 834 F.Supp. 78 (S.D.N.Y. 1993) (denying

application for anonymous jury); *United States v. Melendez,* 743 F.Supp. 134, 135

(E.D.N.Y. 1990) (denying "drastic remedy of an anonymous jury"); *United States v.*

*Coonan,* 664 F.Supp. 861, 862 (S.D.N.Y. 1987) (denying anonymous jury in the absence

of evidence that the defendants - notwithstanding the fact they were charged with

"predicate acts including murder, attempted murder, kidnapping, loansharking, extortion,

6

and narcotics trafficking as part of a racketeering enterprise known as the Westies"- were likely to interfere with the judicial process).

As the above summary suggests, even in the proper case, empanelling an anonymous jury burdens the presumption of innocence. The cases that have upheld the practice on particular facts all had a factual setting that justified the burden placed on the rights of the defendant.

**A.   This case does not present the criteria that justify empanelment of an anonymous or otherwise "protected" jury.**

**1.   Alleged pattern of violence**

It cannot be the case that simply saying the defendants are charged with a "pattern of violent activity" warrants empanelment of an anonymous jury.  If every federal trial in which the government alleged organized crime related murders warranted an anonymous jury, such proceedings would become the rule rather than the exception.  Instead, as the cases require, the "something more" which must be proven, must always involve proof of a credible threat that the defendants are likely to attempt to interfere with the jury itself.

Name calling by the Government based on unproven allegations fails to pass muster.  The argument that the nature of the charges in the indictment warrants an anonymous jury requires the belief that those charges are true before there has been an actual trial. In addition, many allegations in the indictment rely on uncorroborated testimony by informants whose veracity is subject to serious question.  The organized "pattern of violence" the Government alleges rests on a shaky foundation.

2.      **Corruption of the judicial process**

The Government also argues that defendants have obstructed justice or may intend to do so.  The Government's allegations, however, do not establish any threat to jurors requiring anonymity. The Government's claim that Gioeli had a "personal commitment to using violence to protect [his] interests" is unrelated to the jury function. Government's Motion for an Anonymous and Partially Sequestered Jury (hereinafter "Gov. Mot.") at 11. The Government's claims either have no bearing on the jury or are unsubstantiated. That is the case for the claim that "[b]oth of the defendants have a recent history of engaging in witness tampering." Gov. Mot. at 12.  None of the allegations have been proven.  In its motion, the Government speaks only of allegations made in other cases, not in this case.  There are no allegations that these defendants have obstructed justice in the past or intend to do so in this case.

3.      **Level of publicity**

The Government argues that media attention could affect juror impartiality, but makes no factual claim regarding why this would be so.  On the contrary, it is the specter of the anonymous jury itself that most threatens juror impartiality because of the potential to taint the jurors' opinions about the defendants. The interference with the presumption of innocence is a far more serious and realistic consequence than the highly speculative claim that jurors, contrary to their oaths and to the instructions of this Court, would be influenced by media attention. Moreover, the Government's claim of media attention is without support. Furthermore, to the extent that the Court feels it is necessary to keep the names of jurors from the public record, the defendants do not object to a procedure that allows the parties' counsel access to the names and other information concerning the jurors while withholding that information from the public record and from their clients.

In the prosecution of Martha Stewart, a true celebrity placed on trial in a case that was truly highly publicized, the trial judge, in an effort to protect potential jurors' privacy, closed the *voir dire* to the media.  In reversing that ruling, the Second Circuit noted that the concern for juror privacy could have been accomplished by "simply concealing the identities of the prospective jurors" from the media.  *ABC. Inc.* v. *Stewart,* 360 F.3d 90, I 05 (2d Cir. 2004).  The Court also noted that the trial judge in that case had entered an order "prohibiting the media from communicating with jurors or prospective jurors or with their family members until such time as that juror's or potential juror's service was completed."  *Id* at 94.  Defendant does not object to a similar order being entered in this case and even expanding it to include a prohibition from *any* person having contact with jurors.  Nor does defendant object to the jury being informed of such a court order with instructions from the Court to report any violation of that order.

Finally, it is instructive to recall *why* an elevated level of pre-trial publicity is factored into the mix of circumstances that determine whether or not an anonymous jury should be empanelled. As explained in *United States* v. *Vario,* 943 F.2d 236 (2d Cir. 1991):

> Pre-trial publicity may militate in favor of an anonymous jury
> *because it can 'enhance the possibility that jurors' names would
> become public and thus expose them to intimidation by
> defendants' friends or enemies or harassment by the public.'*

*Vario,* 943 F.2d at 240, quoting, *United States* v. *Persico,* 621 F.Supp. 842, 878 (S.D.N.Y. 1985) (emphasis added). The defense suggestion that juror names be withheld from defendants and the public record is a reasonable way to handle any concerns raised by the Government.

**B.**     **The Government's request to have the jury transported to and from the courthouse, and maintained under guard while at the courthouse, not only burdens the presumption of innocence but creates the unfair impression that the defendants are dangerous people from whom the jury must be protected.**

The Government proposes that the jurors must be escorted, guarded, and isolated from the public wherever they go, while constantly accompanied by armed agents of the Government. In the absence of the "strong showing" of an actual need for protecting the jury, this aspect of the motion should also be denied. Indeed, as pointed out in one published decision, these measures may in and of themselves engender fear on the part of jurors.  In *Milan-Colon,* 834 F.Supp. 78, 83-84 (S.D.N.Y 1993), Judge Kram noted that the Court's simple directive that jurors eat lunch in the jury room caused one juror to ask, '" [A ]re our lives in danger?"'  This prompted the Court to observe that "[i]ronically, the very relief that the Government now seeks, which includes sequestering the jury at all recesses, is likely to engender fear on the jurors' part that they are in danger." *Id.* at 83. Highly unusual measures send a clear message to the jury that they are in danger from the defendants and that the Court has decided that jury safety cannot be assured otherwise.

Defendant reiterates that none of these risks may be engaged, or placed in the constitutional balance, absent the predicate showing of very good reasons to believe the jury actually needs protection. This two-step process may not be conflated into a single amorphous "balancing test;" that much the cases make clear.

**CONCLUSION**

For the above reasons, the Court should deny the government's motion for an

anonymous jury to the extent set forth herein.

Dated: New York, New York
      May 13, 2010

               LAW OFFICES OF ADAM D. PERLMUTTER, P.C.

By: _____
                  Adam D. Perlmutter

260 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (212) 679-1990
Fax: (212) 679-1995

           -     and   -

LAW OFFICES OF CARL J. HERMAN
443 Northfield Avenue
West Orange, NJ 07052
Tel: (973) 324-1011
Fax: (973) 324-1133
Attorneys for Defendant Thomas Gioeli

LAW OFFICE OF SAM BRAVERMAN
901 Sheridan Avenue
Bronx, New York 10451
Tel: (718) 293-1977
Fax: (718) 293-5395
Attorney for Dino Saracino