UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>v.<br><br>THOMAS GIOELI and DINO SARACINO,<br><br>               Defendants. | Case No.:  08-cr-240 (S-6) (BMC) (RER) |

**THOMAS GIOELI'S MEMORANDUM OF LAW
IN OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE*
TO ADMIT CERTAIN EVIDENCE AGAINST HIM**

Dated: New York, New York
      June 10, 2011

LAW OFFICES OF ADAM D. PERLMUTTER, P.C.
260 Madison Avenue, Suite 1800
New York, New York 10016
Tel: (212) 679-1990
Fax: (212) 679-1995

LAW OFFICES OF CARL J. HERMAN
443 Northfield Avenue, Suite 201
West Orange, New Jersey 07052
Tel: (973) 324-1011
Fax: (973) 324-1133
Attorneys for Defendant Thomas Gioeli

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 1

ADDITIONAL TESTIMONY THE GOVERNMENT SEEKS TO ADMIT ....................................... 2

POINT I ............................................................................................................................. 6

    DISCLOSURE OF ADDITIONAL INFORMATION IS REQUIRED TO ADDRESS THE
    GOVERNMENT'S MOTION ............................................................................................ 6

POINT II ........................................................................................................................... 8

    THE ADMISSION OF PROFFERED "OTHER ACTS" EVIDENCE SHOULD BE DENIED ........... 8

        A.    Defendant Gioeli Does Not Contest The Legal Issues Which Form The Basis For The
            Government's Request ........................................................................................... 8

        B.    The Government Has Not Established a Sufficient Legal Basis to Permit The
            Introduction of The Proffered Evidence ................................................................ 9

        C.    This Court Should Exclude the Proffered Evidence Pursuant To Rule 403 of the
            Federal Rules of Evidence ................................................................................... 11

        D.    Rule 404(b) Does Not Provide a Basis For Admissibility of the Proffered
            Evidence ............................................................................................................ 13

CONCLUSION ................................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Old Chief v. United States*, 519 U.S. 172, 180 (1997)........................................................ 11, 12

*United State v. Germosen*, 139 F.3d 120, 127 (2d Cir. 1998) ................................................14

*United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003) ................................................14

*United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) ..............................................11

*United States v. Gonzalez*, 110 F.3d 736, 941-42 (2d Cir. 1997)............................................ 8

*United States v. Gotti*, 784 F.Supp. 1017, 1019 (E.D.N.Y. 1992) .......................................... 6

*United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984)....................................................14

*United States v. Massino*, 546 F.3d 123 (2d Cir. 2008, *cert. denied*, 129 S. Ct. 1928 (2009).......11

*United States v. McCallum*, 584 F.3d 471, 477 (2d Cit. 2009) ..............................................12

*United States v. Ortiz*, 857 F.3d 900, 903 (2nd Cir. 1988) ...................................................14

*United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cit. 1992) .................................................14

*United States v. Salameh*, 152 F.3d 88, 123 (2d Cir. 1998) .................................................12

*United States v. Stevens*, 83 F.3d 60, 68 (2d Cir. 1998)......................................................14

**Statutes**

18 U.S.C. § 1512(b)(1)................................................................................................... 2

18 U.S.C. § 1959(a)(1)...................................................................................................1, 2

18 U.S.C. § 892(a) ........................................................................................................ 2

18 U.S.C. §§ 1512(b)(2)(A)............................................................................................. 2

18 U.S.C. §§ 1512(c)(2) ................................................................................................. 2

18 U.S.C. §§ 1962(d)......................................................................................................1, 2

**Other Authorities**

Weinstein, Federal Evidence §404.21 (Joseph M. McLaughlin ed., Matthew
  Bender & Co. 2009) ................................................................................................................12

**Rules**

Federal Rule of Evidence Rule 404(b) ............................................................................... 2

Federal Rule of Evidence Rule 403 ................................................................................... 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:  08-cr-240 (S-6) (BMC) (RER) |
| Plaintiff, | |
| v. | |
| THOMAS GIOELI and DINO SARACINO, | |
| Defendants. | |

## INTRODUCTION

Defendant Thomas Gioeli submits this Memorandum of Law (1) in support of his cross-motion for further information from the government, and (2) in opposition to the government's motion *in limine* with respect to proposed evidence.

## BACKGROUND

The defendants are charged in a sixth superseding indictment with participating in the affairs of a racketeering enterprise involving the Colombo Family, through a pattern of racketeering that included murders, conspiracy to commit murder, robbery, attempted robbery, conspiracy to commit robbery, extortionate extension and collection of credit, distribution of drugs and witness tampering from January 1991 through the date of the indictment. Specifically, Gioeli is charged with: Racketeering Conspiracy, in violation of 18 U.S.C. §§ 1962(d), 1963 (Count One); and Murder In-Aid-Of Racketeering, in violation of 18 U.S.C. § 1959(a)(1)

(Counts Two, Three, and Four).[1]  Saracino is charged with: Racketeering Conspiracy, in violation of 18 U.S.C. §§ 1962(d), 1963 (Count One), Murder In-Aid-Of Racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts Two, Three, and Four), Extortionate Extension of Credit Conspiracy, in violation of 18 U.S.C. § 892(a) (Count Five), Prevention of Testimony, in violation of 18 U.S.C. § 1512(b)(1) (Count Six), Withholding Testimony and Records, in violation of 18 U.S.C. §§ 1512(b)(2)(A), 2 and Obstruction of Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2), 2.[2]

## ADDITIONAL TESTIMONY THE GOVERNMENT SEEKS TO ADMIT

In a motion dated April 15, 2011, the government informed the defendants that it intended to offer evidence of a variety of separate, uncharged crimes.  The government contends that the majority of such evidence should be admitted as so-called "enterprise proof" *i.e.*, proof of the existence and nature of the charged racketeering enterprise and of its membership, or, alternatively, pursuant to Federal Rule of Evidence Rule 404(b).

