EAG/JDG/CMP
F.# 2008R00530

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

                                      08 CR 240 (S-6)(BMC)

THOMAS GIOELI and
DINO SARACINO,

         Defendants.

- - - - - - - - - - - - - - - X

REPLY MEMORANDUM OF LAW IN SUPPORT OF
THE GOVERNMENT'S MOTION <u>IN</u> <u>LIMINE</u> TO ADMIT
<u>CERTAIN EVIDENCE AGAINST THE DEFENDANTS AT TRIAL</u>

                                      LORETTA E. LYNCH
                                      United States Attorney
                                      Eastern District of New York
                                      271 Cadman Plaza East
                                      Brooklyn, New York 11201

Elizabeth A. Geddes
James D. Gatta
Cristina M. Posa
Assistant U.S. Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this reply to the memoranda filed by defendants Thomas Gioeli and Dino Saracino in opposition to the government's motion in limine to admit at trial evidence of certain uncharged crimes of the defendants, (see Gioeli Mem. of Law in Opp'n, filed June 10, 2011 (Docket No. 1167) ("Gioeli Br.") and Saracino Mem. of Law in Opp'n, filed June 14, 2011 (Docket No. 1171) ("Saracino Br.")), and in further support of the government's in limine motion. (See Gov't Mem. of Law in Supp., filed April 22, 2011 (Docket No. 1134) ("Gov't Br.")). In their papers, the defendants contend that the uncharged crimes the government seeks to admit at trial should be precluded. In addition, Gioeli moves for an order requiring the government to provide additional information regarding some of the defendants' prior bad acts the government seeks to introduce.[1]

For the reasons set forth herein and in the government's initial papers, the government's motion in limine should be granted in its entirety and Gioeli's discovery motion should be denied.

---

[1] Saracino joins in Gioeli's motion for additional disclosure and "adopts the arguments put forth by Gioeli" in Gioeli's opposition papers. (Saracino Br. at 2).

ARGUMENT

I. The Evidence of the Defendants' Other Acts Offered by the Government Should be Admitted at Trial

Defendants Gioeli and Saracino argue that evidence of their involvement in uncharged crimes should be excluded. The gravamen of the defendants' arguments against admission is that many of the elements of racketeering conspiracy that the government is required to prove "will not be contested" by the defendants, undercutting the government's rationale for admissibility (Gioeli Br. at 8-9; see Saracino Br. at 2-3), and that in light of the defendants' proffered admissions, the probative value of the evidence the government seeks to admit is substantially outweighed by the danger of unfair prejudice. (See Gioeli Br. at 11-13; Saracino Br. at 3-4). In addition, the defendants claim that Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)") does not provide a basis for the evidence the government seeks to admit. (See Gioeli Br. at 13-15). The defendants' arguments are unavailing.

   A. Evidence of The Other Acts Is Admissible to Establish the Racketeering Enterprise and Conspiracy

Gioeli and Saracino's assertion that the they will not contest the existence, methods and means of the charged enterprise is not a basis to exclude the evidence. As set forth below, the government is not required to accept the defendants' stipulations where, as here, the evidence the government seeks to

2

admit is directly relevant to defendants' culpability. Moreover, even were the government to enter into the defendants' proposed stipulations, the evidence the government seeks to admit is still relevant to proving the roles of the <u>defendants</u> in the charged enterprise and that the pattern of racketeering activity in which the <u>defendants</u> engaged.

      1.    <u>The Government Should Not Be Required to Enter Into the Defendants' Proposed Stipulations</u>

The Second Circuit has expressly held that "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it." <u>United States v. Salameh</u>, 152 F.3d 88, 122 (2d Cir. 1998) (quoting <u>Old Chief v. United States</u>, 519 U.S. 172, 187-88 (1997)) (citation omitted). In other words, "the Government generally has a right to present evidence of a fact that a defendant would prefer to admit, so as to establish the 'human significance' of the fact and 'to implicate the law's moral underpinnings.'" <u>United States v. Velazquez</u>, 246 F.3d 204, 211 (2d Cir. 2001) (quoting <u>Old Chief</u>, 519 U.S. at 187-88); <u>see also</u> <u>United States v. Gantzer</u>, 810 F.2d 349, 351 (2d Cir. 1987) (a "party is not obliged to accept an adversary's 'judicial admission' in lieu of proving the fact . . . particularly in the context of a criminal prosecution where the accused seeks to stipulate to an element of the crime charged"); 9 Wigmore, Evidence § 2591 at 824 (Cadbourn Rev. 1981) ("a colorless

admission by the opponent may sometimes have the effect of depriving the party of the legitimate moral force of his evidence").

