# Law Offices of Adam D. Perlmutter, P.C.
## Attorneys At Law

**260 Madison Avenue, Suite 1800**
**New York, NY 10016**
**Tel. (212) 679-1990**
**Fax. (212) 679-1995**

Adam D. Perlmutter, esq.
—
Jennifer Louis-Jeune, Esq.

Of Counsel
Paul Greenfield, Esq.

August 3, 2011

**VIA ECF**

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    **Re:**    **United States of America v. Thomas Gioeli,** *et al.*
            **Case No. 08-cr-240 (S-6) (BMC) (RER)**

Dear Judge Cogan:

    I am counsel of record, along with Carl J. Herman, Esq., to defendant Thomas Gioeli in connection with the above matter. We have been appointed to represent Mr. Gioeli pursuant to the Criminal Justice Act. We are writing in advance of the conference with the Court on Thursday, August 4th, at 2:15 pm, concerning the government's failure to comply with the Court's earlier order to preserve all MDC telephone recordings of former co-defendant Nicholas Bova and cooperating witness Dino Calabro. Susan Kellman, Esq., counsel for co-defendant Joel Cacace, joins in the present application.

    By way of background, defendants sought the preservation of every Calabro and Bova MDC recording because they had a good faith basis to believe that Calabro was illegally using Bova's inmate phone account to continue Calabro's criminal activities while simultaneously negotiating a cooperation agreement with the government. Upon information and belief, Calabro's actions included planning to provide false information to the government against Gioeli and other co-defendants in order to get a cooperation agreement. He was also trying to marshal loan sharking proceeds in order to build up his savings prior to entering the government's witness security program.

In the past, defense requests to have the MDC preserve and produce recorded telephone conversations have routinely been ignored by the MDC, notwithstanding the existence of a court order.  These problems have resulted in recordings regularly going missing, being lost and/or destroyed.  *See* Letter of Susan G. Kellman, Esq., dated March 9, 2010, at 2 and n.1-3.  On March 10, 2010, in order to specifically avoid these very problems, upon application of defendant Joel Cacace, the Court appointed Assistant United States Attorney David Bitkower as "firewall counsel" to act on behalf of the Bureau of Prisons in connection with this matter.  Specifically, the Court ordered firewall counsel to file under seal "*all recorded conversations* intercepted and recorded over the telephone lines at the Metropolitan Detention Center for inmates: DINO CALABRO and NICHOLAS BOVA."  *See* Court Order dated March 10, 2010 (emphasis added).  The Court's order had no date restriction for the materials that firewall counsel had to obtain; rather, it was clear that firewall counsel was to obtain "all" such recordings.  By letter dated June 1, 2010, firewall counsel indicated that he delivered compact discs containing the recorded conversations to the Court on April 12, 2010, and asked that the firewall be lifted.  *See* ECF No. 741.  Firewall counsel did not qualify his production as being anything less than that which the Court had ordered; nor did he suggest that he encountered any difficulty obtaining "all" of the recordings that were the subject of the Court's Order.  The Court granted that request.

On June 28, 2011, the Court permitted release of the recordings to the defendants for review in order to prepare for trial.  After some delay in locating the materials, the Court was finally able to release them to defendants in early July.  They had apparently been misfiled and not placed in the Clerk's vault for safekeeping.  A review of the recordings has now revealed that firewall counsel failed to obtain all of MDC recordings for Bova and Calabro, as required by the Court's order.  Specifically, Calabro was incarcerated in this case since June 4, 2008, and Bova was writted into the Eastern District on or about July 11, 2008.  Both individuals were housed at the MDC during the pendency of their respective cases.  Firewall counsel, however, only obtained Bova's recordings covering the period from September 13, 2009 to March 2, 2010, and for Calabro from September 12, 2009 to January 24, 2010.  Bova and Calabro were housed together at the MDC during a period prior to September 12, 2009, which recordings have been omitted in the materials produced by firewall counsel, notwithstanding that they are well within the purview of the Court's Order and clearly pertinent.

We have attempted to conference this matter with firewall counsel to afford him the opportunity to explain why the recordings during the critical period of time when Bova and Calabro were housed together, which this Court ordered segregated and preserved, were not – and are now apparently missing, lost and/or destroyed.  In response, firewall counsel has declined to explain the manner in which he obtained the recordings from the MDC, including how he determined that he had obtained all the material required by the Court's order, and the reason that the period prior to September 12, 2010 is excised from the production.  We have also received no explanation regarding the missing recordings or any offer to contact the MDC to see whether any of the missing materials still exist.  In addition, we have not received any complete printout of the MDC

The Honorable Brian M. Cogan
August 3, 2011
Page 3 of 5

phone calls or phone logs from the MDC's TruFone System for Bova or Calabro to determine the scope and extent of missing information. Firewall counsel simply takes the position that his duties have ceased since the Court removed the firewall in June 2010.

