

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG/JDG/CMP
F.#2008R00530

*271 Cadman Plaza East*

*Brooklyn, New York 11201*

September 1, 2011

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  United States v. Thomas Gioeli, et al.
           Criminal Docket No. 08-240 (S-6)(BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in opposition to the defendant Dino Saracino's "Motion for Sanctions," filed on August 18, 2011 in the above-referenced case (ECF Docket No. 1242) ("Saracino Mot.") and the defendant Thomas Gioeli's letter joining in Saracino's motion, filed on August 22, 2011 (ECF Docket No. 1243) ("Gioeli Mot."). For the reasons set forth below, the defendants' motions to (1) dismiss the indictment, (2) preclude the government from introducing any prison calls into evidence at trial, and/or (3) give the jury a negative inference charge are without merit and should be rejected, as should Gioeli's motion for an evidentiary hearing. (See Saracino Mot. at 1, Gioeli Mot. at 2).

I.    Background

      In a letter filed on August 3, 2011, Gioeli claimed that in March 2010, the defendant Joel Cacace made an ex parte motion for the Court to appoint government firewall counsel to obtain all telephone recordings of Nicholas Bova and Dino Calabro made at the Metropolitan Detention Center ("MDC") during the periods of their incarceration there. (See Ltr. from Adam D. Perlmutter, Esq., to the Court, dated Aug. 3, 2011 (ECF Docket No. 1201) ("Gioeli Ltr.") at 2). According to Gioeli, this demand was prompted by the defendants' "good faith basis to

The Honorable Brian M. Cogan
September 1, 2011
Page 2

believe that Calabro was illegally using Bova's inmate phone account to continue Calabro's criminal activities while simultaneously negotiating a cooperation agreement with the government." (Id. at 1). Gioeli further claimed that:

> [U]pon information and belief, Calabro's actions included planning to provide false information to the government against Gioeli and other co-defendants in order to get a cooperation agreement. He was also trying to marshal loan sharking proceeds in order to build up his savings prior to entering the government's witness security program.

(Id.) As a result of the defendants' March 2010 request, the Court ordered on March 10, 2010 that all of Bova's and Calabro's recorded conversations that were in the possession of the MDC at the time of that order be provided to the Court. (Transcript dated Aug. 4, 2011 ("Tr.," attached hereto as Exhibit 1), at 3). An Assistant United States Attorney acting as firewall counsel promptly facilitated the production of all such recordings – which did not include any recorded telephone calls prior to September 13, 2009, approximately six months prior to the Court's March 10, 2010 Order – to the Court. At the defendants' request, the recordings were released by the Court to the defendants in early July 2011. (Gioeli Ltr. at 2).

At a status conference held on August 4, 2011, the government, based on information provided by the MDC, informed the Court that the pre-September 12, 2009 calls were not produced because they had been deleted prior to the March 10, 2010 Order pursuant to the MDC's policy of deleting audio recordings of inmate calls after 180 days. (Tr. at 4-5). The Court, noting that it was "not suggesting that the MDC should produce things that did not exist," found that "[t]here's no violation of my order, if indeed the MDC gave everything that they had when the order was issued." (Id. at 11). The Court, however, instructed an MDC staff attorney present at the conference to, among other things, "double-check" (Tr. at 18) that all such recordings indeed had been produced. The MDC staff attorney has informed the government that all such recordings were, in fact, produced. In addition, after consulting with the MDC, the government informed the Court that once inmate calls have been purged, they are no longer electronically retrievable. (Ltr. from AUSA James D. Gatta to the Court, dated Aug. 10, 2011 (ECF Docket No. 1216) at 2).

The Honorable Brian M. Cogan
September 1, 2011
Page 3

Confronted with these facts, the defendants now move for sanctions on the alleged grounds that the MDC violated a policy of the Bureau of Prisons ("BOP") regarding the retention of audio recordings by routinely overwriting such recordings after a period of six months, and as a result, violated the defendants' constitutional rights. According to the defendants, the disputed telephone recordings should have been retained for six years because (1) they constitute "automated records . . . maintained on magnetic medium" (Gioeli Mot. at 1), and (2) they are "relevant to any open case" (Saracino Mot. at 9). These assertions, however, rely upon an incorrect interpretation of the March 28, 2002 order of the Acting Assistant Attorney General for Administration (AAG/A Order No. 261-2002) (the "AAG Order," attached as Exhibit 2 hereto), which, according to BOP counsel, governs the disclosure and retention of, inter alia, audio recordings of inmates' telephone calls and related record-keeping. The AAG Order was previously provided to the Court by the government with its August 10, 2011 letter, but is attached here for ease of reference.

