

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG/JDG/CMP                                  *271 Cadman Plaza East*
F.#2008R00530                                *Brooklyn, New York  11201*


November 23, 2011


<u>By ECF and Hand Delivery</u>

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:  United States v. Thomas Gioeli, et al.
           <u>Criminal Docket No. 08-240 (S-6) (BMC)</u>

Dear Judge Cogan:

      On August 12, 2011, the Court entered a protective order (hereinafter, the "Protective Order), prohibiting the defendants in the above-referenced case from publicly disclosing or disseminating materials disclosed pursuant to the government's obligations under 18 U.S.C. § 3500 ("Section 3500 material"). (<u>See</u> Docket Entry No. 1227).  On September 16, 2011 and October 27, 2011, the defendant Thomas Gioeli filed under seal a letter and a memorandum, respectively, each of which referenced and disseminated Section 3500 material disclosed to Gioeli pursuant to the Protective Order. (<u>See</u> Docket Entry Nos. 1265 and 1292). In large part, the exhibits consisted of notes reflecting information provided by cooperating witnesses.  On November 14, 2011, the Court Ordered the government to advise the Court "whether any grounds exist which should prevent disseminating the protected documents to the public."  (Docket Entry dated Nov. 14, 2011).

      The same day that the Court entered its Order, at the request of the government, Gioeli filed a redacted version of his October 27, 2011 memorandum such that the memorandum itself was unsealed in its entirety but the exhibits that disseminated Section 3500 material subject to the Protective Order remained under seal.  (Docket Entry No. 1301).  In an email sent today,

The Honorable Brian M. Cogan
November 23, 2011
Page 2

the government similarly requested that Gioeli file a redacted version of the September 16, 2011 letter such that the letter itself would be unsealed in its entirety but that the exhibits that disseminated Section 3500 material subject to the Protective Order would remain under seal.  For the reasons set forth below, the government submits that the exhibits appended to the September 16, 2011 letter and October 27, 2011 memorandum that disseminate Section 3500 material subject to the Protective Order should remain under seal, with the exception of one exhibit to the October 27, 2011 memorandum.

## DISCUSSION

As explained in the government's motion for the Protective Order, the danger posed to witnesses as a result of the unwarranted dissemination Section of 3500 materials, such as those that Gioeli included as exhibits to the September 16, 2011 and October 27, 2011, is significant.

First, cooperating and civilian witnesses who testify against members and associates of organized crime are subject to harassment or worse.  Dissemination of Section 3500 material increases the risk to cooperating witnesses, even if their cooperation has previously been disclosed.  The court in Garcia explained as follows:

> There will be cases . . . in which a casual attitude toward the handling of 3500 material is ill-advised . . . .  In particular, the wide dissemination of statements by cooperating witnesses who are regarded as 'snitches' or 'rats' by their criminal associates . . . poses obvious dangers.  It is not enough to say, as the defendants argue in this case, that the damage is done by the mere disclosure that a witness has cooperated with the authorities.  Hard evidence of the witness's betrayal can facilitate retaliation or intimidation of the witness.  It is therefore appropriate, in a case where such retaliation may be feared, to restrict the circulation of such material.

The Honorable Brian M. Cogan
November 23, 2011
Page 3

United States v. Garcia, 406 F. Supp. 2d 304, 306 (S.D.N.Y. 2005).

In addition, as described in detail in the government's motion for an anonymous and partially sequestered jury filed on April 22, 2011, members and associates of organized crime, including members and associates of the Colombo family, have historically endeavored to obstruct justice. In addition, they have a powerful incentive to prevent the current investigation from extending past the indicted defendants. Numerous cases establish the threat of witness tampering and obstruction posed by organized crime. See, e.g., United States v. Basciano, 03-CR-929 (NGG), Docket No. 602 (E.D.N.Y. Jun. 30, 2006) (reaffirming prior protective order preventing dissemination of Jencks Act material and return of that material in light of "(1) evidence of Defendants participation in violent acts within a criminal conspiracy that has been involved in witness tampering; (2) the Government's plan to present witnesses whose locations were undisclosed; and (3) the widespread distribution of 3500 material to members of the Bonanno organized crime family and members of the federal defense bar by the defendant Joseph Massino and his trial counsel, respectively, in a prior related case."); United States v. Gotti, 2004 WL 2274712, *3 (S.D.N.Y. Oct. 7, 2004) (noting that within RICO indictment, there "are multiple charges suggesting a willingness to employ violence and coercion against anyone who would cooperate with authorities against the Gambino Family"); United States v. Gotti, 2002 WL 31946775 (E.D.N.Y. Jun. 10, 2002); Mangialino v. United States, 1999 WL 401682 (S.D.N.Y. Jun. 17, 1999); see also United States v. Russo, 302 F.3d 37 (2d Cir. 2002) (affirming conviction of then Colombo family captain Andrew Russo for witness tampering, obstruction of justice and hindering an FBI investigation); United States v. Persico, et al., 04-CR-911(JS), 2008 WL 5146654 (E.D.N.Y. Dec. 8, 2008) (noting that then Colombo family acting boss Alphonse Persico and John DeRoss were convicted of, among other things, conspiracy to tamper with a witness and witness tampering). Indeed, the Court noted the Colombo family's "decades-long history of engaging in obstructive conduct" in its Order granting, among other things, the government's anonymous jury motion. (See Memorandum Decision and Order dated July 28, 2011 (Docket Entry No. 1195) at 6).

Second, the exhibits appended to the September 16, 2011 letter and the October 27, 2011 memorandum reference criminal activities by other organized crime members and associates that

The Honorable Brian M. Cogan
November 23, 2011
Page 4

are unrelated to the crimes charged here.  Dissemination of those exhibits would therefore compromise an organized crime investigation involving those members and associates, and would likely place the cooperating witnesses and their families in physical danger from individuals who are not under the supervision or control of the Court.  Dissemination of the exhibits, including those that reference criminal activities by targets that have not been arrested, also will likely alert these targets to the existence of an investigation as well as the specific subject matter of the investigation and might lead to the destruction or concealment of evidence and the flight of the targets.

      One exhibit to defendant Gioeli's October 27, 2011 memorandum, named "Exhibit N" to that brief, is a publicly-available newspaper article which was provided to the defendants as Section 3500 material.  The government does not have any objection to that particular exhibit being unsealed.

## CONCLUSION

      For the reasons set forth above, the government respectfully submits that the exhibits to the September 16, 2011 letter and the October 27, 2011 memorandum that disseminate Section 3500 material subject to the Protective Order should remain under seal.

      Respectfully submitted,

      LORETTA E. LYNCH
      UNITED STATES ATTORNEY

      By:   /s/Elizabeth A. Geddes
           Elizabeth A. Geddes
           James D. Gatta
           Cristina M. Posa
           Assistant U.S. Attorneys

cc: Clerk of the Court (BMC) (by ECF)
    Defense counsel (by ECF)