```
EAG/JDG/CMP
F.#2008R00530
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

THOMAS GIOELI and
DINO SARACINO,

        Defendants.

08 CR 240 (S-6)(BMC)

- - - - - - - - - - - - - - - - X

REPLY MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S
MOTION IN LIMINE TO ADMIT CERTAIN EVIDENCE AT TRIAL

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Elizabeth A. Geddes
James D. Gatta
Cristina M. Posa
Assistant U.S. Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this reply to the papers filed by defendants Thomas Gioeli and Dino Saracino in opposition to the government's motion *in limine* to permit the government to introduce at trial testimony of a cooperating witness (the "CW") about five meetings between the CW and Vincent Manzo, Sr., a soldier in the Colombo organized crime family of La Cosa Nostra (the "Colombo crime family") – including a meeting between Manzo, Colombo family acting captain Luca DiMatteo and the CW – as well as excerpts of four recordings the CW made during those meetings, during all of which Manzo repeatedly described his participation in the murder of William "Wild Bill" Cutolo, Sr., with the defendants and others.  (See Mem. of Law in Opp'n to the Gov't's Mot, dated Jan. 9, 2012 (Docket Entry No. 1326) ("Saracino Br."); Ltr. from Adam D. Perlmutter, Esq., to the Court, dated Jan. 11, 2012 (Docket Entry No. 1328) ("Gioeli Br.")).  In their papers, the defendants contend that the evidence the government seeks to admit is not admissible as statements against penal interest, nor as co-conspirator statements, and variously, that the evidence is "irrelevant, unreliable and contradictory" and unfairly prejudicial.  (Gioeli Br. at 3-6; Saracino Br. at 8-10).  For the reasons set forth here and in the government's opening brief, (see Gov't Mem. of Law in Supp., filed December 14, 2011 (Docket Entry No. 1318)

("Gov't Br."), the government's motion in limine should be granted.

ARGUMENT

I. The Recordings and Testimony are Admissible as Statements Against Penal Interest

Manzo's statements to the CW are admissible as admissions against his penal interest under Rule 804(b)(3) of the Federal Rules of Evidence ("Rule 804(b)(3)").

    A. The Court May Presume Manzo's Unavailability for Purposes of Ruling on the Government's Motion

The defendants assert that the government's motion to admit Manzo's statements to the CW about his participation in the disposal of Cutolo's body after the defendants killed Cutolo under Rule 804(b)(3) should be denied because the government has not sufficiently demonstrated that Manzo is unavailable as a witness. (Saracino Br. at 2-3; see Gioeli Br. at 2 n.1 ("To the extent Manzo is available to testify, the government's motion should be denied in its entirety.")). As the government noted in its opening brief, the government anticipates that Manzo will assert his privilege against self-incrimination if called to testify. However, if the government is wrong and Manzo is available to testify, the government does not dispute that Manzo's statements to CW would not be admissible as admissions against his penal interest. In any event, there is no reason that Court should not assume Manzo's unavailability for purposes

of considering the present in limine motion, as the Court did with respect to the statements of other declarants in its December 8, 2011 Decision and Order on the government's prior in limine motion ("12/8/11 Order").

Nor is there any reason for the Court to "require the Government to bring Manzo to Court so that he may assert his privilege against self-incrimination," as Saracino suggests. (Saracino Br. at 3). As the Court has previously noted, conducting a closed hearing at which a witness would be called merely to establish that he would invoke his privilege would be "a waste of time." (12/8/11 Order at 9). The government will make the requisite showing that Manzo is unavailable. (See id. ("Should defendants seek to subsequently challenge any of the declarants' availability, I note that the Government will have to make some type of showing to support its current position.")).

B.  Manzo's Statements Were Against His Penal Interest

Gioeli also challenges the admission of Manzo's statements to the CW about his participation in the burial of Cutolo's body, arguing that they are "not statements against penal interest because [Manzo's] participation in disposing Cutolo's body, if believed, would not expose him to criminal liability because of the applicable statute of limitations." (Gioeli Br. at 3 (emphasis supplied)). The gravamen of Gioeli's claim is that Manzo's statements are inadmissible because –

3

according to Gioeli - Manzo could not have been charged with a crime at the time he made the statement, whether or not Manzo knew that he could not be charged. His argument is without merit.

The statements at issue do expose Manzo to criminal liability for his participation in a Colombo crime family racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). That is, Manzo's statements to the CW establish (a) Manzo's criminal association with Gioeli (a Colombo crime family member at the time of the Cutolo murder) and Dino Calabro, Joseph Competiello and Saracino (who, like Manzo, were Colombo crime family associates at the time),[1] and (b) Manzo's willingness to (i) participate in the Colombo crime family's criminal activity when summoned to do so by helping dispose of Cutolo's body,[2] and (ii) further the interests of the Colombo crime family by not

---

[1] Indeed, the evidence at trial - including the testimony of the witnesses previously identified as CW-1 and CW-2 - will show that Calabro, Saracino, Competiello and Manzo all became an inducted members of the Colombo crime family after the murder and burial of Cutolo. The evidence will further show that Manzo was inducted into the Colombo crime family at a ceremony at which Gioeli and Calabro - who by that time had been inducted as a member - were present.

