

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG:JDG:CMP  *271 Cadman Plaza East*
F.#2008R00530  *Brooklyn, New York  11201*

April 12, 2012

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Thomas Gioeli, et al.
           Criminal Docket No. 08-240 (BMC)

Dear Judge Cogan:

      During cross-examination of government witness Special Agent James Destefano of the Federal Bureau of Investigation ("FBI"), counsel for the defendant Thomas Gioeli sought to cross-examine Agent Destefano regarding the number of instances in which the defendant Thomas Gioeli was listed in the Federal Bureau of Investigation's "ELSUR" database as having been intercepted pursuant to a court-authorized wire or bug.  The government respectfully submits this motion in limine to preclude the introduction of such evidence because it presents a substantial risk of unfair prejudice, confusion of the issues and an undue waste of time, and should accordingly be precluded pursuant to Federal Rule of Evidence 403 ("Rule 403").

DISCUSSION

A.    Legal Standard

      Rule 403 provides that otherwise relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  "The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'"  United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980)); see generally 2

The Honorable Brian M. Cogan
April 12, 2012
Page 2

Weinstein's Federal Evidence § 403.04[1][b] at 403-37 (Joseph M. McLaughlin, ed., 2d ed. 2003) ("Unfairness may be found in any form of evidence that may cause a jury to base its decision on something other than the established propositions in the case.").

B.   Application

Defendant Gioeli seeks to argue that the mere fact that the defendant was apparently rarely intercepted on court-authorized wiretaps or bugs indicates that he is somehow less guilty of the score of crimes with which he is charged.  Even assuming arguendo that there is some minimal relevance to such evidence, any probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues and an undue waste of time, and should be excluded under Rule 403.  That is, if the defendant were permitted to introduce such evidence, the government would seek to introduce evidence of the substantial legal and technical hurdles that the government must overcome before any communications could be intercepted.  Each of these is explained below.

First, the government would seek to introduce evidence of the stringent requirements that the government must meet in order to obtain a court-authorized bug or wiretap.  For example, the government would seek to introduce a legal expert who would testify that under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. § 2510 et seq., a court cannot authorize the government to intercept wire communications and/or oral communications unless the government can show, inter alia, that "there is probable cause to believe (1) that an individual was committing, had committed, or is about to commit a crime; (2) that communications concerning that crime will be obtained through the wiretap [or bug]; . . . (3) that the premises to be wiretapped were being used for criminal purposes or are about to be used or owned by the target of the wiretap[,]" United States v. Diaz, 176 F.3d 52, 110 (2d Cir.1999), and (4) that "other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518.

Next, the government would seek to introduce testimony that the use of bugs is limited by technology.  For example, the government cannot intercept oral communications at a location where the equipment to monitor and transmit any intercepted communications cannot be hidden.  Accordingly, open areas are generally not suitable to interception by court-authorized bugs.

The Honorable Brian M. Cogan
April 12, 2012
Page 3

In addition, communications at a private location can be intercepted only where law enforcement can surreptitiously gain access to the location to install the equipment to monitor and transmit any intercepted communications. Even where law enforcement can surreptitiously enter and install such equipment, the equipment often can only intercept communications that occur in close proximity to the device and typically cannot intercept whispered conversations.

       To show the difficulty in the government's ability to show that communications concerning a crime would be obtained by a wiretap or bug – one of the requirements to obtain a court-authorized wiretap or bug – the government would further seek to introduce evidence of the methods that members of organized crime employ to avoid interception by a court-authorized wiretap or bug. First, members of organized crime tend to avoid talking about crimes over the telephone or in places that can be intercepted. For example, Joseph Competiello has already testified that Gioeli provided a bug detector to Competiello to ensure that his house was not bugged. (Tr. 2235-36).[1] In addition, Dino Calabro has testified that Gioeli had indicated to Calabro that they not speak about their criminal activity in Gioeli's house for fear of "listening devices." (Tr. 1176 ("don't talk because the government could be listening")). Second, members of organized crime frequently obtain new telephones, use payphones to arrange criminal meetings, discuss crime in open-air or public locations like the church grounds and hospitals where Gioeli met with Calabro and Competiello to avoid interceptions by law enforcement, and engage in "walk talks" to avoid court-authorized which are typically stationary in nature. To show the difficulty in showing that an individual used a particular telephone number, the government would seek to introduce testimony that members of organized crime, including Gioeli, sometimes cryptically recorded telephone numbers in address books in case law enforcement obtained such address books and used prepaid cellular telephones, which allow users to make up subscriber names and addresses.

