# Law Offices of Adam D. Perlmutter, P.C.
## Attorneys At Law

**260 Madison Avenue, Suite 1800**
**New York, NY 10016**
**Tel. (212) 679-1990**
**Fax. (212) 679-1995**

Adam D. Perlmutter, esq.
—
Jennifer Louis-Jeune, Esq.
Daniel A. McGuinness, Esq.

Of Counsel
Paul Greenfield, Esq.

June 8, 2012

**VIA ECF**

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   **United States of America v. Thomas Gioeli**, *et al.*
      **Case No. 08-cr-240 (S-6) (BMC) (RER)**

Dear Judge Cogan:

      I am counsel with Carl J. Herman, Esq., in connection with the above matter on behalf of Thomas Gioeli. My purpose in writing this letter is to request that a bail hearing be held at Your Honor's soonest convenience. Mr. Gioeli requests that Your Honor reconsider, as a matter of discretion, the order of detention following the jury's verdict on the grounds that, as stated herein, there are "exceptional reasons why [Gioeli's] detention would not be appropriate." *See* 18 U.S.C. §3145(c).

1.   **The Legal Standard for Reversal of a Post-Verdict Detention Order**

      This Court has the authority to entertain and grant this application and there is precedent that supports the granting of this relief.

      The statutory source of Mr. Gioeli's post-verdict detention is 18 U.S.C. §3143(a)(2). The Court, however, does have statutory authority to grant Mr. Gioeli's release on bail pending sentencing pursuant to 18 U.S.C §3145(c) ("Appeal from a release or detention order."). The statute provides:

> An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions

The Hon. Brian M. Cogan
June 8, 2012
Page 2 of 4

> of section 1291 of title 28 and section 3731 of this title.  The appeal shall be determined promptly.  A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are *exceptional reasons* why such person's detention would not be appropriate.

*Id.* (emphasis added).  *See United States v. Lippold*, 175 F. Supp. 2d 537, 539 (S.D.N.Y. 2001) (Sweet, J.) (noting that "the 'exceptional reasons' language of 18 U.S.C. §3145 may be applied by the judicial officer initially ordering such mandatory detention, despite its inclusion in a section generally covering appeals.")

The Court's discretion in applying the "exceptional reasons" provision of 18 U.S.C. §3145(c) was made clear in *United States v. Disomma*, 951 F.2d 494 (2d Cir. 1991), a case involving a Hobbs Act robbery conviction.  In affirming the district court's decision to release the defendant under the "exceptional reasons" provision of 18 U.S.C. §3145(c), the Court stated:

> We do think that an unusual legal or factual question can be sufficient, as it is here, to meet the test.  On the other hand, a merely substantial question may be sufficient, in the presence of one or more remarkable and uncommon factors, to support a finding of exceptional reasons for the inappropriateness of detention.  As in many things, a case by case evaluation is essential, and it is not our intention to foreclose district judges from the full exercise of discretion in these matters.  That discretion certainly is not limited by the examples contained in the Justice Department letter.  It is constrained only by the language of the statute: "exceptional reasons."

*Id.* at 497.  The Court further emphasized in *Disomma*, in language that is applicable here, that the application of the "exceptional reason" provision will arise out of a "unique combination of circumstances giving rise to situations that are out of the ordinary." *Id.*

2.   **Gioeli Presents Exceptional Reasons Warranting Release**

   A.   **Gioeli is not a Flight Risk**

Mr. Gioeli's friends and family have come forward with a substantial bail package secured by five separate properties.  His mother, brother, daughter, son-in-law, mother, nephew and family friends are all offering to secure his release with their primary residences as collateral.  There is no chance Gioeli would attempt to abscond with the so many homes of his loved ones hanging in the balance.

The Hon. Brian M. Cogan
June 8, 2012
Page 3 of 4

Beyond these pecuniary securities, Mr. Gioeli's family and friends root him to Long Island. The primary motivation for this bail application is to ensure that he can be examined by his personal doctors for his cardiac, diabetic, dental and orthopedic issues prior to his possible continued incarceration for an extended period. He also wishes to spend time with his family and friends before his possible continued incarceration as well. Mr. Gioeli's wife of 34 years, four daughters, and elderly mother all live in Long Island or the surrounding area. The homes of his mother and daughter will be at risk if he absconds. There could be no stronger motivation for Mr. Gioeli to remain in the area.

In addition, Gioeli now faces a far less substantial sentence than before the verdict. The charges in the indictment exposed Gioeli to a potential of six life sentences. Now that Gioeli has been convicted of only the RICO charge, he faces a maximum of 20 years, of which he has already served four. This radical change of potential exposure significantly undermines the government's previous contention that Gioeli's exposure served as a motive to flee.

