

*U.S. Department of Justice*

*United States Attorney
Eastern District of New York*

EN:EAG/JDG/CMP
F.#2005R00248

*271 Cadman Plaza East*

*Brooklyn, New York 11201*

June 12, 2012

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Thomas Gioeli, et al.
     Criminal Docket No. 08-240 (S-6)(BMC)

Dear Judge Cogan:

  The government respectfully submits this letter in opposition to the defendant Thomas Gioeli's request for bail pending sentencing. (Ltr. of Adam D. Perlmutter, Esq., to the Court, June 8, 2012 (ECF Docket Entry No. 1561) ("Ltr.")). A hearing as to Gioeli's request has been scheduled for June 22, 2012.

  On May 9, 2012, Gioeli was found guilty of racketeering conspiracy, including three murder conspiracies as predicate acts of racketeering, which plainly constitutes a crime of violence. For the reasons set forth below, Gioeli has not met his high burden of showing that he is not a flight risk, does not pose a danger or that "exceptional reasons" warrant his release. Accordingly, Gioeli's request for bail should be denied.

I. Legal Standard

  The Bail Reform Act sets forth the procedure for courts to follow to determine whether a defendant who has been found guilty of a crime of violence is eligible for release pending sentence. See 18 U.S.C. § 3143(a)(2); see also 18 U.S.C. § 3142(f)(1)(A) and 16 (defining "crime of violence"). The statute mandates detention for such persons unless the sentencing court (1) finds by clear and convincing evidence that the defendant "is not likely to flee or pose a danger to any other person or the community," and (2) finds either (a) that "there is

a substantial likelihood that a motion for acquittal or new trial will be granted"; or (b) an attorney for the government has "recommended that no sentence of imprisonment be imposed" on the defendant. However, 18 U.S.C. § 3145(c) provides that "[a] person subject to detention pursuant to section 3143(a)(2) . . . , and who meets the conditions of release set forth in section 3143(a)(1) . . . [i.e., clear and convincing evidence that the defendant is not likely to flee or pose a danger to any other person or the community], may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."

II. Application

    A.    The Defendant Poses a Risk of Flight

Gioeli is a flight risk. At sentencing, the government will urge the Court to impose a sentence of 20 years, the maximum sentence permitted by law and the sentence prescribed by the advisory Guidelines based on Gioeli's participation in and leadership of a longstanding, violent racketeering conspiracy. Accordingly, Gioeli has a significant incentive to flee prior to sentencing. Gioeli's suggestion that his incentive to flea is less so now that he was convicted "only" of racketeering conspiracy (Ltr. at 3) is plainly wrong. Prior to trial, Gioeli faced the possibility of a full acquittal; now, he has been found guilty of racketeering conspiracy, including predicate acts of murder conspiracy, and faces what for him may constitute an effective life sentence.

    B.    The Defendant Poses A Danger to the Community

Now convicted, Gioeli cannot sustain his burden of showing that, were he released, he would not pose a risk of danger to others. First, while the government agrees that Gioeli no longer holds the position of the street boss of the Colombo crime family, he remains an inducted member of the Colombo crime family, the violent criminal enterprise to which he long ago swore his allegiance. Moreover, as a result of his prior position as the street boss, Gioeli still commands allegiance from other members and associates, and remains able to commit and direct others to commit acts of violence.

Gioeli suggests that his mere absence from an induction ceremony that occurred in January 2011 at the Brooklyn MDC where he was housed evidences a lack of authority. (Ltr. at 4). It does not. Even while Gioeli was the street boss, he did not

attend every induction ceremony.  As Reynold Maragni testified at Gioeli's trial, although Gioeli approved of Maragni's induction, Gioeli did not preside over - or even attend - the ceremony at which Maragni was inducted into the Colombo crime family in March 2008.  In any event, the induction ceremony at the MDC occurred in the receiving and discharge unit where inmates are placed when they first arrive at the facility and before they are designated to a particular unit - so Gioeli, who had arrived in the MDC in 2008 and was housed in a permanent unit at the time of the ceremony, logistically could not have attended.

   The jury found as proven that Gioeli personally participated in three murder conspiracies as part of the racketeering conspiracy.  Gioeli claims that the jury's verdict "repudiat[ed]" the government's pre-trial characterizations of Gioeli.  (Ltr. at 3).  He is wrong.  First, the jury's verdict showed that Gioeli agreed to participate in the affairs of the Colombo crime family, a ruthless and violent criminal organization, for more than 20 years.  The fact that the jury did not find that the government had proven beyond a reasonable doubt that Gioeli participated in the murders of Richard Greaves, Ralph Dols and William Cutolo in no way signals that Gioeli did not hold a leadership position in the Colombo crime family or, for that matter, that Gioeli did not order, authorize and otherwise participate in those murders.  In any event, the evidence adduced at trial, and additional evidence that the government did not introduce at trial but will adduce at sentencing, overwhelmingly shows that Gioeli participated in each of the charged murders, remains a danger to others, and should be held accountable for those crimes at sentencing.