Among the uncharged crimes that the government seeks to prove pursuant to that theory

---

[1] Gioeli is named in Racketeering Acts One (Robbery/Robbery Conspiracy), Two (Murder/Murder Conspiracy), Three (Murder Conspiracy), Four (Attempted Robbery/Robbery Conspiracy), Five (Murder/Murder Conspiracy), Six (Murder), Nine (Murder/Murder Conspiracy), Eleven (Murder/Murder Conspiracy) and Thirteen (Murder/Murder Conspiracy).

[2] Saracino is named in Racketeering Acts Three (Murder Conspiracy), Seven (Extortionate Collection of Credit Conspiracy/Extortionate Collection of Credit), Eight (Robbery/Robbery Conspiracy), Nine (Murder/Murder Conspiracy), Ten (Cocaine Distribution Conspiracy), Eleven (Murder/Murder Conspiracy), Twelve (Murder Conspiracy), Thirteen (Murder/Murder Conspiracy), Fourteen (Extortionate Extension of Credit), Fifteen (Extortion), and Sixteen (Witness Tampering).

are: murder and murder conspiracy, obstruction of justice, robberies, burglaries, sales of stolen goods, assaults, extortion, narcotics trafficking, loan sharking and illegal gambling.  More specifically, the government seeks to introduce evidence of the following uncharged crimes:

(a)    The murder of Veronica Zuraw on January 4, 1982, by a stray bullet that entered her residence where Joseph Peraino, Jr. was found dead on her stoop and Joseph Peraino, Sr. was shot and paralyzed.

(b)    The conspiracy to murder Paul Gulino, associate of Bonanno Consiglieri, in 1993.  The murder was allegedly authorized by Gioeli after Gulino assaulted Dino Calabro and Richard Greaves.

(c)    The murder of Joseph Miccio on March 18, 1994, allegedly ordered by Gioeli after Miccio balked at returning stolen cars.

(d)    The murder of Carmine Gargano on July 10, 1994 after which Gioeli allegedly identified a new burial site.

(e)    The conspiracy to murder James "Jimmy Brown" Clemenza sometime between August 1997 and May 1999 for which Gioeli allegedly conveyed a message, from Alphonse Persico, to kill James "Jimmy Brown" Clemenza and provided an address where Brown could be found and surveilled that address with others.

(f)    The conspiracy to murder Ralph Lombardo in May 1999 for which Gioeli allegedly conveyed an order to kill Lombardo to another Colombo member but the murder was never committed.

(g)    A burglary, in the early 1990s, where proceeds of the burglary were taken to Gioeli's residence and divided among the participants.

(h)    An aborted bank burglary on Long Island in the early 1990s that Gioeli

participated in with Saracino and others.

(i)   The attempted theft, in the early to mid-1990s, of a trailer containing appliances and furniture from the Macy's parking lot at the Massapequa Mall in which Gioeli arranged to lease a warehouse in Long Island to store the stolen goods.

(j)   A theft of a tractor unit from a trucking depot, in the early to mid-1990s by co-conspirators, in which the co-conspirators sold the stolen goods and shared the proceeds with Gioeli.

(k)   The theft of a truckload of leather coats, in the early to mid-1990s, that Gioeli told other about and once the truck was stolen, the leather coats were transported to Gioeli's residence.

(l)   The robbery of a convenience store in Massapequa that Gioeli participated in with others.

(m)   The robbery of a drug dealer authorized by Gioeli, who was given a portion of the proceeds.

(n)   The armed robbery of a market in Long Island in which Gioeli and others participated and were armed with guns.

(o)   A conspiracy to rob a jewelry store in Farmingdale where at least on one occasion, Gioeli and others conducted surveillance of the location.

(p)   A conspiracy to rob Pat's Farms where on at least one occasion, Gioeli and CW-1 conducted surveillance on the location and followed the owner to his residence.

(q)   The attempted robbery of Farmingdale Meats Market.

(r)   A conspiracy to rob an armored car depot in Farmingdale, Long Island.

(s)   A conspiracy to rob Adventureland in Farmingdale, Long Island.

(t)   The attempted burglary of a fur store in Long Island where Gioeli, Saracino and others used sledgehammers to break through the wall of a vacant store adjacent to the fur store.

(u)   A conspiracy to burglarize the owner of Lotus Garden Restaurant in or about 2000, where Gioeli and another Colombo family associate conducted surveillance.

(v)   A conspiracy to rob a jewelry store, around February 2003, where Gioeli and others conducted surveillance on the location.

(w)   An assault in the early 1990s where Gioeli directed others to assault someone for Joseph "Jo Jo" Russo and they went to a location and assaulted a male.

(x)   An assault at a meat market in Brooklyn, in the early 1990s, where Gioeli recruited others to assault an individual.

(y)   An assault at Lenny's candy store where Gioeli agreed to assist William Russo in collecting money owed to him and Gioeli and another person demanded that the debt be paid and assaulted the debtor.

(z)   The assault of Gioeli's daughter's boyfriend at Gioeli's residence in Farmingdale by Gioeli and others.

(aa)   Extortion by Gioeli in collecting protection money from business owners and an annual payment from a Colombo family associate who operated a bookmaking business.