The Supreme Court has provided a compelling rationale for permitting parties to present all the evidence they possess, rather than simply rely on admissions:

> Jury duty . . . may be as difficult for one juror suddenly to face the findings that can send another human being to prison, as it is for another to hold out conscientiously for acquittal.  When a juror's duty does seem hard, the evidentiary account of what a defendant has thought and done can accomplish what no set of abstract statements ever could, not just to prove a fact but to establish its human significance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment.  Thus, the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault.
>
> But there is something even more to the prosecution's interest in resisting efforts to replace the evidence of its choice with admissions and stipulations, for beyond the power of conventional evidence to support allegations and give life to the moral underpinnings of law's claims, there lies the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be. . . .  A prosecutor who fails to produce [an essential piece of evidence], or some good reason for his failure, has something to be concerned about.  If jurors' expectations are not satisfied, triers of fact may penalize the party who

>     disappoints them by drawing a negative
>     inference against that party. Expectations
>     may also arise in jurors' minds simply from
>     the experience of a trial itself. If
>     suddenly the prosecution presents some
>     occurrence . . . by announcing a stipulation
>     or admission[ ] the effect may be like
>     saying, "never mind what's behind the door,"
>     and jurors may well wonder what they are
>     being kept from knowing. . . .

Old Chief, 519 U.S. at 188 (internal quotation marks, bracketed text, citation and footnote omitted).

The government is accordingly entitled to prove the facts to which the defendants propose to stipulate to through the testimony of witnesses and other evidence that "tells a colorful story with descriptive richness." Id. at 187. "To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight." Id. (internal quotation marks and citation omitted).

> 2. The Evidence the Government Seeks to
>    Admit is Probative Notwithstanding
>    the Defendants' Stipulations

Moreover, even if the government were to enter into the defendants' proposed stipulations, the other acts evidence is still highly probative.

The defendants proffer that they will stipulate that (a) "an enterprise described by the government as the Colombo family exists"; (b) the Colombo family has engaged in racketeering activity; (c) Colombo family members conspired "to conduct their affairs through a pattern of racketeering

5

activity"; (d) Colombo family members "committed crimes, including murder, murder conspiracy, obstruction of justice, robberies, burglaries, sale of stolen goods, assaults, extortion, narcotics trafficking, loan sharking, and illegal gambling"; and (e) these activities by the Colombo family "had an effect on interstate commerce." (Gioeli Br. at 8-9; Saracino Br. at 2-3). However, the defendants do not suggest that they will stipulate – and thus, the government still must prove, among other things, that the <u>defendants</u> were associated with or employed by the Colombo family and that the <u>defendants</u> conspired to conduct or participate in the affairs of the Colombo family through a pattern of racketeering activity. As set forth in the government's opening brief, evidence of the proffered uncharged crimes is integral to proving both.

    3.    <u>The Other Crimes Evidence is Admissible as it is Direct Evidence of and Inextricably Intertwined with the Evidence of the Charged Offenses</u>

In any event, the government's proffered evidence of the defendants' involvement in uncharged crimes – including murders and murder conspiracies, as well as robberies, extortion and loansharking – are inextricably intertwined with the evidence of the charged offenses and necessary to complete the story of those crimes. (<u>See</u> Gov't Br. at 29-33). The evidence showing the defendants and their co-conspirators' evolution "into a 'murderous crew' who killed to protect themselves and their

6

criminal enterprise" (Gioeli Br. at 10) provides background necessary to complete the story of their nearly twenty-year criminal conspiracy.[2] For example, evidence of the Miccio and Gargano murders in 1994 explains Saracino's and CW-2's involvement in later charged murders; among other things, this evidence shows why Gioeli and CW-1 (who had previously engaged in murder together) entrusted Saracino and CW-2 to participate in the Greaves, Dols and Cutolo murders with them. See United States v. Amato, No. 03 CR 1382 (NGG), 2006 WL 1495497, at *7 (E.D.N.Y. May 26, 2006) (permitting admission of evidence of uncharged murders by Bonanno family associate to show associate's trust and authority within the Bonanno family before participation in the charged murder). The defendants' claim that such evidence should not be admitted because "[i]ndividuals who commit murder together presumably know and trust one another. . . . The fact that they engaged in other criminal events adds little to explaining or proving the charged murders," (see Gioeli Br. at 14), is without merit and belied by well-established precedent. See United States v. Roldan-Zapata, 916

---

[2] Gioeli asserts that the government's rationale for admissibility of the crimes of the defendants is a "legal theory" that the defendants and their co-conspirators "evolved into a 'murderous crew' who killed to protect themselves and their criminal enterprise." (Gioeli Br. at 10). To the contrary, the proffered evidence is relevant and probative factual evidence regarding issues that will undoubtedly be in dispute at trial, e.g., the defendants' relationship to the enterprise and to each other and their co-conspirators.