At this juncture, the government must explain itself regarding what, if any, failures occurred in firewall counsel originally obtaining the materials including:

1. What method (or lack thereof) firewall counsel employed in determining that he obtained the entire universe of recordings required by the Court's order?

2. What documentation exists regarding the extent of the universe of calls made by each of these individuals, i.e., phone account records and/or phone logs and/or approve telephone lists?

3. What documentation exists regarding the possible destruction or loss of any recordings including when materials were lost or destroyed?

4. What directions did firewall counsel give to the MDC to secure all of the recordings required by the Court's order?

5. What steps did firewall counsel take to ensure that he was obtaining the universe of tapes that assured compliance with the Court's Order?

6. What efforts did firewall counsel undertake when he [must have] learned that recordings for a large, critical period of time were not produced?

7. What, if any, conversations has firewall counsel had with the MDC and/or counsel for the government regarding the recordings not produced?

8. What attempts, if any, have been made since the discovery of the failure to secure all the material, to locate the missing recordings and/or determine the scope what is missing or now destroyed?

The government's response to date on this issue has been unsatisfactory and raises serious questions about whether actions have been in bad faith. Defendant Saracino's initial request for the appointment of firewall counsel indicated that the recordings could include material implicating *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The Court's order could not be clearer that firewall counsel needed to obtain *all* recordings as opposed to omitting a critical time period.

If the government's conduct constitutes bad faith, the spoliation of evidence will have violated defendants' due process rights. *See Arizona v. Youngblood*, 488 U.S. 51 (1988); *California v. Trombetta*, 467 U.S. 479 (1984); *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982). Each of these cases is a progeny of *Brady* and support the

proposition that loss or destruction of evidence is a due process violation if the exculpatory value of the evidence was apparent, *or* the destruction was in bad faith and the evidence was material. *See Valenzuela-Bernal*, 458 U.S. at 872-73 (holding that a violation of due process protections "requires some showing that the evidence lost would be both material and favorable to the defense"); *Youngblood*, 488 U.S. at 58 (holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law").

The government has a duty to preserve and disclose exculpatory evidence that is material to either guilt or punishment. *Brady*, 373 U.S. at 83. Evidence is material if the exculpatory value of the evidence was apparent before it was lost or destroyed and was of such a nature that the defendant would have been unable to obtain comparable evidence by other reasonably available means. *Trombetta*, 467 U.S. at 488-89. A federal due process violation occurs when the government suppresses or fails to disclose material exculpatory evidence, regardless of whether the government acted in bad faith. *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004). However, to prove a due process of law violation based on the government's loss or destruction of potentially useful evidence, as opposed to material, exculpatory evidence, the defendant must show the state acted in bad faith in destroying the evidence. *Youngblood*, 488 U.S. at 57-58. Potentially useful evidence is evidentiary material of which no more can be said than that it might have exonerated the defendant. *Id*. at 57.

Rule 612 of the Federal Rules of Evidence provides that "[i]f a writing is not produced or delivered pursuant to order under this rule, the court shall make any order justice requires, *except that in criminal cases* when the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interests of justice so require, declaring a mistrial" (emphasis added); *see also United States v. Pope,* 547 F.2d 320, 325 (2nd Cir. 1978) (relying on legislative history of *Jencks* Act to conclude that when Act is violated by oversight or negligent conduct not amounting to a conscious election, trial judge has the discretion to apply "such remedy as the justice of the case may require under the circumstances"); *Sterbenz v. Attina*, 205 F. Supp. 2d 65, 74 (E.D.N.Y. 2002) ("ordinarily, the sanctions for spoliation involve preclusion of evidence, the drawing of an adverse inference, dismissal or default." (Citation omitted.)

In light of the foregoing, we ask that the Court address the issue of the missing recordings at tomorrow's conference. In addition, we ask that the Court direct disclosure from the government regarding the issues set forth above and whatever further disclosure that the Court deems necessary to determine whether there is any remedy to this situation or what sanctions, if any, are appropriate under the circumstances.

The Honorable Brian M. Cogan
August 3, 2011
Page 5 of 5

      We want to thank the Court in advance for its consideration of this matter.

                Respectfully submitted,

                Adam D. Perlmutter

Cc:    All counsel (via ECF)
       Thomas Gioeli (via regular mail)