As demonstrated in Section III below, the MDC did not violate BOP policies regarding the retention of inmate telephone recordings and related records. But even assuming, arguendo, that it did, the MDC's violation of an internal administrative policy does not give rise to the drastic remedies sought by the defendants – particularly in light of the fact that the defendants now appear to have abandoned their prior "good faith" claim that the pre-September 12, 2009 Bova and Calabro recordings contained exculpatory or impeachment information. As Saracino set forth in his August 18, 2011 motion, which was joined by Gioeli, "Counsel respectfully notes for the Court the possibility of exculpatory information on said tapes, and defendant Saracino's inability to obtain same. In the absence of more specific information about the content of said conversations, Counsel will refrain from further argument and rely upon the discretion of the Court." (Saracino Mot. at 10 (emphasis added)). In joining this motion, Gioeli appears to have acknowledged that, in fact, he has no "specific information" (id.) about the content of the Bova and Calabro recordings, thereby abandoning the so-called "good faith basis" he previously proffered. (See Gioeli Mot. at 1).

The Honorable Brian M. Cogan
September 1, 2011
Page 4

II. <u>The Defendants' Rights Were Not Violated</u>

The defendants claim that their rights under Rule 16 of the Federal Rules of Criminal Procedure, the Jencks Act (18 U.S.C. § 3500) and the Confrontation Clause of the United States Constitution have been violated because they cannot access each and every call made using Bova's and Calabro's phone accounts during the periods of their incarceration at the MDC. (Saracino Mot. at 1, 10). These arguments are without merit.

A. <u>There Has Been No Jencks Act Violation</u>

The defendants' assertions that the MDC's failure to preserve these recordings violates 18 U.S.C. § 3500 is without merit.[1] The Jencks Act applies only to statements "in the possession of the United States." The defendants casually use the monolithic term "the Government" to include both the United States Attorney's Office, the BOP and/or the MDC. (Saracino Mot. at 9-10). But "[a]s the Second Circuit has noted, adoption of such a 'monolithic view of government' would condemn criminal prosecution 'to a state of paralysis.'" <u>Chandras v. McGinnis</u>, No. 01 CV 2519 (LBS), 2002 WL 31946711, at *8 (E.D.N.Y. Nov. 13, 2002) (Sand, J., sitting by designation) (quoting <u>United States v. Avellino</u>, 136 F.3d 249, 255 (2d Cir. 1998)). With respect to the BOP in particular, in <u>United States v. Galestro</u>, Judge Ross refused to find that the government was in "constructive possession" of BOP prison recordings and other records where the defendants failed to present any evidence that the BOP was part of the "prosecution team." No. 06 CR 285 (ARR), 2008 WL 2783360, at 19 (E.D.N.Y. July 15, 2008). <u>See also United States v. Merlino</u>, 349 F.3d 144, 155 (3d Cir. 2003) ("'[i]n speaking of statements 'in the possession of the United States,' we understand the statute to require production only of statements possessed by the prosecutorial arm of the federal government.' In this case, the BOP was not part of the prosecutorial arm of the federal government as it was not at all involved in either the investigation or the prosecution of the defendants.") (quoting <u>United States v. Dansker</u>, 537 F.2d 40, 61 (3d Cir.

---

[1] The defendants also make the cursory claim that Bova's and Calabro's prison calls somehow constitute discoverable material under Rule 16. (Saracino Mot. at 8-9). The government is unaware of, and the defendants do not rely upon, any provision of Rule 16 that supports this claim. Therefore, that claim must similarly fail.