[2] Manzo's statements to the CW that he helped to dispose of Cutolo's body are admissions that he committed an "act . . . involving murder" by participating in the disposal of Cutolo's body, a predicate racketeering act under 18 U.S.C. § 1961(1). See United States v. Patriarca, 912 F. Supp. 596, 627 (D. Mass. 1995) (holding that "being an accessory after the fact to murder relates closely to murder" and thus, 18 U.S.C. § 1961(1) makes the crime a RICO predicate).

disclosing to law enforcement that Gioeli, Calabro, Competiello and Saracino had killed Cutolo.  As such, Manzo's statements are admissible as admissions against his penal interest even if they are not sufficient, standing alone, to convict Manzo of any crime.  See, e.g., United States v. Persico, 645 F.3d 85 (2d Cir. 2011) (upholding admission of an unavailable declarant's (Cutolo's) statements that he routinely met with another high-ranking Colombo crime family member (acting boss Alphonse Persico) and that they met at a certain location to evade surveillance by the FBI despite the fact that "those statements would not have been sufficient, standing alone, to convict Cutolo of any crime," because "they would have been probative in a criminal trial against Cutolo to show his membership in the Colombo Crime Family and to support an inference that criminal messages were passed when he and Persico met at that spot.").  Manzo's statements – particularly those in response to his recently assigned acting captain DiMatteo's directive, "You gotta let me know what we are talking about," also reveal Manzo's continued participation in the Colombo crime family.  See id.

       The statements also expose Manzo to substantial potential civil liability because of his participation in Cutolo's murder and the subsequent obstruction of justice by

5

disposing of his body,[3] in violation of, among other statutes, 18 U.S.C. § 1503(a) and N.Y. Penal Law § 205.65.[4] See Fossyl v. Milligan, 317 Fed. Appx. 467, 476-77 (6th Cir. March 18, 2009) (holding that an out-of-court statement establishing declarant's "mere presence" at a murder crime scene was properly admitted under Rule 804(b)(3) because declarant "faced potential [civil] liability . . . , which could have affected her pecuniary interests" and she "could have been charged [with] obstruction of justice, complicity, and failure to aid law enforcement").

In addition, Gioeli contends that Manzo's statements are not admissible under Rule 804(b)(3) because "the only reason Manzo believed his penal interest was at [sic] jeopardy was because [FBI] Special Agent [Scott] Curtis and [the CW] misled him to think that was the case when, in fact, it was not." (Gioeli Br. at 3). As an initial matter, while it is true that Special Agent Curtis's statements to Manzo's son made clear that Manzo was a target of the FBI, there is no reason to believe that

---

[3] Although the statute of limitations has passed for those crimes, Manzo is still subject to civil liability for his actions. See, e.g., Stubbs v. Pirzada, 865 N.Y.S.2d 326 (2d Dep't 2008) (defendant is estopped from asserting statute of limitations as defense where he has wrongfully induced plaintiff to refrain from timely commencing action by deception, concealment, or other misconduct).

[4] N.Y. Penal Law § 205.65 provides that a person is guilty of hindering prosecution in the first degree, a class D felony, "when he renders criminal assistance to a person who has committed a class A felony, knowing or believing that such person has engaged in conduct constituting a class A felony."

6

Manzo did not already harbor that belief. Indeed, at no point during his meetings with the CW did Manzo express any surprise that he was facing criminal liability. Regardless, even if Manzo believed that he had criminal exposure <u>solely</u> as a result of the actions by the FBI and the CW, it has no effect on the reliability of Manzo's statements and their admissibility.

II. The Recordings and Testimony are as <u>Admissible Co-Conspirator Statements</u>

The statements are also admissible as co-conspirator statements under Rule 801(d)(2)(E) of Federal Rules of Evidence ("Rule 801(d)(2)(E)"). Gioeli's conclusory assertion that "nothing" in the recordings or proffered testimony the government seeks to admit suggests that the statements at issue "were made in furtherance of a conspiracy involving Gioeli and Manzo – or for that matter Saracino and Manzo" (Gioeli Br. at 2) misses the mark. As set forth in more detail in the government's opening brief, Manzo's statements to the CW and DiMatteo were in furtherance of a conspiracy involving Gioeli, Saracino and Manzo: a racketeering conspiracy involving the Colombo family, in which Gioeli and Saracino continued to be members notwithstanding their arrest and incarceration. <u>See</u>, <u>e.g.</u>, <u>United States v. Russo</u>, 302 F.3d 37, 46 (2d Cir. 2002) (upholding the admissions of declarant's statements under Rule 801(d)(2)(E) where "the defendant and the declarant were involved together in a conspiracy to maintain an organized crime syndicate, and the

7

declarant's statement furthered the maintenance of the syndicate by giving associated persons information about its membership.").