---

[1]    Citations to "Tr." refer to the trial transcript in this case.

The Honorable Brian M. Cogan
April 12, 2012
Page 4

       Furthermore, the government would seek to introduce evidence that a wiretap requires cooperation by the telephone service provider.  Such evidence is particularly relevant to Gioeli, who often obtained his pagers from a company controlled by the son of co-conspirator Joel "Joe Waverly" Cacace.  In light of Gioeli's close relationship with Cacace, it would have been futile for law enforcement to obtain such court authorization to intercept communications over such a device because Gioeli would likely learn of the authorization and alter his behavior.

       The government would also seek to introduce testimony that court-authorized wiretaps and bugs are sometimes not feasible due to the significant amount of resources they consume. For example, in order to effectively monitor a wiretap or bug, the wiretap or bug must be monitored in realtime 24 hours a day, seven days a week.  If it is not, an interception may be missed.  Notably, telephone records reveal that a telephone number used by Gioeli was twice in contact with a telephone subject to a court-authorized wiretap but both communications were not intercepted because the agents monitoring the wiretap had stepped away.  In addition to 24 x 7 real-time monitoring, in order to effectively make use of the evidence generated by a wiretap or bug, surveillance and other investigative techniques must be employed simultaneously, which of course requires additional resources.  (Special Agent Destefano's testimony is illustrative of this point; had he and his partner not conducted surveillance of the pizzeria on June 13, 2002, he most likely would not have learned the identity of the person for whom Calabro set up an appointment with Vincent "Chickie" DeMartino, i.e., the defendant Gioeli. (See T. 3265-71).).

       Finally, the government would seek to introduce testimony regarding the ELSUR database, the database utilized by the FBI to determine when an individual has been previously intercepted and the basis for the information in the wiretap affidavit that Gioeli seeks to admit.  Specifically, the government would seek to elicit testimony regarding the deficiencies of the ELSUR database.  That is, the FBI cannot state to a certainty the number of times that Gioeli – or any individual – was intercepted by the FBI.  Many voices intercepted on wiretaps and bugs are never identified due to the fact that the particular monitor of those communications – or a subsequent review – was not familiar with a particular voice.  When a voice

The Honorable Brian M. Cogan
April 12, 2012
Page 5

is not identified, the interception cannot be logged into the ELSUR database and the interception would remain unnoticed by a check of the ELSUR database.  This deficiency is particularly relevant to Gioeli because law enforcement has had limited oral communications with Gioeli and therefore remained relatively unfamiliar with his voice for many years.  In fact, it was only after special agents listened to the defendant speak at length during this trial that law enforcement became more familiar with his voice and identified Gioeli's voice on an intercept at the Torrese Social Club in Brooklyn, New York in 1999.[2]  Accordingly, unless law enforcement agents who are now familiar with Gioeli's voice were to now re-review every interception at a location where Gioeli may have been, the government cannot possibly state that Gioeli was not intercepted on occasions in addition to those currently listed in the ELSUR database.

       In light of the foregoing, introduction of evidence regarding the mere fact that the ELSUR database lists only a few occasions on which Gioeli was intercepted is unfairly prejudicial and likely to create confusion.  Permitting such evidence presents substantial risks of confusion and prejudice in that, in order to put such evidence into context, the government would need to present voluminous information to the jury which risks wasting time, causing delay and creating a confusing side-show for the jury.

---

      [2]    Indeed, the Court recently noted that Gioeli's comments to his attorneys are often audible throughout the courtroom. (See Tr. 3034).

The Honorable Brian M. Cogan
April 12, 2012
Page 6

## CONCLUSION

For the reasons set forth above, the Court should grant the government's motion *in limine* to preclude the introduction of evidence of the number of instances that the defendant Thomas Gioeli is listed in the ELSUR database as having been intercepted.

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney

                       By:   /s/_____
                            Elizabeth A. Geddes
                            James D. Gatta
                            Cristina M. Posa
                            Assistant U.S. Attorneys

cc:   Defense Counsel (by ECF)