### B. Gioeli Presents No Danger to the Community

The verdict returned in this case belies the government's entire characterization of Mr. Gioeli. The jury's vote to acquit Mr. Gioeli of all six charged murders signals a sound repudiation of government's claims that he was an outsized mafia villain. Indeed, its past oppositions to bail applications have rested on this view of Mr. Gioeli:

> Gioeli continues to wield power over members and associates of the Colombo family in light of his position of authority. Accordingly, Gioeli has the means to direct any of his numerous criminal associates to commit violent crimes at his behest. Moreover, the charges for which Gioeli is currently under indictment – including five murders [*sic.*] – demonstrate that Gioeli has repeatedly used that authority. Indeed, Gioeli has directed or authorized his associates, including co-defendants Dino Calabro, Joseph Competiello and Dino Saracino, among others, to commit multiple murders.

Gov. Ltr. dated Jan. 28, 2010, ECF No. 547. The jury rejected the contention that Mr. Gioeli ordered any murders. Instead, the jury found that Gioeli was, at most, a part of conspiracies to murder over twenty years ago. While this application certainly does not seek to diminish the gravity of these charges, the factual findings simply do not bear out the lethal authority alleged by the government. The government's grounds for opposition have failed to stand on factual grounds, and so the opposition itself must also fail.

The guilty verdicts returned by the jury also address crimes that occurred 20 years ago, since which time Mr. Gioeli has also not accrued any criminal convictions or even any arrests aside from the present case. It is not reasonable to think that after almost 20 years of freedom without committing a crime, Gioeli would be likely to be a danger in the three months before his sentencing.

The Hon. Brian M. Cogan
June 8, 2012
Page 4 of 4

Furthermore, the evidence adduced during trial showed Gioeli was not in a leadership role of the Colombos. One government cooperator, Reynolds Maragni testified that in 2011 Andrew Russo, who was also being held at the MDC, was the acting boss of the Colombo family. Tr. 560:19-561:7, 682:18-23. Special Agent Scott Curtis acknowledged that he previously testified during a January 25th, 2011 bail hearing that Alphonse Persico was the acting boss of the Colombo family, and had held that role since 1997. Tr. 3927:1-3928:15. Thus, the government contention that Gioeli maintains a leadership role is belied by the government's own witnesses

Maragni also spoke of an induction ceremony into the Colombo family that took place inside the Metropolitan Detention Facility, where Gioeli has been housed since his arrest in June 2008. The ceremony was attended by individuals alleged to be high-ranking Colombo's, and Gioeli was conspicuously absent. Despite the government's allegations in previous bail oppositions, it has not offered any evidence of recent involvement by Gioeli in the Colombo family.

The government has not offered any evidence that Gioeli maintains any power within the Colombo family. Assuming *arguendo*, that he ever did have any power, there is no reason to believe that is now the case.

    **C.**    **The MDC is not Equipped to Adequately Handle Gioeli's Continued Health Issues**

As this Court is acutely aware, Mr. Gioeli's health care while at the MDC has been consistently problematic. *See, e.g.* ECF Nos. 398 (September 18, 2009 letter reporting Mr. Gioeli denied blood pressure, cholesterol and diabetes medications), 400 (September 29, 2009 letter stating Mr. Gioeli not given cane, conditions affecting his back issues, diabetes not monitored), 503 (December 18, 2009 letter alerting that Mr. Gioeli's cardiac medications not refilled), 529 (January 15, 2010 letter requesting a glucometer or regular testing to be able to monitor diabetes), 556 (February 2, 2010 letter explaining the MDC's physician's lack of diabetes experience), 849 (August 20, 2010 letter asking that Mr. Gioeli receive *Plavix* and be allowed to see a doctor for hip and back pain).

This ongoing lack of proper medical care has had disastrous consequences on Mr. Gioeli's health. The most severe instances culminated in his hospitalization: First on October 1, 2009, with heart pains, and second on February 3, 2010, after suffering a stroke. Mr. Gioeli's four years at the MDC have done dramatic and irreparable harm to his health.

It is Mr. Gioeli's hope that he can obtain a brief release before sentencing in order to consult with his private physicians before possibly entering a long-term incarceration facility, which is hopefully better able to provide medical care. Specifically, Gioeli wishes to meet with the following medical professionals: Dr. Melvin Holden, an Internist

The Hon. Brian M. Cogan
June 8, 2012
Page 5 of 4

who specializes in diabetes; Dr. Fred J. Colombo, dentist; Dr. Frank R. Dimaio, an Orthopedic Surgeon; Dr. Philip Ragno, cardiologist; and Dr. Martin J. Fox, an Ophthalmologist.

      We ask that the Court schedule a conference at it earliest convenience to discuss this application, and than the Court in advance for its attention to this matter.

                                    Respectfully submitted,

                                    Adam D. Perlmutter

Cc:     All counsel (via ECF)