   Even were Gioeli released on bail for a short period of time, the risk of danger to others is high.  Because Gioeli faces a significant sentence, he has a significant incentive to collect illegal proceeds now and make arrangements to be able to continue to collect such proceeds while incarcerated.  It is common among members of La Cosa Nostra to make such arrangements in the months leading up to imposition of a lengthy prison sentence.  For example, prior to his arrest, Gioeli's co-defendant Dino Saracino took several steps to arrange for continuation of his lucrative loansharking operation during his period of incarceration.  Gioeli is particularly likely to engage in such actions in light of the recent incarceration of several of his loyal criminal associates.  For example, Dennis Delucia, who previously was a captain in the Colombo crime family, collected money from illegal joker poker machines in a social club and delivered them to the families (and/or commissary accounts) of incarcerated Colombo crime family members, including Gioeli.  Joseph Carna, who also

3

held the position of captain, collected money from Colombo crime family member Robert Pate and delivered it to Gioeli's family while Gioeli was incarcerated. Both are now incarcerated and unable to further assist Gioeli.

In addition, were he released, Gioeli would be a prime contender to organize and run the day-to-day affairs of the Colombo crime family for the period of his release. Following Gioeli's arrest in 2008, Colombo crime family member Ralph Deleo led the Colombo crime family until his arrest in 2009; in March 2010, Andrew Russo took over control of the family until he and many other high-ranking Colombo crime family members were arrested in January 2011. Since the arrest and incarceration of Andrew Russo, Andrew Russo has tried to run the affairs of the crime family from his jail cell at the MDC. Among other steps, Andrew Russo appointed trusted Colombo crime family members who were not incarcerated to administration positions in an attempt to rebuild a crime family that has been decimated over the past several years as a result of law enforcement efforts. Because Gioeli has proven his loyalty to the Colombo crime family, has already held the position of boss and is trusted by Andrew Russo,[1] he would be a logical choice to help run the affairs of the Colombo crime family if he were to be released.

C. There Are No Exceptional Reasons Warranting Release

The Second Circuit has held that a court may find exceptional reasons warranting pre-sentence release where there is an "unusual legal or factual question," or where there is "a merely substantial question ... in the presence of one or more remarkable and uncommon factors." United States v. DiSomma, 951 F.2d 494, 497 496 (2d Cir. 1991). The test under 18 U.S.C. § 3145 is "a flexible one" and the determination of whether a particular set of conditions is "exceptional" is left to the district court's discretion. See United States v. Lea, 360 F.3d 401, 403 (2d Cir. 2004). "Purely personal" circumstances that are not remarkable or uncommon do not qualify. See id. at 403-04 ("There is nothing 'exceptional' about going to school, being employed, or being a first-time offender, either separately or in combination."); see also United States v. Lippold, 175 F. Supp. 2d 537, 540-41 (finding no exceptional circumstances where

---

[1] Andrew Russo is the father of Joseph "Jo Jo" Russo, to whom Gioeli reported during the early 1990s, and William Russo, to whom Dino Saracino briefly reported in the mid-1990s. Evidence of Gioeli's close affiliation with the Russos was introduced at trial.

4

uncommon factors included financial support of three children, illness of young son, and employer's request that defendant be released to train his replacement).

Gioeli has not identified any exceptional circumstances that would warrant his release. He argues that his personal whims to meet with his private physicians and "spend time with his family and friends" are sufficient. (Ltr. at 3). Under the law, they are not. Particularly when viewed in light of the gravity of the crimes Gioeli has committed over several decades, those circumstances cannot be viewed as exceptional such that release is warranted.

III. Conclusion

Gioeli has not sustained his high burden to justify his request for bail pending sentence. A jury has now found that the core reasons the government proffered in 2008 to justify Gioeli's pretrial detention to be proven beyond a reasonable doubt. It would defy all logic and common sense now to find that the reasons justifying pretrial detention are somehow weaker rather than overwhelmingly stronger. Accordingly, the government submits that Gioeli's request should be denied.

Respectfully Submitted,

LORETTA E. LYNCH
United States Attorney

By: /s/
Elizabeth A. Geddes
James D. Gatta
Cristina M. Posa
Assistant U.S. Attorneys

cc: Clerk of the Court (BMC) (by ECF)
Adam D. Perlmutter, Esq. (by ECF)
Carl J. Herman, Esq. (by ECF)