(bb)   The collection of proceeds from Joker Poker machines in Brooklyn and Long Island.

## POINT I

### DISCLOSURE OF ADDITIONAL INFORMATION IS
### REQUIRED TO ADDRESS THE GOVERNMENT'S MOTION

The government seeks to introduce evidence of approximately 28 "other" or "uncharged" crimes against Mr. Gioeli at trial.  Some of these allegations involve incidents which took place almost 30 years ago.  Many of the alleged "uncharged" crimes are listed without any indication of the dates (or even the year), or the alleged victim of the crime.  Obviously, neither the Court nor the defense is in a position to responsibly evaluate the government's motion without additional information.

By letter of May 4, 2011 (attached as Exhibit "A"), the defense requested that the government provide additional details regarding the proposed evidence.  The government has declined to do, citing *United States v. Gotti*, 784 F.Supp. 1017, 1019 (E.D.N.Y. 1992)  (attached as Exhibit "B").  That case involved eight uncharged crimes, for which the government had provided the time, the place and the nature of each offense.  *Gotti*, supra, at 1019.  Under those circumstances Judge Glasser ruled that given the fact that the government had provided additional information to the defendants in its response to their motion, the defense was not entitled to the names of unindicted co-conspirators in the uncharged crimes.  *Gotti*, supra, at 1018.

By contrast, in its present submission, the government has failed to provide the defense with sufficient information to even address the allegations.  Examples include:

1.      <u>Bank Burglaries and Robberies</u> (Doc. 1134, page 17): Gioeli is accused of participating "in the early 1990s" in a bank burglary in Farmingdale, a burglary of a bank on "Long Island," and an attempt to rob a bank in the "Mill Basin neighborhood in Brooklyn."  No

further details have been provided.

    2.    <u>Illegal Gambling</u> (Doc. 1134, page 26): "In the 1990s" Gioeli collected the proceeds from "numerous" Joker Poker machines located in "establishments in Brooklyn and Long Island." No further details have been provided.

    3.    <u>Assault at a Carting Company</u> (Doc. 1134, page 24): "In the early 1990s" Gioeli and three others assaulted "a male" inside a carting company located "in the vicinity" of Route 110 in Huntington. No further details have been provided.

    4.    <u>Assault at a Meat Market</u> (Doc. 1134, page 24): In the "early 1990s" Gioeli recruited two persons to assault "an individual." One of the persons, and another person, encountered the individual" in a meat market "in Brooklyn" and assaulted him. No further details have been provided.

    5.    <u>Assault of Gioeli's Daughter's Boyfriend</u> (Doc. 1134, page 25): Gioeli and two other persons participated in the assault of Gioeli's daughter's boyfriend. No date, no time, no location, and no obvious connection to any crimes charged in this case have been provided.

The above examples, while not exhaustive of the government's requests, are illustrative of the need for further discovery in this matter. As such, whether defendant's request is labeled a "Bill of Particulars" or, alternatively, as a discovery request about evidentiary matters, (<u>see</u>, Opinion of Judge Glasser in *Gotti*, <u>supra</u> at 1019), is of no moment. What should be the concern of this Court is that both the Court and counsel have sufficient information to evaluate the appropriateness of the government's motion.

This is particularly true because the government has argued, as it must, that these acts are "inextricably intertwined" with the evidence regarding the charged offenses, or that the acts arose out of the same transaction or series of transactions as the offenses charged. *United States*

*v. Gonzalez*, 110 F.3d 736, 941-42 (2d Cir. 1997).  It will be argued, <u>infra</u>, that what the government is seeking to prove is not actually contested, and that an analysis under Rule 403 of the Federal Rules of Evidence would suggest that the government's motion should be denied. However, at this juncture, this Court should order the government to supply the information requested by the defense in its May 4, 2011 letter.

**POINT II**

**THE ADMISSION OF PROFFERED "OTHER
<u>ACTS" EVIDENCE SHOULD BE DENIED</u>**

The defense has moved, <u>supra</u>, for additional discovery to provide the Court and counsel with a basis to evaluate the government's position.  However, even without such discovery, this Court is in a position to deny the government's motion in its entirety, and should do so.

**A.      Defendant Gioeli Does Not Contest The Legal Issues
<u>Which Form The Basis For The Government's Request</u>**

The government contends that the evidence of "other" or "uncharged" crimes is admissible to establish the existence of the enterprise and conspiracy charged in this case.  The enterprise charged is the Colombo family, and the conspiracy charged involves conducting and participating in the conduct of the affairs of the Colombo family through a pattern of racketeering activity.

To assist the Court in its gatekeeping function and necessary balancing of competing interests pursuant to the Rules of Evidence, Gioeli wishes to make clear without admitting his personal involvement or knowledge in any way that the following will <u>not</u> be contested at the

upcoming trial:

    1.      That an enterprise described by the government as the Colombo Family exists;

    2.      That the Colombo Family is known to have engaged in racketeering activity;

    3.      That members of the Colombo Family engaged in a conspiracy to conduct their affairs through a pattern of racketeering activity;

    4.      That members of the Colombo Family committed crimes, including murder, murder conspiracy, obstruction of justice, robberies, burglaries, sale of stolen goods, assaults, extortion, narcotics trafficking, loan sharking and illegal gambling; and

    5.      That these activities by the Colombo Family had an effect on interstate commerce.

Given the fact that defendant Gioeli does not contest the existence and nature of the enterprise charged, there would seem to be no basis for the government's claim that the proffered evidence is necessary to support these allegations. Indeed, the fact that much of what the government seeks to prove by the uncharged activities is not contested severely undercuts the rationale for the admission of this evidence.