7

F.2d 795, 804 (2d Cir. 1990) (prior act evidence admissible to "'inform the jury of the background of the conspiracy charged'" and to "'help[] explain to the jury how the illegal relationship between [participants in the crime] developed" (citations omitted)).

      3.    The Other Acts Evidence is Admissible Under Rule 404(b)

The proffered evidence of uncharged criminal conduct is also admissible under Rule 404(b), to show, among other things, identity, opportunity and motive, as set forth in the government's moving brief. (See Gov't Br. at 34-41). The defendants' conclusory argument that Gargano's burial in a Farmingdale close to Gioeli's home and later near the sites where Greaves' and Cutolo's bodies were buried cannot be considered a "signature" aspect of the crime rendering the evidence inadmissible, (see Gioeli Br. at 14-15; Saracino Br. at 3-4), is without merit. Such evidence is sufficient to show existence of a pattern so as to show identity. See United States v. Sliker, 751 F.2d 477, 486-87 (2d Cir. 1984); (Gov't Br. at 38).

      4.    The Other Crimes Evidence is Not More Prejudicial Than Probative

The defendants' arguments that they would suffer undue prejudice from admission of the proffered uncharged crimes, (see Gioeli Br. at 13; Saracino Br. at 4), are similarly unavailing. Gioeli's claims that "the government seeks to transform a

8

murder/racketeering indictment charging discrete criminal acts into days of testimony from government cooperators about a litany of criminal conduct, much of which cannot be connected to defendant Gioeli" (Gioeli Br. at 13) is untrue. As set forth in the government's moving papers, the proffered evidence is replete with details of Gioeli's direct involvement. (<u>See</u> Gov't Br. at 11-23). Further, Saracino's argument that the number of uncharged crimes the government seeks to admit involving Gioeli is disproportional to the ones involving Saracino, and that admission would result in "spillover prejudice" to Saracino, is without merit. (Saracino Br. at 4). Saracino is charged with three murders, including the murder of a New York City Police Officer. As with Gioeli, evidence of the uncharged crimes are either of a similar nature or less sensational than the charged crimes. (<u>See</u> Gov't Br. 39-41). Accordingly, and for the reasons set forth in the government's initial brief, they should be admitted.

II. The Government Has Provided Sufficient Information
    <u>About the Uncharged Crimes it Seeks to Admit</u>

Gioeli contends that the government has not provided enough information about the proffered evidence the government seeks to admit. (<u>See</u> Gioeli Br. at 6-7). The discovery Gioeli seeks can be characterized as specific dates, times and locations of criminal acts and conversations engaged in by Gioeli and his co-conspirators. Gioeli claims that without such information

the defense cannot "even address" the government's motion. (Id. at 6). Gioeli's conclusory argument, which is unsupported by case law, is without merit.

It is well-established that a defendant is not entitled to discover the exact times and places at which a charged crime occurred or the identities of the witnesses and the documents that will establish the charged crime. See United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975); United States v. Carroll, 510 F.2d 507, 509 (2d Cir. 1975). Nor is a defendant entitled, as Gioeli claims, to detailed evidence as to how, when, where, or with whom an alleged conspiracy took place. See United States v. Feola, 651 F. Supp. 1068, 1132-33 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir. 1989).

The factual background of the other acts the governments seeks to admit that was set forth in the government's initial brief provided more than adequate notice for Gioeli to challenge their admission at trial and prepare a factual defense.

Accordingly, Gioeli's motion for additional discovery about the uncharged bad acts should be denied.

## CONCLUSION

For the reasons set forth above and in the government's memorandum of law dated April 22, 2011, the government's motion <u>in limine</u> should be granted.

Dated:   Brooklyn, New York
         June 24, 2011

                                                Respectfully submitted,

                                                LORETTA E. LYNCH
                                                United States Attorney
                                                Eastern District of New York

Elizabeth A. Geddes
James D. Gatta
Cristina M. Posa
Assistant U.S. Attorneys
    (Of Counsel)