The Honorable Brian M. Cogan
September 1, 2011
Page 5

1976)).  Here, Saracino and Gioeli have not shown and cannot show that the MDC is part of the "prosecution team" in this case. Absent such a showing, there was no violation of the defendants' rights under 18 U.S.C. § 3500.[2]

  B.  <u>There Has Be No Confrontation Clause Violation</u>

    The defendants also fail to explain their summary allegation of a Confrontation Clause violation.  (<u>See</u> Saracino Mot. at 10).  If the defendants have a good faith basis to cross-examine a cooperating witness about his use of the telephones at the MDC within the proper confines of impeachment under Fed. R. Evid. 607 and 608, nothing precludes them from doing so.[3]  But, as described above in Section I, the defendants now have inexplicably abandoned their prior claim that they possessed

---

  [2]  In his August 3, 2011 letter, Gioeli also claimed that "if the government's conduct constituted bad faith, the spoilation of evidence will have violated defendants' due process rights."  (Gioeli Ltr. at 3).  In light of the facts presented at the August 4, 2011 status conference, the defendants appear to have abandoned their spoilation argument.  In any event, such an argument would be without merit because the cases cited by Gioeli all concern the destruction of evidence by the government – not by a third party, such as the BOP and/or MDC, unaffiliated with the prosecution team.  <u>See</u>, <u>e.g.</u>, <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988) (failure of "<u>police</u>" to preserve semen sample in child molestation case "even though the samples might have been useful" did not violate due process absent a showing of bad faith); <u>California v. Trombetta</u>, 467 U.S. 479, 482 (1984) (failure of "<u>arresting officers</u>" to preserve breath samples in drunk driving case did not violate due process) (cited in Gioeli Ltr. at 3-4). Gioeli's citation to <u>United States v. Valenzuela-Bernal</u> is similarly inapposite (<u>see</u> Gioeli Ltr. at 3-4), as that case concerned the executive branch's failure to detain alien witnesses after they had been interviewed by "criminal investigators" and the <u>prosecutor</u> had determined they "possessed no evidence material to the prosecution or defense" – and still found no due process violation.  458 U.S. 858, 861 (1982).

  [3]  Under Rule 608(b), however, the defendants would not be permitted to introduce any of the Calabro/Bova MDC telephone recordings into evidence, as such recordings would constitute impermissible extrinsic evidence of prior instances of misconduct for impeachment purposes.

The Honorable Brian M. Cogan
September 1, 2011
Page 6

"information," and therefore a good faith basis, to claim that the pre-September 13, 2009 telephone recordings contained evidence favorable to the defense. In light of this apparent about-face, the government respectfully requests that, in the event the defendants seek to cross-examine the witness about the content of these calls, the Court first demand of counsel an offer of proof as to just what information they ever possessed to support their previously-held "good faith" belief that such recordings would be exculpatory in any way. Evaluating the basis of this now-abandoned allegation would enable the Court to determine whether, notwithstanding the lack of recordings, the defendants have other means to make effective use of such impeachment during cross examination. Such availability, the government submits, would be as critical to an analysis of a Confrontation Clause claim as it would have been to the defendants' now-abandoned spoilation claim. See California v. Trombetta, 467 U.S. 479, 489 (1984) (the destruction of evidence only rises to constitutional dimensions upon a defendant's showing that, inter alia, he is "unable to obtain comparable evidence by other reasonably available means."). Absent a proffer of the "information" defendant Gioeli previously claimed to possess to support a Sixth Amendment claim, the motion should be summarily denied.

Nor is there any basis for the defendants' motion for a negative inference charge. (See Saracino Mot. at 1). Although the defendants do not specify or describe the "negative inference charge" sought, the government presumes that it would be akin to a missing witness charge, which "permits the jury to draw an adverse inference against a party failing to call a witness when the witness's material would be material and the witness is peculiarly within the control of the government." United States v. Caccia, 122 F.3d 136, 139 (2d Cir. 1997). Here, there is no evidence that the disputed Bova and Calabro calls are even relevant to the defense, let alone "material." Id. Moreover, the recordings were not "peculiarly within the control of the government" (id.), as demonstrated by the fact that the defendants made and were granted their ex parte application that the MDC provide the recordings last year. It would be wholly inappropriate to instruct the jury to draw an adverse inference against the government's case based on these facts.