Saracino acknowledges that other cooperating witnesses will corroborate Manzo's participation in the Cutolo murder, but characterizes such anticipated testimony as "hearsay" and claims that the government therefore has "failed to identify its independent corroborating evidence of Gioeli and Saracino's alleged participation" in the Cutolo murder in order to justify admission under Rule 802(d)(2)(E). (Saracino Br. at 4). To the contrary, two cooperating witnesses will testify that they directly participated in disposing of Cutolo's body with Manzo and the defendants Gioeli and Saracino. Such testimony easily amounts to independent corroboration of Manzo's statements to the CW.

### III. The Recordings and Testimony are Highly Relevant and Their Probative Value is Not Substantially Outweighed by the Danger of Unfair Prejudice

Finally, the defendants argue that Manzo's statements about his role in the Cutolo burial with the defendants are "inconsistent[] . . . conflicted, misleading and potentially untruthful" (Saracino Br. at 9-10), and "irrelevant, unreliable and contradictory" (Gioeli Br. at 6), rendering their probative value outweighed by unfair prejudice. First, Manzo's statements are certainly relevant as they directly implicate Gioeli and Saracino in the charged Cutolo murder. The statements are also

8

reliable as Manzo had no reason to implicate himself in a murder unless it were true.  Nor did Manzo contradict himself during his statements to the CW, as Saracino claims (Saracino Br. at 9-10).  Manzo admits that he does not recall every detail (such as which of coconspirators called him – Manzo thought it was "Tommy," a reference to Gioeli – or whose house Manzo went to first – Manzo was "almost sure" it was "Little Dino"'s, a reference Saracino), but clearly admits that he, together with Gioeli, Saracino and others, drove Cutolo's body to its burial site on Long Island.  Further bolstering the reliability of the statements are two cooperating witnesses (i.e., CW-1 and CW-2) who are expected to testify that they participated in the disposal of Cutolo's body with the defendants and Manzo - just as Manzo admitted to the CW.  In sum, the proffered evidence is extremely probative, and its probative value is not substantially outweighed by a danger of "unfair prejudice."  Fed. R. Evid. 403.

Gioeli also claims that "critical portions of Manzo's statements are inaudible such that trying to determine the complete conversation is speculative and will jeopardize the integrity of the jury's fact finding." (Gioeli Br. at 4).  The government acknowledges that some portions of the recordings are not clearly audible and thus does not object to an audibility hearing.  However, as the Second Circuit explained in United States v. McDonald:

9

> A tape recording is not inadmissible merely because portions of it are inaudible. See United States v. Arango-Correa, 851 F.2d 54, 58 (2d Cir. 1988). "Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the judge." United States v. Bryant, 480 F.2d 785, 790 (2d Cir. 1973) (quoting Monroe v. United States, 234 F.2d 49, 55 (D.C. Cir. 1956)) (internal quotation marks omitted). If a tape recording is probative,[5] it is preferable to admit it even if parts are inaudible. See Arango-Correa, 851 F.2d at 58; Bryant, 480 F.2d at 790.

198 F.3d 235 (2d Cir. 1999). The government respectfully submits that the Court should review in camera the recordings, copies of which were provided as exhibits to the government's opening brief. See also United States v. Chiarizio, 525 F.2d 289, 293 (2d Cir. 1975) ("Before either tapes or transcripts are submitted to the jury, the judge should listen to the tapes and examine the transcripts in camera, receiving both sides' objections to the proposed evidence . . . ."). Should the Court conclude that the unintelligible portions of the recording are not so "substantial as to render the recording as a whole untrustworthy," Bryant, 480 F.2d at 790, "the proper procedure is for the jury to receive

---

[5] The defendants do not – because they cannot – dispute that the recordings are probative as the recordings will strongly corroborate the CW's testimony that Manzo admitted his participation with the defendants Gioeli and Saracino in the disposal of Cutolo's body.

10

transcripts of both sides' versions." Chiarizio, 525 F.2d at 293.

## CONCLUSION

For the reasons set forth above and in the government's initial moving papers, the government's motion in limine should be granted.

Dated:     Brooklyn, New York
           January 23, 2012

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney

                         By:    /s/
                              Elizabeth A. Geddes
                              James D. Gatta
                              Cristina M. Posa
                              Assistant U.S. Attorneys