**B.**      **The Government Has Not Established a Sufficient Legal
Basis to Permit The Introduction of The Proffered Evidence**

The government's attempt to portray the proffered evidence as "inextricably intertwined" with its case in chief is equally unavailing. The grand jury in this case has charged defendant Gioeli with participating in six murders, a separate murder conspiracy and an attempted federal robbery, as well as a racketeering conspiracy beginning in January, 1991, and ending at the date of the indictment. A review of the discovery provided to date leads to the inescapable

conclusion that the government's case will rely almost exclusively upon the testimony of

cooperators, in that there is no physical evidence or recorded conversations which connect Gioeli

to the indicted charges.  As such, what the government is actually seeking is to allow their

cooperators to recite a litany of uncharged crimes supposedly involving (or not involving) Gioeli

over a twenty-year period without having to conform their testimony to the charges.  This is

inconvenient for the government - - prosecutors will have to carefully restrict their questioning to

the actual charged conduct - - but it hardly amounts to establishing the necessity of developing

all manner of criminal activity as being "inextricably linked" to the indicted offenses.

     The government's motion raises a number of rationales for admissibility, chiefly based

on its legal theory that the defendants started as a group of bandits committing robberies and

burglaries and evolved into a "murderous crew" who killed to protect themselves and their

criminal enterprise (Doc 1134, at page 33).  While this may be a viable theory, the law does not

encourage or permit the proof of legal theories, as opposed to actual charges.  The government's

attempt to introduce evidence of the murder of Joseph Miccio (with the implied suggestion that

Gioeli ordered the murder, although apparently CW-1 "conveyed" the order) and the murder of

Carmine Gargano (in which it is not even alleged that Gioeli was involved until after the murder,

at which time Gioeli allegedly suggested that Gargano be buried near his (Gioeli's) home), are

simply efforts to put more murders into the case, without the trouble of presenting the evidence

to a grand jury.  It may very well be that all of the crimes committed by members of the

Colombo Family are somehow "linked" to each other, but mere linkage is insufficient.  The law

requires more than this, and the government's effort to convince the Court that the jury will

somehow not understand six charges of murder of individuals associated with organized crime

defies credibility.

The government also suggests (Doc. 1134, page 34, footnote 3), that since the defense will probably wish to cross-examine cooperators with regard to the Miccio and Gargano murders that it is unfair to prevent the government from introducing this information in its case in chief. At this point, the defense has not determined whether it will raise these murders on cross-examination of potential witnesses.  As with all cross-examination, the defense needs to assess the potential disadvantages of introducing evidence of additional criminal behavior in an effort to discredit a witness.  This decision has not yet been made.

C.     **This Court Should Exclude the Proffered Evidence Pursuant To Rule 403 of the Federal Rules of Evidence**

A court may exclude relevant evidence, whether admitted under Rule 404(b) or otherwise, for several enumerated reasons.  Rule 403 specifically provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  See, *United States v. Massino*, 546 F.3d 123 (2d Cir. 2008, *cert. denied*, 129 S. Ct. 1928 (2009)).

As the Supreme Court observed, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).  Evidence is commonly considered prejudicial if it tends "unfairly to excite emotions against the defendant." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980).  "Evidence that tends to prove a character trait of a defendant is admissible if it is offered for another, proper purpose." *United States v. Salameh*, 152 F.3d 88,

123 (2d Cir. 1998).  However, evidence of uncharged acts is unfairly prejudicial if its probative

value is substantially outweighed by its tendency to imply "bad character" that the jury might

take "as raising the odds that [the defendant] did the later bad act now charged (or, worse, as

calling for preventive conviction even if he should happen to be innocent momentarily)." *Old

Chief*, 519 U.S. at 180.

     In conducting the required Rule 403 balancing, the court should "evaluate the degrees of

probative value and unfair prejudice not only for the item in question but for any actually

available substitutes as well." *Id*. at 182.  It is within the court's discretion to exclude proposed

evidence if alternative evidence has "substantially the same or greater" probative value but a

lower risk of prejudice. *Id*. at 182-83.  This is because "what counts as the Rule 403 'probative

value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by

comparing evidentiary alternatives."  *Id*. at 184; see, also, *United States v. McCallum*, 584 F.3d

471, 477 (2d Cit. 2009) ("[T]he availability of other, less prejudicial, evidence on the same point

ordinarily reduces the probative value of a given item of extrinsic evidence.")(quoting Weinstein,

Federal Evidence §404.21 (Joseph M. McLaughlin ed., Matthew Bender & Co. 2009)).

     A party's concession is "pertinent to the court's discretion to exclude evidence on the

point conceded" under Rule 403. *Id*. at 184.  Where a party does not contest a point, evidence

supporting that point offered by the opposing party is less probative, and its admission implicates

the Rule 403 consideration of "waste of time."  In the present case the defense does not contest

the issues which are the subject of the government's motion.

     In the context of this application Rule 403 essentially protects a defendant from being

subjected to admittedly relevant evidence which nonetheless has the clear potential to unfairly

prejudice the jury.  So it is in his case.  While the government may argue that there is little

"harm" to a defendant who has already been charged with six murders to introduce evidence of a few additional murders and a collection of burglaries and beatings, in fact substantial harm may befall Thomas Gioeli in this case.  The government seeks to transform a murder/racketeering indictment charging discrete criminal acts into days of testimony from government cooperators about a litany of criminal conduct, much of which cannot be connected to defendant Gioeli.  Pursuant to Rule 403 this Court should bar the proposed evidence.