The Honorable Brian M. Cogan
September 1, 2011
Page 7

III. The MDC Did Not Violate BOP Policy

As set forth above, even if the MDC somehow violated BOP policy, such a violation would not amount to the denial of the defendants' rights. But the fact remains that based on the information provided by the MDC and BOP, no such violation of internal policy occurred.

   A.   The Bureau of Prisons' Storage and Retention Policy for Telephone Data

According to the AAG Order, all information maintained in the "Telephone Activity Record System," which expressly includes "audiotapes and digital recordings of telephone calls," is "stored in electronic media . . . [and] other computerized media," except documentary records, which are maintained in manual file folders and/or on index card files. (AAG Order at 2, 3). Thus, despite the use of the word "audiotape," which might otherwise connote a cassette tape, the policy presumes that all telephone calls are maintained in the form of "electronic media."

As noted by the defendants, in the "Retention and Disposal" section, the AAG Order states that "automated records" are maintained on a magnetic medium for a period of six years. (AAG Order at 4; see Gioeli Mot. at 1). The defendants, however, fail to note that the AAG Order expressly distinguishes such "automated records" from "audiotapes," which are ordinarily maintained for a period of six months, "at which time they are overwritten with new data." (AAG Order at 4). The offices of MDC counsel and deputy regional counsel for the BOP have informed the government that they interpret all telephone audio recordings as "audiotapes" and, accordingly, digital audio recordings of prison calls are preserved for a minimum of six months, not six years. Such a six-month retention period is standard operating procedure for the BOP, and as a result, the majority of BOP facilities follow the same six-month retention policy and practice with respect to audio recordings of inmate calls.

   B.   The BOP's Disclosure Policy For Telephone Data

The AAG Order establishes the following standard for the disclosure of telephone data:

> Relevant data from this system will be disclosed . . . in an appropriate proceeding before a court or administrative or regulatory

The Honorable Brian M. Cogan
September 1, 2011
Page 8

>    body when records are determined by the Department of Justice to be arguably relevant to the proceeding, including federal, state, and local licensing agencies or associations which require information concerning the suitability or eligibility of an individual for a license of permit.

(AAG Order at 3, subsection (i)).  Although this subsection specifically refers to <u>disclosure</u> – not retention or preservation, which are covered in a separate section of the AAG Order – the defendants argue that this obligation somehow "mandates the preservation of inmate calls relevant to any open case." (Saracino Mot. at 9).  As the quoted text makes clear, however, there is simply no basis in the text to impute a <u>preservation</u> obligation to this <u>disclosure</u> requirement.  Rather, it states that if the Department of Justice deems such data to be relevant and, presumably, requests such data from the BOP, the BOP must disclose it.  Prior to the Court's March 4, 2010 order, no such requests had been made for the recordings made of calls using Bova's telephone account and requests had been made for recordings of calls using Calabro's account for certain time periods.[4]

   Remarkably, the defendants claim this subsection even mandates the "admissibility of recorded phone-calls." <u>Id.</u>  The notion that the BOP's disclosure policy somehow trumps the Federal Rules of Evidence, of course, is utterly without merit and, as with the defendants' other novel interpretations of the AAG Order and its ramifications, should be rejected.

---

   [4]   The government has produced, pursuant to the Jencks Act, all recordings it has in its possession of the calls made using Calabro's account.

The Honorable Brian M. Cogan
September 1, 2011
Page 9

IV.  Conclusion

For these reasons, the government respectfully submits that the defendants' motions for sanctions and various relief should be denied. The government further submits that in light of the irrelevance of the BOP's records retention policies, as explained in Section II above, there is no reason to hold a time-consuming and unnecessary "evidentiary hearing." (See Gioeli Mot. at 2).

                    Respectfully submitted,

                    LORETTA E. LYNCH
                    United States Attorney

          By:  /s/ Cristina M. Posa
                Elizabeth A. Geddes
                James D. Gatta
                Cristina M. Posa
                Assistant U.S. Attorneys

Enclosures

cc:  All Counsel (by ECF)
     Nicole McFarland, MDC Staff Attorney (by e-mail)
     Michael Tafelski, BOP Deputy Legal Counsel (by e-mail)
     Clerk of the Court (BMC) (by ECF)