Of particular (and obvious) concern to the defense is the allegation that Thomas Gioeli told CW-1 that he was "going to hell" because he "murdered a nun" in 1982 (Doc. 1134, page 14).  This would appear to have no purpose other than to inflame the jury and create newspaper headlines.  The "murder" took place almost 10 years before the charged conspiracy was alleged to have begun.  The nature of Gioeli's "participation" has not been specified.  The unfortunate victim of this shooting was a "former nun," not a nun.  There is no indication as to when Gioeli "on multiple occasions" made these statements to CW-1, or if these statements took place during the time period covered by the indictment.  The inclusion of this material - - already widely disseminated in the local press – will only make jury selection more difficult, will serve to exclude otherwise qualified jurors, and will completely and unfairly distort the case against Thomas Gioeli, and should not be permitted.

**D.    Rule 404(b) Does Not Provide a Basis For**
    **Admissibility of the Proffered Evidence**

The government's alternative theory of admissibility pursuant to Federal Rule of Evidence 404(b), should also be rejected.  Clearly, the considerations previously enumerated pursuant to Rule 403 are applicable in this regard.  *United States v. Ortiz*, 857 F.3d 900, 903 (2nd

Cir. 1988).  The Second Circuit has adopted an "inclusive" approach to Rule 404(b).  *United States v. Stevens*, 83 F.3d 60, 68 (2d Cir. 1998).  Accordingly, evidence of other acts may be admitted for "any purpose except to show criminal propensity, unless the trial judge concludes that its probative value is substantially outweighed by its potential for unfair prejudice."  *United State v. Germosen*, 139 F.3d 120, 127 (2d Cir. 1998) (internal citation and quotation marks omitted).  Rule 404(b)'s list of permissible purposes for the admission of other act evidence is "non-exhaustive."  *United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984).  Nonetheless, before other act evidence may be admitted under Rule 404(b), the court must consider whether it is offered for a proper purpose, whether it is relevant to a disputed issue, and whether its probative value is substantially outweighed by its possible prejudicial effect.  See, *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003).  Furthermore, if such evidence is admitted, the court must administer an appropriate limiting instruction if one is requested. See, *Id.*; *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992).

It should be recalled that the actual charges in this case involve murders which took place in 1991, 1992, 1995 and 1997.  The evidence concerning these murders will undoubtedly come from the testimony of one or more of the five cooperating witness proffered by the government (Doc. 1134, page 6), some of whom will admit to participating in these murders.  Evidence regarding these murders would presumably therefore provide sufficient "background" and "criminal relationship" based on the commission of the murders themselves.  Individuals who commit murder together presumably know and trust one another.  The fact that they had engaged in other criminal events adds little to explaining or proving the charged murders.

Moreover, the attempt to characterize burying victims in Farmingdale and therefore permitting the jury to learn that Carmine Gargano was murdered and also buried in Farmingdale,

- 14 -

as a "signature crime," is similarly unavailing and relies on areas of cross-examination predicted by the government (Doc. 1134, page 41). Finally, although Thomas Gioeli is charged with multiple murders, the evidence with regard to these murders is likely to come from one or two government cooperators. As such, while the uncharged conduct may on its face be "less" inflammatory than the actual charges, in fact the recitation of numerous acts of criminal behavior, by its sheer volume and nature, severely prejudices Gioeli's ability to defend himself on the murder and racketeering charges. The government's motion should be denied.

## CONCLUSION

For the reasons stated above, the Court should direct the government to provide

additional discovery, or, in the alternative, deny the government's *in limine* motion.

Dated: New York, New York
         June 10, 2011

Respectfully submitted,

LAW OFFICES OF ADAM D. PERLMUTTER, P.C.
260 Madison Avenue, Suite 1800
New York, New York 10016
Tel: (212) 679-1990
Fax: (212) 679-1995

LAW OFFICES OF CARL J. HERMAN
443 Northfield Avenue, Suite 201
West Orange, New Jersey 07052
Tel: (973) 324-1011
Fax: (973) 324-1133
Attorneys for Defendant Thomas Gioeli

By: _____
              CARL J. HERMAN

# EXHIBIT "A"

# LAW OFFICES OF ADAM D. PERLMUTTER, P.C.
## ATTORNEYS AT LAW

### 260 MADISON AVENUE, SUITE 1800
### NEW YORK, NY 10016
### TEL. (212) 679-1990
### FAX. (212) 679-1995

ADAM D. PERLMUTTER, ESQ.

—

JENNIFER LOUIS-JEUNE, ESQ.

OF COUNSEL
PAUL GREENFIELD, ESQ.

May 4, 2011

**VIA FACSIMILE ONLY**
**DO NOT FILE ON ECF**

AUSA Elizabeth Geddes
AUSA James Gatta
AUSA Christina Posa
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

Re:   **United States v. Thomas Gioeli and Dino Saracino**
      **Case No. 07-cr-240 (S-6) (BMC) (RER)**

Dear Ms. Geddes, Mr. Gatta and Ms. Posa:

  I am counsel for Thomas Gioeli with Carl J. Herman, Esq. in connection with the above matter. I am writing in connection with the government's recent motion *in limine* to admit certain evidence against the defendants at trial. By order dated April 16, 2011, the Court has directed the government's motion to be placed under sealing pending adjudication of the government's application. We are *not* filing this letter on ECF to preserve the intent of the Court's directive in this regard.

  By our count the government seeks to introduce evidence of 25 "other" or "uncharged" crimes against Mr. Gioeli. Some of these allegations involve incidents which took place almost 30 years ago. Many of the alleged "uncharged" crimes are listed without any indication of the date (or year) or the victim of the crime. Obviously the defense is in no position to respond to your motion in a responsible manner without additional information, which we believe is in your possession.

AUSA Elizabeth Geddes
AUSA James Gatta
AUSA Christina Posa
May 3, 2011
Page 2 of 9

Accordingly, please consider the following to be our request for additional details regarding the government's motion. While we obviously intend to file a formal request to the Court to obtain this information, we would hope to avoid needless litigation if the government will voluntarily provide the requested information. The information requested is as follows:

1.    Murder of A Nun

    a.   The specific dates, times and locations where Gioeli allegedly told CW-1 that Gioeli was "going to hell" for the inadvertent death of Veronica Zuraw.

2.    Conspiracy to Murder Paul Gulino

    a.   The specific date, time and location of the alleged assault by Paul Gulino on CW-1 and Richard Greaves.

    b.   The specific date, time and location where Gioeli allegedly authorized CW-1 and Greaves to kill Gulino.

3.    Murder of James "Jimmy Brown" Clemenza

    a.   The specific date, time and location where Gioeli allegedly told CW-1 that Colombo family acting boss Alphonse Persico wanted Colombo family member James "Jimmy Brown" Clemenza killed.

    b.   The specific date, time and location where Gioeli allegedly provided CW-1 with an address where James "Jimmy Brown" Celemenza could be found.

    c.   The specific address Gioeli provided CW-1 to locate James "Jimmy Brown" Celemenza.

    d.   The specific dates, times and locations where Gioeli and CW-1 allegedly conducted surveillance to find James "Jimmy Brown" Celemenza.

4.    Conspiracy to Murder Ralph Lombardo

    a.   The specific date, time, locations and to whom Alfonse Persico allegedly indicated that he wanted CW-1 inducted as a made member of the Colombo family and placed in the crew of Ralph Lombardo in order to kill Lombardo.

AUSA Elizabeth Geddes
AUSA James Gatta
AUSA Christina Posa
May 3, 2011
Page 3 of 9

    b.  The specific date, time, place and location where Gioeli and CW-1 allegedly discussed Alphonse Persico's order regarding Ralph Lombardo with Joel "Joe Waverly" Cacace.

    c.  The specific date, time and location Alphonse Persico allegedly sent Gioeli a message inquiring about the status of the plan to kill Ralph Lombardo

    d.  The specific date, time, location and identity of the other Colombo family members Gioeli and CW-1 allegedly conveyed the order to kill Ralph Lombardo.

5.    Bank Burglaries & Robberies

    a.  The specific date, time, name and location of the bank in Farmingdale Gioeli, CW-1 and CW-2 allegedly burglarized by breaking through a wall behind an ATM and stealing approximately $20,000 in cash proceeds.

    b.  The specific date, time, name and location of the bank on Long Island that Gioeli, Saracino, CW-1, CW-4 and Greaves allegedly attempted to burglarize by kicking in a wall constructed of drywall and then using a blowtorch to open a safe located inside of the bank.

6.    Theft of Trailer Loads

    a.  The specific dates, times, location and identity of trailers in the mid-1990s, Gioeli, Saracino, CW-1, CW-2 and CW-4 allegedly stole containing shipments of goods.

    b.  The specific dates, times, locations and to whom Gioeli, Saracino, CW-1, CW-2 and CW-4 allegedly sold goods stolen from various trailers in the mid-1990s.

    c.  The specific date and time CW-1 and CW-2 allegedly stole a trailer containing appliances and furniture from the Macy's parking lot in Massapequa Mall.

    d.  The specific location of the warehouse in Long Island that Gioeli allegedly leased to store the trailer and/or appliances and furniture stolen by CW-1 and CW-2 from the Macy's parking lot in Massapequa Mall.

AUSA Elizabeth Geddes
AUSA James Gatta
AUSA Christina Posa
May 3, 2011
Page 4 of 9

  e. The specific date, time and location when CW-1, CW-2 and others stole truckloads of goods from a trucking depot located in Long Island and alleged shared with Gioeli the proceeds of the sold stolen goods.

  f. The specific date, time and location where Gioeli allegedly told CW-1, Greaves and others about a potential "score" involving leather coats.

  g. The identity of the family friend of Gioeli who allegedly told Gioeli about a truckload of leather coats parked outside a particular residence.

  h. The specific location of where Greaves and another individual allegedly stole the truck containing leather coats and where they unloaded the coats from the truck.

7. Robbery of Convenience Store

  a. The specific date, time, name and location of the convenience store in Massapequa that Gioeli, Ennab "OJ" Awjab and Greaves allegedly robbed sometime in and around January 1991.

  b. The identity of New York State Lottery officials to whom notification was made regarding the theft of scratch-off lottery tickets allegedly stolen by Gioeli, Ennab "OJ" Awjab and Greaves from a convenience store in Massapequa in or around January 1991.

8. Convenience Store Robbery

  a. The specific date, time, name and location of the candy store in the Mill Basin neighborhood of Brooklyn that Saracino and CW-1 allegedly robbed and then split $250 in proceeds with Gioeli.

9. Robbery of a Drug Dealer

  a. The specific date, time, location and identity of the drug dealer whom Gioeli allegedly authorized CW-1 and Greaves to rob.

10. Robbery of a Long Island Meat Market

  a. The specific date, time, name and location of the Long Island Meat Market Gioeli allegedly robbed with CW-1 and Greaves.

AUSA Elizabeth Geddes
AUSA James Gatta
AUSA Christina Posa
May 3, 2011
Page 5 of 9

    b.  The names of the Long Island Meat Market owners whom Greaves allegedly took a bag filled with evening proceeds in concert with Gioeli and CW-1.

11.    Conspiracy to Rob a Jewelry Store

    a.  The specific name and location of the jewelry store in the vicinity of Route 110 and Hempstead Turnpike in Farmingdale where Gioeli, CW-1 and Greaves allegedly conducted surveillance.

    b.  The specific dates and times that Gioeli, CW-1 and Greaves allegedly conducted surveillance of the jewelry store in the vicinity of Route 110 and Hempstead Turnpike in Farmingdale.

12.    Attempted Burglary of Farmingdale Meat Markets

    a.  The specific location of Farmingdale Meat Markets that Gioeli, CW-1, CW-2 and Greaves allegedly attempted to rob but aborted when an alarm went off.

    b.  The specific dates and time that Gioeli, CW-1, CW-2 and Greaves alleged attempted to rob Farmingdale Meat Markets.

13.    Conspiracy to Rob Pat's Farms

    a.  The specific dates, location and times that Gioeli and CW-1 allegedly conducted surveillance of Pat's Farms in Farmingdale for the purpose of robbing the owner.

    b.  The specific name and home address of the owner of Pat's Farms at the time Gioeli and CW-1 allegedly conducted surveillance of that individual.

14.    Conspiracy to Rob Armored Car Depot

    a.  The specific name and location of the armored car depot on Route 110 in or around Farmingdale where Gioeli, CW-1 and Greaves allegedly conducted surveillance for the purposes of robbing that location.

    b.  The specific dates and times that Gioeli, CW-1 and Greaves allegedly conducted surveillance of the armored car depot on Route 110 in or around Farmingdale for the purpose of robbing it.

AUSA Elizabeth Geddes
AUSA James Gatta
AUSA Christina Posa
May 3, 2011
Page 6 of 9

15.   Conspiracy to Rob Adventureland

    a.   The specific location of the Adventureland amusement park back office
where Gioeli, CW-1 and Greaves allegedly conducted surveillance for the
purpose of robbing that location.

    b.   The specific dates and times that Gioeli, CW-1 and Greaves allegedly
conducted surveillance of the Adventureland amusement park back office
for the purpose of robbing that location.

16.   Attempted Fur Store Burglary

    a.   The specific date, time and location of the fur store in vicinity of Route
110 on Long Island that Gioeli, Saracino, CW-1 and CW-4 attempted to
burglarize by CW-1 and CW-4 trying to break through a wall with
sledgehammers from an adjoining retail space.

17.   Suit Store Burglary

    a.   The specific location of the suit store on Long Island that Gioeli, Saracino,
CW-1 and CW-2 allegedly burglarized on January 25, 1996.

    b.   The specific date, time and location where CW-1 and CW-2 sold suits
allegedly stolen from a suit store on Long Island on January 25, 1996.

18.   Conspiracy to Burglarize the Owner of Lotus Garden

    a.   The specific date and time during 2000 when Gioeli, CW-1 and an alleged
Colombo family associate allegedly conducted surveillance on the owner
of the Lotus Garden Chinese restaurant in Farmingdale for the purpose of
robbing him.

    b.   The specific location of the residence of the owner of the Lotus Garden
Chinese restaurant in Farmingdale where Gioeli, CW-1 and an alleged
Colombo family associate allegedly conducted surveillance for the
purpose of robbing him.

    c.   The  name of the alleged Colombo family associate who allegedly conducted
surveillance with Gioeli and CW-1 of the owner of the Lotus Garden Chinese
restaurant in Farmingdale for the purpose of robbing him.

AUSA Elizabeth Geddes
AUSA James Gatta
AUSA Christina Posa
May 3, 2011
Page 7 of 9

19.   Conspiracy to Rob Manhattan Jewelry Store

    a.   The specific date, time and location when Gioeli and CW-1 allegedly conducted surveillance in or around February 2003 of a jewelry store in Manhattan for the purpose of robbing that location.

    b.   The specific date, time and location when CW-1 and CW-2 allegedly conducted surveillance in or around February 2003 of a jewelry store in Manhattan for the purpose of robbing that location.

20.   Assault at a Carting Company

    a.   The specific date, time, location and name of the carting company located in the vicinity of Route 110 in Huntington where Gioeli, CW-1, CW-2 and Greaves allegedly assaulted a male in the early 1990s.

    b.   The name of the male whom Gioeli, CW-1, CW-2 and Greaves allegedly assaulted at carting company located in the vicinity of Route 110 in Huntington in the early 1990s.

    c.   The specific nature of the injuries allegedly suffered by the male whom Gioeli, CW-1, CW-2 and Greaves allegedly assaulted at carting company located in the vicinity of Route 110 in Huntington in the early 1990s, including hospital records, if any.

21.   Assault at a Meat Market

    a.   The specific date, time, location and name of the meat market in Brooklyn where CW-1 and CW-2 allegedly assaulted an individual at Gioeli's direction in the early 1990s.

    b.   The name of the individual whom CW-1 and CW-1 allegedly assaulted at Gioeli's direction at a meat market in Brooklyn in the early 1990s.

    c.   The specific nature of the injuries suffered by the individual whom CW-1 and CW-1 allegedly assaulted at Gioeli's direction at a meat market in Brooklyn in the early 1990s, including hospital records, in any.

22.   Assault at Lenny's Candy Store

    a.   The specific date, time and location of Lenny's Candy Store in downtown Brooklyn where Gioeli and CW-1 allegedly demanded a debtor pay a debt and assaulted him on behalf of William Russo in the mid-1990s.

AUSA Elizabeth Geddes
AUSA James Gatta
AUSA Christina Posa
May 3, 2011
Page 8 of 9

    b.  The identity of "Lenny the Barber" whom William Russo allegedly arranged to lure a debtor to Lenny's Candy Store where Gioeli and CW-1 allegedly demanded a debtor pay a debt and assaulted him on behalf of William Russo in the mid-1990s.

    c.  The specific identity of the debtor Gioeli and CW-1 allegedly demanded a pay a debt and assaulted on behalf of William Russo at Lenny's Candy Store in the mid-1990s.

    d.  The nature of the injuries suffered by the debtor Gioeli and CW-1 allegedly demanded to pay a debt and assaulted on behalf of William Russo at Lenny's Candy Store in the mid-1990s, including hospital records, if any.

23.    Assault of Gioeli's Daughter's Boyfriend

    a.  The specific date and time when CW-1 and CW-2 were allegedly with Gioeli at his residence when they observed one of Gioeli's daughters being harassed by her boyfriend.

    b.  The specific date, time and location where CW-1 and CW-2 allegedly assaulted one of Gioeli's daughter's boyfriends for harassing her.

    c.  The identity of Gioeli's daughter and her boyfriend whom CW-1 and CW-2 allegedly assaulted on Gioeli's instructions for harassing one of his daughters.

    d.  The specific nature of the injuries suffered by Gioeli's daughter's boyfriend when CW-1 and CW-2 allegedly assaulted him for harassing one of Gioeli's daughters, including hospital records, if any.

24.    Extortion

    a.  The specific dates, times, names and locations of business owners from whom Gioeli allegedly collected protection money including the amounts allegedly collected.

    b.  The specific dates, times, names and locations of business owners where CW-1 allegedly collected protection money on behalf of Gioeli including the amounts allegedly collected.

    c.  The identity of the nightclub on Route 110 in Long Island that allegedly paid $2,000 per month to Gioeli for protection money and the dates and times of the alleged payments.

AUSA Elizabeth Geddes
AUSA James Gatta
AUSA Christina Posa
May 3, 2011
Page 9 of 9

    d.   The identity of the alleged Colombo family associate who operated a lucrative bookmaking business from whom Gioeli alleged collected annual payments, including the amount and dates of the alleged payments.

25.    Joker Poker Machines

    a.   The specific names and locations of establishments with Joker Poker machines in Brooklyn and Long Island where Gioeli allegedly collected proceeds in the 1990s.

    b.   The specific dates and times when Gioeli allegedly collected proceeds in the 1990s from establishments with Joker Poker machines in Brooklyn and Long Island.

    I want to thank you in advance for your promptly providing the information sought by this letter.

Very truly yours,

Adam D. Perlmutter

Cc:    Thomas Gioeli (via regular mail)
        Carl J. Herman, Esq. (via electronic mail)
        Samuel Braverman, Esq. (same)

EXHIBIT "B"



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG/JDG/CMP                    *271 Cadman Plaza East*
F.#2008R00530                  *Brooklyn, New York 11201*

May 26, 2011

<u>By Facsimile</u>

Adam D. Perlmutter, Esq.
Law Offices of Adam Perlmutter, P.C.
260 Madison Avenue, Suite 1800
New York, New York 10016

    Re:  United States v. Thomas Gioeli, et al.
         <u>Criminal Docket No. 08-240 (S-6) (BMC)</u>

Dear Mr. Perlmutter:

        The government writes in connection with your letter
dated May 4, 2011, in which you request information regarding
uncharged acts by defendants Gioeli and Saracino the government
has moved <u>in limine</u> to admit at trial. (<u>See</u> Mem. of Law in Supp.
of Gov't's Mot. <u>In Limine</u>, dated Apr. 22, 2011 (Docket No. 1134)
("Gov't Br.")).

        As the government informed your colleague Mr. Herman at
the May 11, 2011 appearance in this case, the government submits
that it has provided more than adequate notice of the uncharged
acts it seeks to admit against the defendants in its detailed
moving papers to enable Gioeli and Saracino both to prepare
responses in opposition to the government's <u>in limine</u> motion and
to defend against the evidence at trial and, accordingly,
declines to provide any additional information at this time.
(<u>See</u> Gov't's Br. at 11-23).  Furthermore, any additional requests
for discovery with respect to the uncharged acts at issue in the
government's motion amount to a request that the government
preview its case, an obligation the law does not require.  See
<u>United States v. Gotti</u>, 784 F. Supp. 1017, 1019 (E.D.N.Y. 1992)
(Glasser, J.) (denying defendants' request for a bill of
particulars as to uncharged crimes about which the government
sought to introduce evidence at trial) (citing <u>United States v.
Gottlieb</u>, 493 F.2d 987, 994 (2d Cir. 1974) and <u>United States v.
Leonelli</u>, 428 F. Supp. 880, 882 (S.D.N.Y. 1977)).

Adam D. Perlmutter, Esq.
May 26, 2011
Page 2

        Please contact us should you have any additional
requests.

                             Very truly yours,

                             LORETTA E. LYNCH
                             United States Attorney

               By:

                             Elizabeth A. Geddes
                             James D. Gatta
                             Cristina M. Posa
                             Assistant U.S. Attorneys

cc:  Carl J. Herman, Esq. (by facsimile)
     Samuel M. Braverman, Esq. (by facsimile)